**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| FCS CAPITAL, ET AL.,<br>             Plaintiff,<br><br>        v.<br><br><br>JOSHUA L. THOMAS, ESQ.<br><br>         Defendants | DOCKET NO.: 2:20-cv-05580 |

**RESPOSNE TO ORDER TO SHOW CAUSE**

Defendants would now like to clarify on the record what was sent, and when, in regards to the initial disclosures, and why they were not sent prior to the date in the order of January 12, 2021. Defendant is attaching the completed Rule 26(a) disclosures that was sent to Plaintiff's counsel as Exhibit 1, which includes all of the initial Exhibits. (see Exhibit A Supplemental filing part 1 – Rule 26(a) disclosures) After this was sent, to plaintiff's counsel, he unilaterally sent an email to the court, claiming it had not been received. He then did correct the record, making clear it was received prior to the scheduled time for the Initial Pretrial Conference, but that there was still information needed. At almost the exact same time as this was sent to the court, Plaintiff's counsel send a follow up request for additional information regarding prior coverage, which was sent as soon as it could be found, along with relevant emails as well. (See Exhibit A Supplemental filing  part 2 – follow up information).

The reason for the delay in sending this information was **not** intentional, it was a misreading of the order by Defendant. The order stated that in part "Defendant shall disclose to Plaintiffs' counsel before or during the parties' 26(f) conference whether he was covered by

malpractice insurance during the relevant time period alleged in the Complaint." Defendant misread this to be the Initial Pretrial Conference and did, in fact send it prior to that time.

Defendant would also like to note, that when Plaintiff's counsel requested further documentation, it was sent as quickly as possible (exhibit A Supplemental filing  part 2) and that at this time, there has been no further information requested. Further, Defendant did participate with Plaintiff's counsel in the timely submission of the Rule 26(f) Report, which although we now know did not have all information requested, it was submitted by January 14, 2021. Defendant will make sure not to confuse any dates from this point forward, and will make all efforts to submit documents as soon as possible, instead of simply by the due date, to avoid similar issues in this case in the future.

Date: January 21, 2021                            ____/s/ Joshua Thomas_____
                                                  Joshua L. Thomas and Associates
                                                  Joshua Thomas Esq.
                                                  Supreme Court ID No. 312476
                                                  225 Wilmington-West Chester Pike
                                                  Suite 200
                                                  Chadds Ford, PA 19317
                                                  Phone: (215) 806-1733
                                                  Email: JoshuaLThomas@gmail.com

Exhibit A Supplemental Filing Part 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| FCS CAPITAL, ET AL.,<br>            Plaintiff,<br><br>        v.<br><br>JOSHUA L. THOMAS, ESQ.<br><br>        Defendants | DOCKET NO.: 2:20-cv-05580 |

**DEFENDANT'S INITIAL DISCLOSURES**

Defendant Joshua L. Thomas, hereby discloses the following information in accordance with Federal Rule of Civil Procedure 26(a)(1).

Defendant makes this initial disclosure based upon information presently available to it. Defendant's investigation of this matter is ongoing, and it reserves the right to supplement this disclosure as appropriate. In addition, Defendant makes this disclosure subject to and without waiving the attorney-client privilege, the work product doctrine, or any other applicable privileges and doctrines. Defendant expressly reserves its right to object to other discovery procedures involving or relating to the persons or documents identified in this disclosure.

(A)     The name, and if known, the address and telephone number of each individual likely to have discoverable information relevant to disputed facts alleged with particularity in the pleadings, identifying the subjects of the information;

Based upon information and belief, the following persons may have discoverable information related to the allegations contained in the pleadings filed in this matter:

        1.     Joshua L. Thomas

2.    Barry Shargel

3.    Emil Yashayev

4.    Robert Jacovetti

5.    Lionel Artom-Ginzburg

6.    A representative of Aon Affinity

7.    A representative of Affinity Insurance Services, Inc.

Defendant reserves the right to rely on any individual or entity disclosed in any other parties' Rule 26 disclosures or identified in any document exchanged or deposition taken in this action.

(B)    A copy of, or a description by category and location of, all documents, data compilations, and tangible things in the possession, custody or control of the party that are relevant to disputed facts alleged with particularity in the pleadings;

Based upon information and belief, the following documents in the possession of the Defendant may be relevant to the disputed facts alleged with particularity in the pleadings filed in this matter:

- Email confirming coverage for insurance and policy number
- Bridge Warranty with Starstone
- INDICATION OF POTENTIAL TERMS
- Policy Binder (DECLARATIONS LAWYERS PROFESSIONAL LIABILITY)
- All emails and pleadings from Lionel Artom-Ginzburg specifically stating he will not, and does not want to be because he was not paid for representing clients on the appeal.
- Email from Barry Shargel and Emil Yashayev immediately after hearing where Lionel Artom-Ginzburg stated he would instruct clients to tell me to withdraw appeal

(C)    A computation of any category of damages claimed by the disclosing party, making available for inspection and copying as under Rule 34 the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including

materials bearing on the nature and extent of injuries suffered;

    1.   Lost income due to Lionel Artom-Ginzburg's direct interference and misrepresentations to Barry Shargel and Emil Yashayev

    2.   Attorneys fees for costs associated with defending case

    3.   Attacks on personal reputation due to Lionel Artom-Ginzburg's direct interference and misrepresentations

    4.   Associated damages with the above, yet to be calculated at this time.

(D)    For inspection and copying as under Rule 34 any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment, which may be entered in the action, or to indemnify or reimburse for payments made to satisfy the judgment.

See above statements and attachments.

**PLEASE TAKE FURTHER NOTICE,** Defendant reserve the right to amend these responses up to and including the time of trial in this matter.

**JOSHUA L. THOMAS & ASSOCIATES, PLLC**

__/s/  Joshua L. Thomas _____

Joshua L. Thomas, Esq.
225 Wilmington – West Chester Pike, Suite 200
Chadds Ford, PA 19317
(215)806-1733
JoshuaLThomas@gmail.com

 **Josh Thomas <joshualthomas@gmail.com>**

---

## RE: Aon: JOSHUA L. THOMAS *CONFIRMATION OF COVERAGE

---

**Eric Pearlman** <eric.pearlman@aon.com>                    Wed, Nov 11, 2020 at 11:26 AM
To: Josh Thomas <joshualthomas@gmail.com>

Josh,

Good morning- hope you had a nice evening.  All set- thank you for the information!


From my underwriter:


**Thank you.  Confirming coverage is bound effective 11/12/2020**

**under policy number AON200218-0120.  The policy will be issued**

**shortly.**



**Eric Pearlman  |  Commercial Risk Advisor**

**Aon Affinity | Specialty Professions**

Affinity Insurance Services, Inc.

1100 Virginia Drive  |  Suite 250  |  Fort Washington, PA 19034

M: (215) 285 7417 | F: (312) 637 8317

eric.pearlman@aon.com | www.aon.com

*CA license # 0M68954*


CONFIDENTIALITY STATEMENT: This message is intended only for the addressee and may contain information that is confidential or privileged. Unauthorized use is strictly prohibited and may be unlawful. If you are not the intended recipient, or the person responsible for delivering to the intended recipient, you should not read, copy, disclose or otherwise use this message, except for the purpose of delivery to the addressee. If you have received this email in error, please delete it and inform the sender immediately via email.


To opt out from receiving these types of emails from Aon Attorneys Advantage please **click here** to unsubscribe.

### *Attorneys' Advantage - Lawyers Professional Liability Insurance*
### INDICATION OF POTENTIAL TERMS

| | |
|---|---|
| Joshua L. Thomas & Associates, PLLC | **Client No.:** 0043538000 |
| 305 South Village Road | **Policy Period:** 05/15/2020 │ TO │ 05/15/2021 |
| Chadds Ford, PA 19317 | **Quote Date:** 05/06/2020 |
| | **Quote Valid Until: 05/11/2020** |

## *1. Terms are Based on:*  1 Attorney

## *2. Premium Quotation:*  Policy Underwritten Through StarStone Specialty Insurance Company; An "A-" (Excellent) Rated  Non-Admitted Surplus Lines Carrier According To A.M. Best.

| Limits of Liability | | Deductible | PLEASE NOTE:  Premium financing is available. | | | | | |
|---|---|---|---|---|---|---|---|---|
| **Per Claim** | **Annual Aggregate** | **Per Claim** | **Annual Premium** | **Broker Fee** | **Policy/ Admin. Charge** | **Surplus Lines Tax** | **Stamping Fee** | **Total Amount Due** |
| $100,000 | $100,000 | $5,000 | $7,891 | $250 | $150 | $236.73 | $20 | **$8,547.73** |
| $100,000 | $300,000 | $5,000 | $8,320 | $250 | $150 | $249.60 | $20 | **$8,989.60** |
| $250,000 | $250,000 | $5,000 | $11,155 | $250 | $150 | $334.65 | $20 | **$11,909.65** |

## *3. Endorsements:*                                          *Prior Acts Date:  Retro Date Inception*

SSS-MPL-LAW-DEC (12.15): Law Professional Liability Insurance Policy Dec
SSS-MPL-LAW-END-CW-001 (12-15): Policy Form Schedule
SSS-MPL-LAW-GTC (12-15): Law Professional Liability Insurance Policy
SSS-MPL-STATE AMENDATROY-PA (04-16): PA State Amendatory
SSS-MPL-LAW-END-CW-102 (12-15): Disciplinary Proceeding Sublimit: 500 USD
SSS-MPL-LAW-END-CW-304 (12-15): Incident Exclusion: Terry P. Dershaw, Esq., as Trustee of the Bankruptcy Estate of Sharonn Thomas-Pope or any derivative thereof
SSS-MPL-LAW-END-CW-701 (04-17): Improper Transfer Exclusion – Consequential Damages Carveback
SSS-NOT-PA (04.16): PA Notice

## *4. These terms are subject to receipt and underwriter acceptance of the following:*

1. Fully Completed, Signed and Dated Starstone Application
2. Need a description of the claim from applicant, including steps taken to avoid a similar claim

## *5. Special Instructions/Notes:*

NOTES: This is not a firm quotation. To obtain a firm quote, please send the information requested in Section 4 above for underwriting review and approval by 05/11/2020. This policy does NOT provide any prior acts coverage (the retro active date / prior acts date is policy inception).

**SPECIAL NOTICE:   This is an indication only.  In order for firm terms to be supplied, we must receive all items requested in Section 4 as soon as possible. Final Terms may differ from those of this indication.**





# DECLARATIONS
# LAWYERS PROFESSIONAL LIABILITY

**SUBJECT TO THE PROVISIONS OF THE UNDERLYING INSURANCE, THIS POLICY MAY ONLY APPLY TO ANY CLAIM FIRST MADE AGAINST THE INSUREDS OR LOSS DISCOVERED DURING THE POLICY PERIOD PROVIDED THAT SUCH CLAIM OR LOSS IS REPORTED IN WRITING TO THE UNDERWRITERS PURSUANT TO THE POLICY PROVISIONS.  AMOUNTS INCURRED AS DEFENSE COSTS SHALL REDUCE AND MAY EXHAUST THE APPLICABLE LIMITS OF LIABILITY AND ARE SUBJECT TO THE RETENTIONS.   THE UNDERWRITERS SHALL NOT BE LIABLE FOR ANY DEFENSE COSTS OR FOR ANY JUDGMENT OR SETTLEMENT AFTER THE LIMIT OF LIABILITY HAS BEEN EXHAUSTED.  PLEASE READ THIS POLICY CAREFULLY.**

These Declarations along with the completed and signed **Application** and the Policy with endorsements shall constitute the contract between the **Insureds** and the Underwriters.

| | |
|---|---|
| **Underwriting Manager:** | Affinity Insurance Services, Inc. |
| | 1100 Virginia Drive, Suite 250 Fort Washington, Pennsylvania 19034<br>United States of America |
| | 53 State Street, Suite 2201 Boston, MA  02109<br>United States of America |
| **Policy Number:** | AON200218-0120 |
| **Authority Ref. Number:** | B087519A28N5004 |

Item 1.  **Named Insured:**

Joshua L. Thomas & Associates

Principal Address:

225 Wilmington West Chester Pike
Suite 200
Chadds Ford, PA 19317

The insurer which has issued this insurance is not licensed by the Pennsylvania Insurance Department and is subject to limited regulation.  This insurance is NOT covered by the Pennsylvania Property and Casualty Insurance Guaranty Association.

Item 2.  **Policy Period:**

From:      11/12/2020

To:         11/12/2021

Both dates at 12:01 a.m. Local Time at the Principal Address stated in Item 1.

Item 3.   **Limit of Liability:**

$100,000          Per Claim for the **Policy Period**, including costs and expenses incurred in the defense or settlement of all claims.

$300,000          Aggregate for the **Policy Period**, including costs and expenses incurred in the defense or settlement of all claims.

Item 4.          **Retroactive Date:**  11/12/2020

Item 5.          **Deductible:**          $5,000

Item 6.          **Premium:**          $7,887

Item 7.          **Notification under this Policy:**          SL Broker Charge:  $150.00
                                                             Surplus Lines Tax:  $236.61
                 Joseph M. Guerrero                          Stamping Fee:      $ 25.00
                 Affinity Insurance Services, Inc.
                 53 State Street, Suite 2201
                 Boston, MA  02109
                 Joe.Guerrero@aon.com

Item 8.          **Notice of Claim or Circumstances:**

                 Nicholas A. Gumpel Western Litigation, Inc.
                 1900 West Loop South Suite 1500
                 Houston, TX 77027
                 AonLawyerClaim@WesternLitigation.com
                 PH - 908.947.1837

Item 9.          **Jurisdiction and Governing Law State: New Jersey, USA**

Item 10.          **Endorsements Effective at Inception:**

                 AFB Short Rate Cancellation Table
                 Minimum Earned Premium
                 Nuclear Incident Exclusion Clause
                 War and Civil War Exclusion Clause
                 Service of Suit Clause
                 Radioactive Contamination Exclusion Clause

The Underwriters have caused this Policy to be signed and attested by its authorized officers, but it shall not be valid unless also signed by another duly authorized representative of the Insurer.

by  _____          Dated:  _____11/11/2020_____
    Authorized Representative

## AFB SHORT RATE CANCELLATION TABLE ENDORSEMENT

Notwithstanding anything to the contrary contained herein and in consideration of the premium for which this Insurance is written it is agreed that in the event of cancellation thereof by the Assured the Earned Premium shall be computed as follows:

**SHORT RATE CANCELLATION TABLE**

### SHORT RATE CANCELLATION TABLE

A.   For insurances written for one year:

| Days Insurance in Force | | Per cent. of One Year Premium | Days Insurance in Force | | Per cent. of One Year Premium |
|---|---|---|---|---|---|
| 1 - 73 | ................................ | 25 | 206 - 209 | ................................ | 66 |
| 74 - 76 | ................................ | 31 | 210 - 214 | (7 months) ..................... | 67 |
| 77 - 80 | ................................ | 32 | 215 - 218 | ................................ | 68 |
| 81 - 83 | ................................ | 33 | 219 - 223 | ................................ | 69 |
| 84 - 87 | ................................ | 34 | 224 - 228 | ................................ | 70 |
| 88 - 91 | (3 months) ..................... | 35 | 229 - 232 | ................................ | 71 |
| 92 - 94 | ................................ | 36 | 233 - 237 | ................................ | 72 |
| 95 - 98 | ................................ | 37 | 238 - 241 | ................................ | 73 |
| 99 - 102 | ................................ | 38 | 242 - 246 | (8 months) ..................... | 74 |
| 103 - 105 | ................................ | 39 | 247 - 250 | ................................ | 75 |
| 106 - 109 | ................................ | 40 | 251 - 255 | ................................ | 76 |
| 110 - 113 | ................................ | 41 | 256 - 260 | ................................ | 77 |
| 114 - 116 | ................................ | 42 | 261 - 264 | ................................ | 78 |
| 117 - 120 | ................................ | 43 | 265 - 269 | ................................ | 79 |
| 121 - 124 | (4 months) ..................... | 44 | 270 - 273 | (9 months) ..................... | 80 |
| 125 - 127 | ................................ | 45 | 274 - 278 | ................................ | 81 |
| 128 - 131 | ................................ | 46 | 279 - 282 | ................................ | 82 |
| 132 - 135 | ................................ | 47 | 283 - 287 | ................................ | 83 |
| 136 - 138 | ................................ | 48 | 288 - 291 | ................................ | 84 |
| 139 - 142 | ................................ | 49 | 292 - 296 | ................................ | 85 |
| 143 - 146 | ................................ | 50 | 297 - 301 | ................................ | 86 |
| 147 - 149 | ................................ | 51 | 302 - 305 | (10 months) ..................... | 87 |
| 150 - 153 | (5 months) ..................... | 52 | 306 - 310 | ................................ | 88 |
| 154 - 156 | ................................ | 53 | 311 - 314 | ................................ | 89 |
| 157 - 160 | ................................ | 54 | 315 - 319 | ................................ | 90 |
| 161 - 164 | ................................ | 55 | 320 - 323 | ................................ | 91 |
| 165 - 167 | ................................ | 56 | 324 - 328 | ................................ | 92 |
| 168 - 171 | ................................ | 57 | 329 - 332 | ................................ | 93 |
| 172 - 175 | ................................ | 58 | 333 - 337 | (11 months) ..................... | 94 |
| 176 - 178 | ................................ | 59 | 338 - 342 | ................................ | 95 |
| 179 - 182 | (6 months) ..................... | 60 | 343 - 346 | ................................ | 96 |
| 183 - 187 | ................................ | 61 | 347 - 351 | ................................ | 97 |
| 188 - 191 | ................................ | 62 | 352 - 355 | ................................ | 98 |
| 192 - 196 | ................................ | 63 | 356 - 360 | ................................ | 99 |
| 197 - 200 | ................................ | 64 | 361 - 365 | (12 months) ..................... | 100 |
| 201 – 205 | ................................ | 65 | | | |

I.   For Insurances written for more or less than one year:

    A.   If insurance has been in force for 12 months or less, apply the standard short rate table for annual insurances to the full annual premium determined as for an insurance written for a term of one year.

B.   If insurance has been in force for more than 12 months:

    i.    Determine full annual premium as for an insurance written for a term of one year.

    ii.    Deduct such premium from the full insurance premium, and on the remainder calculate the pro rata Earned Premium on the basis of the ratio of the length of time beyond one year the insurance has been in force to the length of time beyond one year for which the insurance was originally written.

    iii.    Add premium produced in accordance with items (a) and (b) to obtain Earned Premium during full period insurance has been in force.

Furthermore and notwithstanding the foregoing, Underwriters shall retain the total premium for this Policy, such total premium to be deemed earned upon inception of the Policy if any claim or any circumstance that could reasonably be the basis for a claim is reported to Underwriters under this Policy on or before such date of cancellation.

623AFB00089

| Policy Number: | Endorsement Number: |
|---|---|
| Endorsement Effective: | Form Number: |
| Date Issued: | Premium Adjustment: |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**MINIMUM EARNED PREMIUM**

This endorsement modifies insurance under the following:

LAWYERS PROFESSIONAL LIABILITY INSURANCE

This policy is subject to a minimum earned premium.

If this policy is canceled at your request, you agree with us:

1. that the minimum earned premium for this policy is 25 % of the Total Premium;

2. that such minimum earned premium is not subject to short rate or pro-rate adjustment; and

3. that cancellation for non-payment of premium, after the effective date of the policy, will be deemed a request by you for cancellation of this policy and will activate this minimum earned premium provision.

All other terms and conditions of this policy remain unchanged.

This endorsement is a part of your policy and takes effect on the effective date of your policy, unless another effective date is shown below.

Countersigned by _____

Authorized Representative

### NUCLEAR INCIDENT EXCLUSION CLAUSE-LIABILITY-DIRECT (BROAD) (U.S.A.)

For attachment to insurances of the following classifications in the U.S.A., its Territories and Possessions, Puerto Rico and the Canal Zone:

> Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability),

not being insurances of the classifications to which the Nuclear Incident Exclusion Clause-Liability-Direct (Limited) applies.

This Policy* does not apply:

I.   Under any Liability Coverage, to injury, sickness, disease, death or destruction:

    A.   with respect to which an insured under the Policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

    B.   resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this Policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II.   Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III.   Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if:

    A.   the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;

    B.   the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

    C.   the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

IV.   As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source material, special nuclear material or by-product material; "source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act 1954 or in any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof; "nuclear facility" means:

    A.   any nuclear reactor,

B.   any equipment  or device designed or used for (1) separating the isotopes of uranium or plutonium,  (2) processing or utilizing spent fuel, or (3) handling,  processing or packaging waste,

C.   any equipment  or device used for the processing, fabricating or alloying of special nuclear material  if at any time the total amount of such material  in the custody of the insured at the premises  where such equipment or device is located consists of or contains more than 25 grams of plutonium  or uranium 233 or any combination  thereof, or more than 250 grams of uranium 235,

D.   any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.  With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination  of property. It is understood and agreed that, except as specifically provided in the foregoing to the contrary, this clause is subject to the terms, exclusions, conditions  and limitations  of the Policy to which it is attached.

*NOTE:  As respects policies which afford liability  coverages and other forms of coverage in addition, the words underlined  should be amended to designate the liability  coverage to which this clause is to apply.

17/3/60
NMA1256

**WAR AND CIVIL WAR EXCLUSION CLAUSE**

(Approved by Lloyd's Underwriters' Non-Marine  Association)

Notwithstanding anything to the contrary contained herein this Policy does not cover liability for injury Loss or Damage directly or indirectly occasioned by, happening through or in consequence of war, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power or confiscation or nationalisation or requisition or destruction of or damage to property by or under the order of any government or public or local authority.

1/1/38
NMA464 (amended)

**SERVICE OF SUIT CLAUSE (U.S.A.)**

It is agreed that in the event of the failure of the Underwriters hereon to pay any amount claimed to be due hereunder, the Underwriters hereon, at the request of the Insured (or Reinsured), will submit to the jurisdiction of a Court of competent jurisdiction within the United States. Nothing in this Clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States.

It is further agreed that service of process in such suit may be made upon Mendes & Mount LLP, 750 Seventh Avenue, New York NY 10019, and that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of the Insured (or Reinsured) to give a written undertaking to the Insured (or Reinsured) that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Underwriters hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured (or Reinsured) or any beneficiary hereunder arising out of this contract of insurance (or reinsurance), and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

24/4/86
NMA 1998

**RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE -
PHYSICAL DAMAGE - DIRECT (U.S.A.)**

This Policy does not cover any loss or damage arising directly or indirectly from nuclear reaction nuclear radiation or radioactive contamination how ever such nuclear reaction nuclear radiation or radioactive contamination may have been caused * NEVERTHELESS if Fire is an insured peril and a Fire arises directly or indirectly from nuclear reaction nuclear radiation or radioactive contamination any loss or damage arising directly from that Fire shall (subject to the provisions of this Policy) be covered EXCLUDING how ever all loss or damage caused by nuclear reaction nuclear radiation or radioactive contamination arising directly or indirectly from that Fire.

*NOTE. - If Fire is not an insured peril under this Policy the w ords "NEVERTHELESS" to the end of the clause do not apply and should be disregarded.

7/5/59
NMA 1191

LAWYERS PROFESSIONAL LIABILITY

**THIS IS A CLAIMS MADE & REPORTED POLICY – PLEASE READ CAREFULLY.**

In consideration of the payment of the premium and in reliance upon the statements in the application attached hereto and made a part hereof, and subject to all of the terms of the policy, the Underwriters designated in the Declarations (hereinafter "the Underwriters") agrees with the Named Insured as stated in the Declarations (hereinafter "Named Insured") as follows:

## INSURING AGREEMENTS

### I.   COVERAGE – PROFESSIONAL LIABILITY

The Underwriters will pay on behalf of the INSURED all sums in excess of the deductible that the INSURED becomes legally obligated to pay as DAMAGES as a result of any CLAIM first made against the INSURED during the POLICY PERIOD, and reported to the Underwriters in writing during the POLICY PERIOD by reason of any act, error, omission or PERSONAL INJURY arising out of PROFESSIONAL SERVICES rendered or that should have been rendered by the INSURED or by any person for whose negligent act, error, omission or PERSONAL INJURY the INSURED is legally liable, and arising out of the conduct of the INSURED's profession as a Lawyer or Notary Public, provided always that such act, error, omission or PERSONAL INJURY occurs:

A.   during the POLICY PERIOD; or

B.   on or after to the RETROACTIVE DATE if any, and prior to the effective date of this policy.

Subject to all other terms and conditions of this policy, when the INSURED provides a PROFESSIONAL SERVICE, an act, error, omission or PERSONAL INJURY of the INSURED in such capacity will be deemed for the purpose of Insuring Agreement I. to be the performance of PROFESSIONAL SERVICES for others in the INSURED's capacity as a lawyer, but only to the extent that such act, error, omission or PERSONAL INJURY is of the type for which in the lawyer-client relationship, the INSURED would be legally responsible as a lawyer. This coverage will not apply to any loss sustained by the INSURED as the beneficiary or distributee of any trust or estate.

### II.   DEFENSE, INVESTIGATION AND SETTLEMENT OF CLAIMS

As respects such insurance as is afforded by this policy, the Underwriters will:

A.   have the right and duty to defend, including selection of counsel and arbitrators, in the INSURED's name and on the INSURED's behalf any CLAIM for DAMAGES against the INSURED, even if such CLAIM is groundless, false or fraudulent and have the right to make such investigation and negotiation of any CLAIM as it deems expedient. The Underwriters has no duty to defend any CLAIM to which this insurance does not apply; and

B.   not settle any CLAIM without the written consent of the INSURED. If, however, the INSURED refuses to consent to a settlement recommended by the Underwriters and elects to contest the CLAIM or continue legal proceedings in connection with such CLAIM, the Underwriter's liability for the CLAIM will not exceed the amount for which the CLAIM could have been settled, including CLAIMS EXPENSES incurred with its consent up to the date of such refusal, or the applicable limit of liability, whichever is less. In any event, the Underwriters will not be obligated to pay any DAMAGES or defend or continue to defend any CLAIM after the limit of the Underwriter's liability has been exhausted by payment of DAMAGES and/or CLAIMS EXPENSES, or by deposit of the applicable limit of liability in a court of competent jurisdiction.

### III.   CLAIMS EXPENSES

CLAIMS EXPENSES will be included within the deductible and the limit of liability and will not be in addition thereto. Such CLAIMS EXPENSES will reduce the available limit of liability

### IV.   TERRITORY

This policy applies to an act, error, omission or PERSONAL INJURY that occurs anywhere in the world provided CLAIM is made and suit or arbitration proceedings are brought against the INSURED in the United States of America, its territories or possessions, or Canada.

## DEFINITIONS

**I.**  CLAIM, whenever used in this policy means a written demand received by the INSURED for DAMAGES, including, but not limited to, the service of suit or institution of arbitration proceedings against the INSURED. A CLAIM shall be deemed to be made on the earliest date written notice of the CLAIM or POTENTIAL CLAIM is received by an INSURED.

**II.**  CLAIMS EXPENSES, whenever used in this policy means:

    A.  fees charged by any lawyer designated by the Underwriters; and

    B.  if authorized by the Underwriters, all other reasonable fees, costs and expenses resulting from the investigation, adjustment, defense and appeal of any CLAIM, suit or proceeding.

        1.  CLAIMS EXPENSES does not include salaries and expenses of regular employees or officials of an INSURED or
        2.  the Underwriters.

**III.**  DAMAGES, whenever used in this policy means the monetary portion of any judgment, award or settlement, provided always that DAMAGES does not include:

    A.  punitive, exemplary, or treble DAMAGES;

    B.  sanctions, fees, fines or penalties imposed by law;

    C.  fees paid or owed as remuneration for legal services; or

    D.  matters that may are uninsurable under the law pursuant to which this policy may be construed.

**IV.**  INSURED, whenever used in this policy means:

    A.  The Named Insured shown in the Declarations and any PREDECESSOR FIRM thereof;

    B.  any lawyer or professional corporation who was or is a partner, officer, director or employee of the Named Insured, but only as respects PROFESSIONAL SERVICES rendered on behalf of the Named Insured or any PREDECESSOR FIRM thereof;

    C.  any lawyer who was or is acting "of counsel" or "independent contractor" to the Named Insured, but only in respect to PROFESSIONAL SERVICES rendered on behalf of the Named Insured or any PREDECESSOR FIRM thereof.

    D.  any other present or former employee of the Named Insured or any PREDECESSOR FIRM thereof solely while acting on behalf of the Named Insured or any PREDECESSOR FIRM thereof; or

    E.  the heirs, executors, administrators and legal representatives of any INSURED in the event of an INSURED's death, incapacity or bankruptcy, but only in respect to PROFESSIONAL SERVICES rendered prior to such INSURED's death, incapacity or bankruptcy.

**V.**  PERSONAL INJURY, whenever used in this policy means false arrest, detention or imprisonment, wrongful entry or eviction or other invasion of private occupancy, malicious prosecution, libel, slander or breach of privacy.

**VI.**  POLICY PERIOD, whenever used in this policy means the period from the effective date of this policy to the expiration date as set forth in the Declarations or earlier termination date, if any, of this policy.

**VII.**  POTENTIAL CLAIM, whenever used in this policy means any act, error, omission or PERSONAL INJURY that might reasonably give rise to a CLAIM against any INSURED.

**VIII.** PREDECESSOR FIRM, whenever used in this policy means:

    A.   any legal entity that was engaged in the practice of law to whose financial assets and liabilities the Named Insured is the majority successor in interest; or

    B.   Any legal entity that was engaged in the practice of law and at least fifty percent (50%) of the principals, owners, officers, or partners of such entity have joined the Named Insured

**IX.**  RETROACTIVE DATE, whenever used in this policy means the date on or after which any act, error, omission or PERSONAL INJURY must have occurred in order for any CLAIM arising there from to be covered under this policy. CLAIMs arising from any act, error, omission or PERSONAL INJURY prior to this date are not covered in this policy

**X.**  PROFESSIONAL SERVICES,   whenever used in this policy means services performed by an Insured lawyer for others as:

    A.   A lawyer

    B.   An administrator, conservator, receiver, executor, trustee, guardian or fiduciary;

    C.   A mediator, arbitrator or notary public;

    D.   A Director or Officer of any bar association;

    E.   A title insurance agent, provided such services are connected with and incidental to the Insured's practice of law and are pursuant to a written agency agreement with a licensed title insurance company

**EXCLUSIONS**

This policy does not apply to any CLAIM:

A.  arising out of any criminal, dishonest, fraudulent or malicious act, error or omission of any INSURED, committed with actual, criminal, dishonest, fraudulent or malicious purpose or intent. However, Underwriters will provide a defense until such time as the act, error or omission is found to be illegal, dishonest, fraudulent, criminal, malicious, or was an intentional or knowing violation of the law by trial, court ruling, regulatory ruling or admission.

B.  based upon or arising out of bodily injury, sickness, disease or death of any person, or damage to or destruction of any tangible property or loss of use thereof;

C.  based upon or arising out of any INSURED's activities as an officer, director, partner, manager or employee of any corporation, operation or organization other than the Named Insured;

D.  arising out of or in connection with the conduct of any business enterprise other than the Named Insured (including the ownership, maintenance or care of any property in connection therewith) which is or was more than 10% owned by any INSURED or in which any INSURED is or was a partner, or which is or was directly or indirectly controlled, operated or managed by any INSURED either individually or in a fiduciary capacity;

E.  made by any former or present INSURED under this policy against any other INSURED under this policy;

F.  based upon or arising out of discrimination by any INSURED on the basis of race, creed, national origin, age, sex or marital status;

G.  based upon or arising out of any INSURED's capacity as a public official or an employee of a governmental body, subdivision or agency unless any INSURED is deemed to be such solely because any INSURED has rendered legal services to such governmental body and the remuneration for such legal services inures to the benefit of the Named Insured;

H.  based upon or arising out of the Employee Retirement Income Security Act of 1974, Public Law 93-406, and amendments thereto, or any other similar state or local law against any INSURED while acting as a fiduciary within the meaning of said laws. Nothing in the foregoing will be deemed to exclude coverage for acts, errors or omissions or PERSONAL INJURY committed while providing otherwise covered legal advice to a fiduciary;

I.  arising out of conversion, misappropriation or improper commingling of client funds;

J.  arising out of any INSURED's gaining in fact any personal profit or advantage to which any INSURED was not legally entitled;

K.  based upon or arising out of the promotion, sale, solicitation, or recommendation of any securities, real estate or other investments by any INSURED;

L.  based upon, arising out of, or attributable to any fact, circumstance or situation which has been the subject of any written notice given under any prior policy;

M.  based upon, arising out of, or attributable to any fact, circumstance or situation, which, prior to the inception date of the Policy, any INSURED knew or reasonably should have known might give rise to a CLAIM.

N.  any Claim or Incident based upon, arising out of or in any way related to the transfer, payment or delivery of funds, money or property caused or induced by trick, artifice, or the fraudulent misrepresentation of a material fact (including but not limited to social engineering, pretexting, phishing, spearfishing or any other confidence trick) by a person purporting to be an employee, partner, attorney, vendor, client or other natural person, to an insured individual, who is authorized by an insured entity to transfer funds, money or property, or instruct another insured individual to transfer funds, money or property

**LIMIT OF LIABILITY AND DEDUCTIBLE**

I.  **LIMIT OF LIABILITY**

A.  The limit of liability for each CLAIM will apply in excess of the deductible. CLAIMS EXPENSES and amounts paid or incurred in satisfaction of CLAIMs are subject to the applicable limits of liability.

B.   All CLAIMS EXPENSES will first be subtracted from the limit of liability, with the remainder, if any, being the amount available to pay DAMAGES.

C.   The liability of the Underwriters for the combined total of DAMAGES and CLAIMS EXPENSES for each CLAIM first made against the INSURED during the POLICY PERIOD, including the Extended Reporting Period, if purchased, will not exceed the amount stated in the Declarations for "Each CLAIM".

D.   Subject to C. above, the liability of the Underwriters will not exceed the amount stated in the Declarations as "Aggregate" as a result of all CLAIMs first made against the INSURED during the POLICY PERIOD, including the Extended Reporting Period, if purchased.

## II.   DEDUCTIBLE

The deductible amount stated in the Declarations, shall be satisfied by payments by any INSURED seeking any benefits under the policy of DAMAGES and CLAIMS EXPENSES resulting from each CLAIM first made and reported to the Underwriters during the POLICY PERIOD and the Extended Reporting Period as a condition precedent to the payment by the Underwriters of any amounts hereunder and the Underwriters shall be liable only for amounts in excess of such Deductible subject to Underwriters' total liability not exceeding the limit set forth in Item 4 of the Declarations. The INSUREDs shall make direct payments within the deductible to appropriate parties designated by the Underwriters until such time as the deductible is fully satisfied.

## III.   MULTIPLE INSUREDS, CLAIMS AND CLAIMANTS

A.   The inclusion of more than one INSURED in any CLAIM or the making of CLAIMs by more than one person or organization will not operate to increase the limits of liability and deductible.

B.   Two or more CLAIMs arising out of a single act, error, omission or PERSONAL INJURY or a series of related acts, errors, omissions or more than one PERSONAL INJURY shall constitute a single CLAIM.

C.   All related CLAIMs whenever made shall be considered first made on the date on which the earliest CLAIM arising out of such act, error, omission or PERSONAL INJURY, or related acts, errors, omissions or PERSONAL INJURIES was first made and all such CLAIMs are subject to one limit of liability and deductible. A CLAIM shall be deemed to be first made on the earliest date written notice of the CLAIM or related CLAIMs is received by an INSURED.

## IV.   REIMBURSEMENT TO THE UNDERWRITERS

If the Underwriters has paid any amounts in satisfaction of any CLAIMs and/or CLAIMS EXPENSES in excess of the applicable limit of liability, or within the amount of the applicable deductible, the INSUREDs, jointly and severally, will be liable to the Underwriters for any and all such amounts and, upon demand, must pay such amounts to the Underwriters.

## CONDITIONS

## I.   ACTION AGAINST THE UNDERWRITERS

A.   No action shall lie against the Underwriters unless, as a condition precedent thereto, the INSURED has fully complied with all the terms of this policy, nor until the amount of the INSURED's obligation to pay has been finally determined either by judgment against the INSURED after actual trial or by written agreement of the INSURED, the claimant and the Underwriters. Any person or organization or the legal representative thereof who has secured such judgment or written agreement will thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy.

B.   Nothing contained in this policy gives any person or organization any right to join the Underwriters as a codefendant in any action against the INSURED to determine the INSURED's liability.

## II.   ASSIGNMENT

Assignment of interest under this policy will not bind the Underwriters unless its consent is endorsed hereon. If, however, an INSURED should die or be adjudged incompetent, this policy will cover the INSURED's legal representative as the INSURED with respect to liability previously incurred and covered by this policy.

## III.   BANKRUPTCY

Bankruptcy or insolvency of the INSURED or of the INSURED's estate will not relieve the Underwriters of any of its obligations under this policy or deprive the Underwriters or any of its rights under the Policy.

IV.     **CANCELLATION**

A.   This policy may be canceled by the Named Insured by surrender thereof to the Underwriters or by mailing to the Underwriters written notice stating when thereafter such cancellation will be effective. If this policy is canceled by the Named Insured, the Underwriters will retain the customary short rate portion of the premium.

B.   This policy may be canceled by the Underwriters by mailing to the first Named Insured at the last mailing address known to the Underwriters, written notice stating when, not less than sixty (60) days thereafter, such cancellation will be effective, but this policy may be canceled as aforesaid by not less than ten (10) days notice when the cancellation is being effected by reason of the Named Insured's nonpayment of premium. Proof of mailing will be sufficient proof of notice and the effective date of cancellation stated in the notice will become the end of the POLICY PERIOD. If the Underwriters cancel, earned premium will be computed pro rata. The cancellation will be effective even if we have not made or offered a refund.

C.   Delivery of written notice by the Underwriters will be equivalent to mailing.

V.      **CHANGES**

Notice to any agent or knowledge possessed by any agent or by any other person will not affect a waiver or change in any part of this policy nor will the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy.

VI.     **ENTIRE AGREEMENT**

By acceptance of this policy, the INSURED reaffirms as of the effective date of this policy that A. the statements in the application attached hereto and made a part hereof are the INSURED's agreements and representations; B. this policy is issued in reliance upon the truth and accuracy of such representations; and C. this policy embodies all agreements between the INSURED and the Underwriters or any of its agents relating to this insurance.

VII.    **EXTENDED REPORTING PERIOD**

A.   **If the Underwriters cancel or non-renews this policy the INSURED can report a CLAIM first made during the policy period within fifteen (15) days after the effective date of the cancellation or non-renewal.**

B.   If the Underwriters or the Named Insured cancels or non-renews this policy, the Named Insured will have the right to extend the time past the end of the POLICY PERIOD for reporting any CLAIM made against an INSURED for an additional twelve (12) months at 100% of the expiring premium; twenty-four (24) months at 175% of the expiring premium; or thirty-six (36) months at 225% of the expiring premium.

C.   The option described in B. above applies only to CLAIMs otherwise covered by this policy that are first made against the INSURED during the policy period and first reported to the Underwriters during the policy period or the Extended Reporting Period. Coverage for CLAIMs first made during the policy period and first reported during the policy period or Extended Reporting Period applies only to a CLAIM for an act, error, omission or PERSONAL INJURY that occurred prior to the end of the POLICY PERIOD and on or after the RETROACTIVE DATE, if any.

D.   This right to purchase the Extended Reporting Endorsement is subject to the following conditions:

   i.   This policy was non-renewed for reasons other than non-payment of premium;

   ii.  Any deductible amounts due the Underwriters must be paid by the INSURED;

   iii. The Named Insured must send written notice to the Underwriters of the intention to purchase the Extended Reporting Endorsement accompanied by the additional premium. Written notice and premium payment must be received by the Underwriters within thirty (30) days after the termination date of the POLICY PERIOD;

   iv.  Separate or new limits do not apply to the Extended Reporting Period. In no event will the Underwriters be required to make any payment for CLAIMs or CLAIMS EXPENSES that exceed the balance of the limit of liability in effect at the time the policy is terminated;

   v.   This option to extend the reporting period does not extend the POLICY PERIOD;

   vi.  This option is not available if any INSURED's license or right to practice his or her profession is revoked by, suspended by, or surrendered to any court or regulatory agency

vii.   Premium  for this option is fully earned w hen received.

**VIII.    INSURED'S  DUTIES  IN THE EVENT  OF A  CLAIM**

As a condition  precedent  to the availability  of coverage  under this policy, the INSURED's  duties  in the event of a  CLAIM
are as follow s:

    A.   If a CLAIM  is made  against the INSURED,  the INSURED  must give immediate  w ritten notice to the Underw riters.
       Notice should include every demand,  notice, summons  or other process received by the INSURED;

    B.   The INSURED  must cooperate  w ith the Underw riters in the defense, investigation and settlement  of any CLAIM.
       Upon the Underw riter's request, the INSURED  must submit to examination  or questioning, attend hearings,
       depositions  and trials  and assist in effecting settlements,  securing and giving evidence and obtaining  the
       attendance  of w itnesses in the conduct of suits;

    C.   The INSURED  must assist the Underw riters in effecting any rights of indemnity,  contribution or apportionment
       available  to the INSURED  or the Underw riters; and

    D.   The INSURED  shall not, w ithout prior w ritten consent of the Underw riters, make  any payment, admit  liability,
       settle any CLAIM,  assume any obligations,  agree to arbitration or any similar  means of resolution of any dispute,
       w aive any rights or incur any CLAIMS  EXPENSES  on behalf of the Underw riters.

**IX.    OTHER  INSURANCE**

If there is other insurance applicable  to a CLAIM  covered by this policy, this policy shall be excess insurance over and
above the applicable  limits  of liability  of all such other insurance unless  such other insurance is w ritten only as specific
excess insurance over the limits  of liability  provided in this policy.

**X.    PREMIUMS**

The first Named  Insured  show n in the Declarations:

    A.   Is responsible for the payment  of all premiums;  and

    B.   Will be the payee for any return premiums  w e pay.

**XI.    REPORTING  OF POTENTIAL  CLAIMS**

    A.   If, during the POLICY  PERIOD,  any INSURED  first becomes aw are of a POTENTIAL  CLAIM the INSURED  must
       give w ritten notice of such act, error, omission  or PERSONAL  INJURY  to the Underw riters as soon as practicable
       during the POLICY  PERIOD.  Any CLAIM  subsequently  made  against any INSURED  arising out of that act, error,
       omission  or PERSONAL  INJURY  w ill be considered to have been made during the POLICY  PERIOD.

    B.   Written notice of a potential CLAIM  must include:

       1.   the specific act, error, omission  or PERSONAL  INJURY  including  date(s) thereof;

       2.   the injury  or damage  that may reasonably result; and

       3.   the circumstances by w hich any INSURED  became  aw are of the act, error, omission  or PERSONAL  INJURY.

    C.   The INSURED  w ill cooperate  w ith the Underw riters as set forth in Condition  VIII.

**XII.    SUBROGATION**

In the event of payment  by the Underw riters under this policy, the Underw riters w ill be subrogated to all of the INSURED's
rights of recovery against  any person or organization. The INSURED  w ill cooperate  w ith the Underw riters and do w hatever
is necessary to secure such rights and w ill do nothing to prejudice  such rights.



| Applicant Firm Name: | Law Offices of Joshua L. Thomas, PLLC | Phone: | 215-806-1733 |
| Address: | | Fax: | 888-314-8910 |
| 225 Wilmington West Chester Pike Suite 200 | | Website: | LOJLT.COM |
| City: | Chadds Ford | Email: | JoshuaLThomas@gmail.com |
| State: | PA | Zip | 19317 |
| Country: | USA | | |

Re: Application for Lawyers Professional Liability Insurance

Application:   Starstone     Date:   10/15/2020

(Name of Carrier/Professional Liability Program)      (Month/Day/Year)

This document confirms receipt of the Applicant Firm's request for lawyers professional liability insurance with the Company. Your firm's request for coverage included an application for lawyers professional liability insurance as referenced above (herein, "submitted application").

In lieu of requiring your firm to complete the Company's application form, the Company accepts the submitted application subject to the following:

1. The Applicant Firm agrees that we may use the information contained in such application in underwriting your account;

2. The Applicant Firm hereby represents to the Company that all of the statements made in the application referenced above shall be deemed to be made to the Company;

3. The Applicant Firm hereby represents that the statements and information contained in said application are true, accurate and complete as of the date of this statement and that there have been no material changes to the statements made in the application since the date thereof;

4. The Applicant Firm hereby acknowledges a continuing obligation to report to the Company as soon as practicable any material changes in all such information, after signing below and prior to issuance of the policy, and acknowledge that the Company shall have the right to withdraw or modify any outstanding quotations, and/or authorization or agreement to bind the insurance based upon such changes;

5. The Applicant Firm hereby represents that it and any person proposed for coverage, after inquiry of all attorneys and employees of the firm, including all Of Counsel and Independent Contractor attorneys, are not aware of any claims against the proposed insureds or any acts or omissions that might reasonably be expected to be the basis of a claim against the proposed insureds, other than those disclosed in the submitted application;

6. The Applicant Firm hereby represents that all claims or circumstances against any proposed insureds have been reported to prior insurance carriers, and the Applicant Firm hereby acknowledges its understanding that failure to do so may result in lack of coverage;

7. The Applicant Firm acknowledges and understands that if any proposed insured is aware of any such fact, circumstance or situation, whether or not disclosed, then any claim arising therefrom may be excluded from coverage under the requested policy; and

8. The Applicant Firm hereby agrees the Company will be issuing its policy in reliance upon the conditions and statements made in this letter and the application both of which shall be deemed to be part of the policy.

**Signature**

**NOTICE:** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.

Sign & Date in ink

*Joshua S. Thomas*       11/4/2020

**Owner, Partner or Officer**      **Date**      **Signature of**

Joshua L. Thomas

**Print Name and Title**



**Josh Thomas <joshualthomas@gmail.com>**

## Lawyers Professional Liability Insurance

**Josh Thomas** <joshualthomas@gmail.com>              Tue, Jan 19, 2021 at 11:38 AM
To: Lionel Artom-Ginzburg <lionel@artom-ginzburg.com>

Right. Review the statement I sent you prior to the hearing today that included all of that. I look forward to you withdrawing immediately.

Joshua Thomas, Esq.

CONFIDENTIALITY NOTICE: UNAUTHORIZED INTERCEPTION IS PROHIBITED BY FEDERAL LAW [Electronic Communication Privacy Act of 1986, 18 U. S. C. 2701(a) and 2702(a)]

On Tue, Jan 19, 2021 at 11:36 AM Lionel Artom-Ginzburg <lionel@artom-ginzburg.com> wrote:

I will happy withdraw my statement to the Court provided you comply with the Court's order, which included:

"As required by Rule 26(a)(1)(A)(iv), Defendant shall disclose to Plaintiffs'
counsel before or during the parties' 26(f) conference whether he was covered by
malpractice insurance during the relevant time period alleged in the Complaint.
If Defendant was covered by malpractice insurance, he shall identify the name of
the carrier, policy number and contact information, and provide to Plaintiffs for
nspection and copying any such agreement. Fed. R. Civ. P. 26(a)(1)(A)(iv).
b. If Defendant was not covered, was denied coverage, or coverage applicability is
still being evaluated, he shall affirmatively state so. He shall also identify the
insurance company that denied him coverage, or that is evaluating whether
there is coverage, and the insurance company, the policy number and the claim
number assigned. All of Defendant's insurance coverage information, or lack of
coverage information, must be in writing and contained within the 26(f) report
submitted to this Court in preparation for the Rule 16 conference."

A mere email chain to a carrier which does not include a policy, a policy number, dates of coverage, etc. does not comply with the order.

On Tue, Jan 19, 2021 at 11:23 AM Josh Thomas <joshualthomas@gmail.com> wrote:
Mr. Artom-Ginzburg,

Please see the attached email chain, showing the complaint was sent to
the insurance carrier the morning I went and received the hard copy
from the office. That said, please immediately correct the record with
the court, or I will submit for sanctions against your clients and you
personally for your clear material misstatement in your communication
to the court.

Joshua Thomas, Esq.

CONFIDENTIALITY NOTICE: UNAUTHORIZED INTERCEPTION IS PROHIBITED BY
FEDERAL LAW [Electronic
Communication Privacy Act of 1986, 18 U. S. C. 2701(a) and 2702(a)]

---------- Forwarded message ---------
From: Josh Thomas <joshualthomas@gmail.com>
Date: Tue, Dec 8, 2020 at 9:40 AM
Subject: Re: Lawyers Professional Liability Insurance
To: AffinityLawyersAdministration <AffinityLawyersAdmin@aon.com>

Hello,

I just received this document this morning, and I am sending you
notice of it, thank you.

Joshua Thomas, Esq.

CONFIDENTIALITY NOTICE: UNAUTHORIZED INTERCEPTION IS PROHIBITED BY
FEDERAL LAW [Electronic
Communication Privacy Act of 1986, 18 U. S. C. 2701(a) and 2702(a)]

On Mon, Nov 16, 2020 at 12:01 PM AffinityLawyersAdministration
<AffinityLawyersAdmin@aon.com> wrote:
>
> Good afternoon,
>
> Please find attached your professional liability policy. Please read the policy and all endorsements carefully, to
make certain that this reflects the coverage that you selected for this policy term. If you have any questions or see
any discrepancies, contact us immediately.
>
> Please inform us immediately, if during the policy period, there are material changes to your firm. Such changes
include, but not limited to: firm name, merger/acquisition, attorney deletion/addition, ownership, type of practice.
This will help us to adjust your coverage, as needed.
>
> If you should have a claim or incident to report, please refer to your policy information packet for directions on
reporting such claim or incident.
>
> Aon Attorney's Advantage Team

> 
> Aon Affinity / Affinity Integrated Services
> 
> 1100 Virginia Drive | Suite 250 | Ft. Washington, PA 19034
> 
> 
> 
> CONFIDENTIALITY STATEMENT: This message is intended only for the addressee and may contain
information that is confidential or privileged. Unauthorized use is strictly prohibited and may be unlawful. If you are
not the intended recipient, or the person responsible for delivering to the intended recipient, you should not read,
copy, disclose or otherwise use this message, except for the purpose of delivery to the addressee. If you have
received this email in error, please delete it and inform the sender immediately via email.
> 
> To opt out from receiving these types of emails from Aon Attorneys Advantage please click here to unsubscribe.
> 
> 
> 
> 


--

Lionel Artom-Ginzburg, Esquire

834 Chestnut Street, Suite 206
Philadelphia, PA 19107
215-925-2915
267-930-3934- Fax


**The information in this e-mail transmission contains proprietary and business sensitive
information and may contain attorney work product or attorney-client communication.
Unauthorized interception of this e-mail may constitute a violation of law. If you are not
the intended recipient, you are hereby notified that any review, dissemination,
distribution or duplication of this communication is strictly prohibited. You are also
asked to contact the sender by reply email and immediately destroy all copies of the
original message.**

 Virus-free. www.avast.com

JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

FCS Capital, LLC, Barry Shargel, and Emil Yashayev

**(b)** County of Residence of First Listed Plaintiff    Bergen
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Lionel Artom-Ginzburg, Esq., 834 Chestnut Street, Suite 206, Philadelphia, PA 19107. (215) 925-2915.

## DEFENDANTS

Joshua L. Thomas, Esquire

County of Residence of First Listed Defendant    Delaware
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question *(U.S. Government Not a Party)*
- [x] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*    *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [x] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [x] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability |    Product Liability | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| | | | | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | | [ ] 485 Telephone Consumer Protection Act |
| [x] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 371 Truth in Lending | [ ] 720 Labor/Management Relations | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | [ ] 380 Other Personal Property Damage | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | | [ ] 385 Property Damage Product Liability | [ ] 751 Family and Medical Leave Act | [ ] 862 Black Lung (923) | |
| | | | [ ] 790 Other Labor Litigation | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 791 Employee Retirement Income Security Act | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | [ ] 950 Constitutionality of State Statutes |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. s1391

Brief description of cause:
Legal Malpractice

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $
150,000

CHECK YES only if demanded in complaint:

JURY DEMAND:   [x] Yes   [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions:)*

JUDGE   Wolson    DOCKET NUMBER   2:18-cv-03723

DATE
Nov 9, 2020

SIGNATURE OF ATTORNEY OF RECORD
*Lionel C. Artom*

### FOR OFFICE USE ONLY

RECEIPT #    AMOUNT    APPLYING IFP    JUDGE    MAG. JUDGE

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: ___30 Montgomery St., Suite 1200, Fort Lee, NJ 07302___

Address of Defendant: ___225 WILMINGTON-WEST CHESTER PK STE 200 Chadds Ford, PA 19307___

Place of Accident, Incident or Transaction: ___Eastern District of Pennsylvania___

---

*RELATED CASE, IF ANY:*

Case Number: ___18-cv-03723___     Judge: ___Wolson___     Date Terminated: ___12/11/2019___

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?     Yes ☐   No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?     Yes ☑   No ☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?     Yes ☐   No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?     Yes ☐   No ☑

I certify that, to my knowledge, the within case ☑ is / ☐ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: ___11/09/2020___     ___Sign here___     ___88644___
*Attorney-at-Law / Pro Se Plaintiff*     *Attorney I.D. # (if applicable)*

---

**CIVIL:** (Place a √ in one category only)

**A.** *Federal Question Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☐ 7. Civil Rights
☐ 8. Habeas Corpus
☐ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☐ 11. All other Federal Question Cases
*(Please specify):* _____

**B.** *Diversity Jurisdiction Cases:*

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify):* _____
☐ 7. Products Liability
☐ 8. Products Liability – Asbestos
☑ 9. All other Diversity Cases
*(Please specify):* ___Legal Malpractice___

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____, counsel of record *or* pro se plaintiff, do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: _____     ___Sign here if applicable___     _____
*Attorney-at-Law / Pro Se Plaintiff*     *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

Fcs Capital et al.                    :        CIVIL ACTION
                                      :
            v.                        :
                                      :
Joshua. L. Thomas, Esquire            :        NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.          ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.          ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.          ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.          ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)          ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.          (X)

| | | |
|---|---|---|
| 11/7/2020 | Lionel Artom-Ginzburg | Plaintiffs |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-925-2915 | 267-930-3934 | Lionel@artom-ginzburg.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

IN THE FEDERAL DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FCS Capital, LLC | : |
| And Barry Shargel and Emil Yashayev | : Case No. 2:20-cv- |
| | : |
| v. | : |
| | : |
| Joshua L. Thomas, Esquire | : |

## COMPLAINT

A.   Introduction

This is a legal malpractice action brought in connection with the Defendant's representation of the Plaintiffs in a prior action, No. 2:18-cv-03723-JDW, Shelton v. FCS Capital et al.. Pursuant to Local Rule 40.1(b)(3)(A), this is a related case which should be assigned to Judge Wolson, as it pertains to "the same issue of fact or grows out of the same transaction as another suit[.]"

B.   Jurisdiction/Venue/Jury

Venue is proper under 28 U.S.C. §1391, in that the malpractice alleged occurred in this District and Court. Jurisdiction is founded in complete diversity between Plaintiffs, citizens of New York (Shargel) and New Jersey (FCS Capital, LLC and Yashayev), and Defendant, a citizen of Pennsylvania, and is thus proper under 28 U.S.C. §1332. The matter in controversy exceeds, exclusive of interest and costs, the sum specified by 28 U.S.C. §1332. A jury trial is demanded.

C.   Factual allegations

1.   Plaintiff, FCS Capital, LLC ("FCS Capital"), is a limited liability company with a primary place of business located in New Jersey.

2.      Plaintiff, Barry Shargel ("Shargel"), is an adult individual who lives in the state of New York.

3.      Plaintiff, Emil Yashayev, ("Yashayev") is an adult individual who lives in the state of New Jersey.

4.      Defendant, Joshua L. Thomas, Esquire ("Thomas"), is an adult individual living and working in the state of Pennsylvania.

5.      In August of 2018, a suit was brought by one James Shelton, against the now-Plaintiffs, then-Defendants, FCS Capital, in the Federal District Court of the Eastern District of Pennsylvania, and docketed at No. 2:18-cv-03723-JDW ("Shelton case"), and concerning alleged violations of the Telephone Consumers Protection Act of 1991 ("TCPA"), codified at 47 U.S.C. §227.

6.      Shargel, Yashayev, and FCS Capital are engaged in a consulting business.

7.      Shelton alleged that Shargel, Yashayev, and FCS Capital ("the FCS parties") had violated the TCPA by making calls to a telephone number owned by him which was on the Federal Do-Not-Call list.

8.      Plaintiffs retained Defendant Thomas, a lawyer admitted in the states of Pennsylvania and New Jersey, to defend them in the Shelton case.

9.      Plaintiffs instructed Thomas that the calls alleged in the Complaint were (a) made to a number which is listed as a business number on Mr. Shelton's website, and thus the TCPA was not applicable to the call; (b) that they do not own or use an automatic dialer in their business, another requirement for the TCPA to attach; (c) that all but one of the calls alleged had been made by an individual who no longer worked for FCS Capital at the time of the calls, and that (d), the remaining call, allegedly made by Barry Shargel, one of the principals of FCS Capital, did not appear in any phone records for the date and time alleged by Mr. Shelton.

10.     In short, the FCS Parties gave Thomas enough information and evidence, from the time of his retention, for a complete and meritorious defense from the lawsuit brought by Shelton.

11.     Indeed, these affirmative defenses were included in the Answer Mr. Thomas filed in his Answer to the Complaint, on April 30, 2019.

12.     The individual Plaintiffs communicated with Defendant on at least 13 separate occasions between April 30, 2019 and September 17, 2019.

13.     On September 17, 2019, a Motion for Summary Judgment was filed by the Plaintiffs in the Shelton case, with a response deadline of 14 days later, or October 1, 2019.

14.     Part of the grounds for Summary Judgment were that no discovery, including answers to Admissions under F.R.C.P. 36, had been provided by the FCS Parties, and the averments of the Admissions were therefore admitted.

15.     The reason the FCS parties did not provide discovery was because their attorney, the Defendant, never informed them of any discovery requests.

16.     In fact, during the weeks leading up to the filing October 1st filing deadline, Thomas communicated with the FCS parties *only once* on September 24, 2019 and at that time said nothing about the Motion nor the impending deadline.

17.     On October 8, 2019, one week after the filing deadline, Defendant filed a Motion for Extension of Time indicating that an additional two weeks were required to provide a "comprehensive" response to the Motion. At this point Thomas still had not informed the FCS parties of the Motion or its filing deadline which had now passed.

18.     The Motion for Extension of Time stated that an additional two weeks was needed to provide a "comprehensive" response to the Motion.

19.     The Motion for Extension of Time was filed with The Honorable Joshua Wolson, who had been assigned the case on June 26, 2019.

20.     Judge Wolson's Policies and Procedures, page 9, states that all requests for a continuance of time should be made two weeks before the deadline in question.

21.     Because Thomas violated Judge Wolson's policy by improperly requesting an extension one week after the filing deadline.

22.     However, the Motion for Extension of Time was rendered moot when the Court struck the Motion for Summary Judgment for not obeying the Courts' Policies and Procedures, on October 8, 2019.

23.     Plaintiffs filed a second, Amended Motion for Summary Judgment, this time following Judge Wolson's requested format, on October 8, 2019.

24.     The applicable deadline, according to Local Rule 7.1, would therefore be October 22, 2019.

25.     Coincidentally, this was the same period of time that Thomas had asked for in his Motion for an Extension.

26.     If two weeks were all that were needed, surely Thomas had sufficient time to respond.

27.     Between October 8, 2019 and October 22, 2019, Thomas did not contact his clients via telephone, email, or SMS.

28.     On October 22, 2019, Mr. Thomas filed a 2nd Motion for Extension of Time, requesting an additional two weeks.

29.     That same day, the Court denied Thomas' request, pointing out in its Order that not only had Thomas failed to request a continuance seven days in advance as per the Policies and Procedures, but that the continuance was solely based on Thomas' "inattentiveness to this litigation, as evidenced by the docket" and that he had now had more than a month to file a response to what was substantively the same Motion.

30.     Rule 6(b) of the Federal Rules of Civil Procedure explain to the practitioner what needed to be done next:

> *"(b) Enlargement. When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion[...]*
>
> *(2) upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect[....]"*

32.     Thomas did not inform his clients of his failure to file a response.

33.     Indeed, he did not talk to his clients at all until December 10, 2019.

34.     The phone records indicate that on that day, Shargel called Thomas twice, each for one minute.

35.     Shargel is without recollection, upon knowledge, information, and belief as to whether he even spoke to Thomas that day, or merely left voicemail messages.

36.     On December 11, 2019, Thomas having not filed a Rule 6(b) Motion together with a proposed Response to the Summary Judgment Motion (or even a bare Affidavit in Response) in the 51 days since his Motion for Extension of Time was denied, the Court ruled on the Summary Judgment Motion brought by Plaintiffs, granted Summary Judgment on Counts I and II of the Plaintiff's Amended Complaint, and awarded the Plaintiffs $54,000 in damages against the FCS Parties, including the individuals.

37.     Even at this late date, the Court's Order allowed Thomas to file a memorandum of no more than five pages to argue in regards to whether the Court should grant summary judgment as to Count IX of the Amended Complaint.

38.     <u>According to the Court's Order of December 13, 2019, Thomas emailed the Court's chambers to indicate he would not be filing such a memorandum.</u>

39.     Local Rule 7.1 of the Rules of Civil Procedure would have permitted a reconsideration within 14 days of the grant of the motion.

40.     <u>No such motion was filed.</u>

41.     The Court nonetheless denied summary judgment on that count and marked the case closed.

42.     Until January 8, 2020, Thomas still had the option of filing a Rule 59 Motion for a New Trial, which combined with an attached Response to the unanswered Motion, a sufficient apology to the Court and a showing of excusable neglect <u>might</u> have undone his failure to respond.

43.     Between December 11, 2019 and January 8, 2020, Thomas spoke to his clients for a grand total of one minute, at 3:59pm on January 2, 2020.

44.     At this date, the FCS parties were still completely unaware that their attorney had failed to file a response to summary judgment, and that summary judgment had in fact been entered against them.

45.     On January 27, 2020, Thomas filed a Motion for Reconsideration, apparently seeking relief under sections 60(b)(2) (late discovered evidence), 60(b)(3) (fraud by opposing party) and 60(b)(6) (catchall) of the Federal Rules of Civil Procedure.

46.     None of the evidence presented in the Motion for Reconsideration was new—much of it was addressed in the Opinion of the Court dated December 11, 2019.

47.     Allegations of fraud against the opposing party were made, but not substantiated in any way.

48.     Nor could they be, because Thomas' failure to respond to the admissions in the case earlier had deemed Shelton's version of the facts admitted by default.

49.     Finally, Rule 60(b)(6) requires a showing of excusable neglect, that is, that the failure to respond was due in some part to unusual circumstances beyond the control of the filer.

50.     No such excusable neglect was even alleged by Thomas.

51.     The Court also noted that there was literally nothing in the Motion that could not have been filed as a reconsideration within 14 days of the granting of the Motion on December 11, 2019, and it was therefore untimely under Local Rule 7.1.

52.     The Court therefore denied the Motion for Reconsideration two days later, on the 29th of January, 2020.

53.     The FCS parties, still unaware that there was a judgment against them, attempted to call and text Thomas on February 4, 2020.

54.     They did not speak to Thomas again until March 10, 2020, a two minute conversation in which Thomas again failed to inform them of the judgment against them.

55.     On May 26, 2020, the Court entered an Order that post-judgment discovery needed to be answered by June 1, 2020.

56.     No such discovery was provided to the FCS parties; they were still unaware of the judgment.

57.     On June 1, no post-judgment discovery having been provided to his clients to answer, Thomas filed a second Motion for Reconsideration and a Motion for Preliminary Injunction.

58.     The second Motion for Reconsideration includes more evidence as to the character of Mr. Shelton.

59.     It does not, however, provide any legal basis for relief, in that, as the Court pointed out, in its Opinion, the Motion failed to establish that the evidence was admissible in court.

60.     As well, no allegation which seriously suggests fraud was ever raised by Thomas in the Motion, only that Shelton was an aggressive serial plaintiff.

61.     The Court denied the second Motion for Reconsideration as well as the Motion for Preliminary Injunction on June 17, 2020.

62.     On June 29, 2020, after telling the FCS parties that he had had a disagreement with Judge Wolson about a Rule of Evidence (and omitting the fact that he did not answer the Summary Judgment motion), Thomas took an appeal to the Third Circuit Court of Appeals.

63.     Thomas knew or should have known that the appeal was frivolous, given that the Court could not rule in any other manner due to his failure to file a response to the Admissions and Motion for Summary Judgment, or offer a proposed Response to the Motion for Summary Judgment on a reconsideration.

64.     Thomas still had not told the clients about the judgment, or provided them with the post-judgment discovery.

65.     That same day, Shelton's counsel filed Motions for Contempt and for Rule 37 Sanctions based on a failure to provide post-judgment discovery.

66.     Thomas responded, but did not inform his clients of the impending sanctions or contempt.

67.     A Motion hearing, held on July 17, 2020, apparently went badly enough for Thomas that finally, on July 20, 2020, he provided the post-judgment interrogatories to his clients.

68.     It is at this point, more than 8 months after the judgment, that the FCS Parties were informed that a judgment had been entered against them in December, that it was for $54,000, and that the Court had ordered them to answer post-judgment interrogatories.

69. A Petition for Attorney's Fees was filed against the FCS Parties, together with a 2nd Motion for Sanctions, on July 27, 2020.

70. While Thomas was again in contact with his clients, he did not file a response to the Motion for Attorney's Fees.

71. Attorney's fees were awarded against the FCS Parties on September 1, 2020.

72. A third Motion for Sanctions was filed against the FCS Parties on September 4, 2020.

73. On September 22, 2020, the Court ordered a deadline of September 25, 2020 for producing documents in relation to the post-judgment discovery.

74. No such documents were filed, and on September 25, Shelton's counsel filed a Motion for Contempt.

75. The FCS Parties indicated that they wanted to be present (via Zoom) for the upcoming sanctions hearing.

76. They were not given the Zoom information by Thomas, and the sanctions hearing was held in their absence on October 2, 2020, the sanctions being granted.

77. They retained the undersigned counsel later that day, after being informed for the first time about the hearing being held in their absence and the attorney's fees which had been awarded on September 1.

78. On October 2, 2020, Thomas received a fax from the undersigned counsel, requesting his malpractice carrier information.

79. A follow up letter was sent by fax on October 7, 2020, with no response.

80. Thomas denied, in a court pleading on October 9, 2020, having ever received a fax from the undersigned counsel.

81. Fax confirmation sheets, proving delivery, were subsequently filed with the Court.

82. On November 4, 2020, a day long sanctions hearing was held before Judge Wolson of the Eastern District of Pennsylvania.

83. Judge Wolson found that Thomas had made false statements to the Court on numerous occasions, had failed to inform his clients of many matters relating to the litigation, and ordered Thomas to obtain the transcript of the day-long hearing and supply it to the Court so that the Court could supply it to the Disciplinary Boards of Pennsylvania, New Jersey, and the Federal District Courts therein, and barred Thomas for a year from filing any actions in the Eastern District of Pennsylvania or Bankruptcy Court without Judge Wolson's prior appproval.

84. As a result of Thomas' failures to act in a prompt and competent manner, Plaintiffs have a $54,000 judgment against them, as well as have, at time of filing, had more than $7,000 in plaintiff's attorney's fees awarded against them.

85. Plaintiffs' bank accounts, credit processing, and bank processing services have all been shut down as a result of execution practice relating to the judgment.

86. Plaintiffs' business has been shut down as a result of execution practice relating to the judgment.

87. Plaintiffs have expended monies for legal fees to attempt to ameliorate, mitigate, or reverse Thomas' actions.

88. Plaintiffs have expended monies for Thomas' legal fees.

COUNT I

Professional Negligence

89. Plaintiffs incorporate their averments 1-88, above, as if they were set forth here in full.

90. The aforesaid damage to Plaintiffs was due to the professional carelessness and negligence of the Defendant, such carelessness and negligence consisting, but not limited to, the following:

a)  Failure to follow the Rules of Professional Conduct, including but not limited to Rules 1.1 (competence), 1.3 (diligence), 1.4 (communication with client), 2.1 (advice to clients), 3.1 (meritorious claims), 3.2 (expediting litigation), 3.3 (candor to the tribunal), 3.4 (fairness to opposing party and counsel), 4.1 (truthfulness in statements to

others), 7.1 (false communications about lawyer or legal services), 8.2 (false statements regarding judges) 8.4 (misconduct).

b) Failure to follow the Federal Rules of Civil Procedure, including but not limited to Rule 7.1 (motion practice), 11 (truthfulness in pleadings), 56 (summary judgment)

c) Failure to follow the Local Rules of Civil Procedure for the Federal District of the Eastern District of Pennsylvania, including but not limited to Rule 7.1 (motion practice) and 83.6 (Attorney Rules of Conduct).

91.    As a result of Defendant's negligence and carelessness, Plaintiffs had a judgment placed against them, were forced to expend monies for legal fees, and were shut down for nearly two months, causing a loss of profits.

WHEREFORE, Plaintiffs demand judgment against Defendant, in an amount in excess of the jurisdictional limit of 28 U.S.C. §1332, together with costs of court.

COUNT II

Breach of Contract

92.    Plaintiffs incorporate their averments 1-91, above, as if they were set forth here in full.

93.    Plaintiffs had retained Thomas as their attorney.

94.    Thomas had a duty, both as attorney and as a fiduciary, to represent them in a competent manner.

95.    Thomas breached this duty by a:

a) Failure to follow the Rules of Professional Conduct, including but not limited to Rules 1.1 (competence), 1.3 (diligence), 1.4 (communication with client), 2.1 (advice to clients), 3.1 (meritorious claims), 3.2 (expediting litigation), 3.3 (candor to the tribunal), 3.4 (fairness to opposing party and counsel), 4.1 (truthfulness in statements to others), 7.1 (false communications about lawyer or legal services), 8.2 (false statements regarding judges) 8.4 (misconduct).

b)      Failure to follow the Federal Rules of Civil Procedure, including but not limited to Rule 7.1 (motion practice), 11 (truthfulness in pleadings), 56 (summary judgment)

c)      Failure to follow the Local Rules of Civil Procedure for the Federal District of the Eastern District of Pennsylvania, including but not limited to Rule 7.1 (motion practice) and 83.6 (Attorney Rules of Conduct).

96.     As a result of Thomas' breach of contract and fiduciary duty, Plaintiffs had a judgment placed against them, were forced to expend monies for legal fees, and were shut down for nearly two months, causing a loss of profits.

WHEREFORE, Plaintiffs demand judgment against Defendant, in an amount in excess of the jurisdictional limit of 28 U.S.C. §1332, together with costs of court.


### COUNT III

#### Punitive Damages

97.     Plaintiffs incorporate their averments 1-96, above, as if they were set forth here in full.

98.     Defendant Thomas' actions and failures to act were in willful, intentional, reckless or callous disregard of, or indifference to, the rights of Plaintiffs as set forth in the preceding paragraphs of this Complaint,  and constituted conduct so outrageous and/or malicious, as to warrant assessment of punitive damages in such an amount as would act as a deterrent to Defendant and others from the future commission of like offenses and wrongs.

WHEREFORE, Plaintiffs demand judgment against Defendant, in an amount in excess of the jurisdictional limit of 28 U.S.C. §1332, together with costs of court.


Respectfully Submitted,

_Lionel C. Artom_

LIONEL ARTOM-GINZBURG, ESQUIRE
PA ID#88644
834 Chestnut Street
Suite 206
Philadelphia, PA 19107-5100
(215) 925-2915
(267) 930-3934 FAX

November 9, 2020

Exhibit A Supplemental Filing Part 2

**Joshua L. Thomas and Associates**
Joshua L. Thomas, Esq
1110 Pocopson Road, PO Box 415
Pocopson, PA 19366
JoshuaLThomas@gmail.com
Fax: (888) 314-8910
Phone: 215-806-1733

**(Please photocopy or transfer the following wording onto firm's letterhead)**

# NOTICE OF ACCEPTANCE

I/we accept the following terms from Arch Insurance Company for Lawyers Professional Liability Insurance at the following Limits of Liability and Deductible Option:

| | |
|---|---|
| **Full Name of Applicant:** | Joshua L. Thomas & Associates |
| **Limit of Liability:** | $1,000,000 / $1,000,000       Full Defense in Addition |
| **Deductible:** | $0       Each Claim Loss Only |
| **Premium:** | $1,895 |
| **Policy Fee:** | $50.00 |
| **Total:** | $1,945.00 |
| **Policy Term:** | 2/10/2017 to 2/10/2018 |
| **Firm's Retroactive Date:** | 2/10/2017 (inception date) |
| **Individual Retroactive Dates:** | See attached schedule (if applicable) |
| **Application Date:** | 2/3/2017 |

This letter acknowledges that, after inquiry, I/we am/are not aware of any claims and/or circumstances, acts, errors or omissions that could result in a professional liability claim since completion of my/our last application and supplements.

This letter will also acknowledge to the best of my/our knowledge, the information given on the application and supplements remains unchanged since they were completed and can be effective and incorporated by my/our execution hereon.

*Joshua S. Thomas*                              2/8/17

_____              _____
(Signature of Owner Officer or Partner)      (Date)
Acceptance (01/00)

2/7/2017                              JOSHLTH-02                              GSPROP-ARCNY-01/17

*Joshua L. Thomas, Esq.*
*Joshua L. Thomas & Associates*
*225 Wilmington-West Chester Pike, Suite 200*
*Chadds Ford, PA 19317*

*Joshua L. Thomas, Attorney At Law*
*Admitted PA and NJ Bar*
*Phone: 215-806-1733*
*Fax: 888.314.8910*
*Email: JoshuaLThomas@gmail.com*

# NOTICE OF ACCEPTANCE

I/we accept the following terms from Arch Insurance Company for Lawyers Professional Liability

Insurance at the following

Limits of Liability and Deductible Option:

**Full Name of Applicant:** Joshua L Thomas & Associates

**Limit of Liability:** $1,000,000 / $1,000,000 Full Defense in Addition

**Deductible:** $0 Each Claim Loss & Expense

**Premium:** $3,258

**Policy Fee:** $50.00

**Total Premium:** $3,308.00

**Policy Term:** 2/10/2020 to 2/10/2021

**Firm's Retroactive Date:** 2/10/2017

**Individual Retroactive Dates:** See attached schedule (if applicable)

**Application Date:** 2/9/2020

This letter acknowledges that, after inquiry, I/we am/are not aware of any claims and/or circumstances, acts, errors or omissions that could result in a professional liability claim since completion of my/our last application and supplements.
This letter will also acknowledge to the best of my/our knowledge, the information given on the application and supplements remains unchanged since they were completed and can be effective and incorporated by my/our execution hereon.

Sincerely,

Joshua L. Thomas
Owner                            Date: 2/21/2020

# *Attorneys' Advantage Professional Liability Quotations*

| | |
|---|---|
| Joshua L. Thomas & Associates<br>305 South Village Road<br>Chadds Ford, PA 19317-9397 | **Client No.:**  0043538000<br>Policy Period:  02/10/2020 ┃ TO: ┃ 02/10/2021<br>Quote Date:  02/21/2020<br>**Quote Valid Until:  02/24/2020** |

## *1. Instructions:   THIS IS A FIRM QUOTATION*

- Please review entire proposal.

- Please circle the desired limit and deductible.

- **Please sign and date section 6** and return along with your check made payable to:
  **Affinity Insurance Services, Inc.** for the annual premium or down-payment.

- If financing is selected, please remit your check for the down payment.

- This premium quotation is your invoice.  Your coverage cannot be made effective
  until we receive your premium payment.

## *2. Terms are Based on:*   1 Attorney

## *3. Premium Quotation:*   The policy is underwritten through Arch Insurance Company, an "A+" (Superior)  rated admitted insurance carrier according to A.M. Best.

| Limits of Liability (Full Defense in Addition) | | | PLEASE NOTE:  Premium Financing is available. | | |
|---|---|---|---|---|---|
| **Per Claim** | **Annual Aggregate** | **Deductible** | **Annual Premium** | **Policy Admin. Charge ($150) & Fee ($50)** | **Total Due** |
| | | | | | |
| $1,000,000 | $1,000,000 | $0 | $3,258 | $200 | **$3,458** |

# *Attorneys' Advantage Professional Liability Quotations*

| Joshua L. Thomas & Associates | Client No: | 43538000 | Page 2 |
|---|---|---|---|

## *4. Endorsements:*                    *Prior Acts Date: 02/10/2017*

**MANDATORY FORMS:**

| Number | Name |
|---|---|
| 05 ML 0002 00 1214 | AIC Signature Page |
| 00 LPL0401 00 06 16 | Policy Form |
| 00 ML 0065 00 0607 | OFAC |
| 00 LPL0439 39 08 17 | PA State Amendatory Endorsement |
| 00 LPL0402 39 08 17 | Network Security Endorsement - No Charge (included).  Data Incident Response Expense Only – Item 2 on Endorsement. |

**ADDITIONAL FORMS:**

| Number | Name |
|---|---|
| 00 LPL0427 39 08 17 | Prior Acts Exclusion Endorsement |
| 00 LPL 0419 39 08 17 | Claim Expense Outside |

## *5. Special Instructions/Notes:*

**The terms offered are subject to receipt, review and underwriting acceptance of the following:**
1. Notice of Acceptance, copied onto your firm's letterhead, signed and dated.
2. Signed and dated Service Fee Agreement.

**NOTE: The premium increased due to an additional year of prior acts coverage as the retroactive date of the policy is 2/10/2017. This quote expires at the close of business Monday 2/24/2020 Eastern Time.**

## *6. Terms:*

- This quotation and your payment must be received on or before **02/24/2020**.
- Full Prior Acts Coverage Included unless referenced in Section 4 hereof.
- This policy is written on a claims made basis.  If you are aware of any claims or potential claims, report them to your current insurance company.
- This quotation does not extend your insurance coverage beyond the expiration date of your current policy.
- Your signature below constitutes your acceptance of the attached Compensation & Disclosure Information.

**Signature by Partner or Officer:** X *Joshua S. Thomas*      **Date:** 2/21/2020

**I CONFIRM THAT I AM NOT AWARE OF ANY CHANGES\* IN THE INFORMATION CONTAINED IN MY APPLICATION FORMS AND UNDERSTAND THAT IF SAID INFORMATION HAS CHANGED THEN THE UNDERWRITERS RESERVE THE RIGHT TO AMEND MY QUOTATION IF NECESSARY.  I HAVE READ AND UNDERSTAND THE ATTACHED SPECIMEN POLICY AND ANY APPLICABLE ENDORSEMENT(S) REFERRED TO IN SECTION 3 ABOVE.  \*(IF YOU ARE AWARE OF ANY CHANGES, INCLUDING POSSIBLE CLAIMS/CIRCUMSTANCES, DO NOT SEND YOUR CHECK.  LIST THE CHANGES ON A SEPARATE ATTACHMENT AND RETURN IT TO US SO THAT WE MAY CONFIRM YOUR QUOTATION WITH THE UNDERWRITERS.)**



**☆Arch**
Insurance Group

## PENNSYLVANIA APPLICATION FOR A CLAIMS MADE AND REPORTED LAWYERS PROFESSIONAL LIABILITY POLICY

### PLEASE TYPE OR PRINT IN INK AND RETURN WITH A SAMPLE OF YOUR LETTERHEAD

| Joshua L. Thomas & Associates | 215.806.1733 | JoshuaLThomas@gmail.com |
|---|---|---|
| Firm/Applicant Name<br>305 South Village Lane | Business Phone with Area Code<br>888.314.8910 | E-mail Address<br>2/10/16 |
| Principal Business Address<br>Chadds Ford   Chester   PA   19317 | Business Fax with Area Code | Effective Date Requested |
| City      County      State      Zip | | |

1.  Please list all attorneys practicing on behalf of your firm.  Add an attachment if necessary.

| Attorney Name | Social Security Number | Years in Private Practice | Designation Code (See choices below) | | Current Legal Malpractice Insurance Carrier | Current Retroactive Date |
|---|---|---|---|---|---|---|
| Joshua L. Thomas | 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 | 5.25 | E | | Aon | 2/10/17 |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

**Designation Code**: E = Member/Employee of the Firm, OC = Of Counsel/Independent Contractor and F = Full Time, P = Part Time (26 hours or fewer per week)

2.  Have any members of your firm been reprimanded, censured, suspended or disbarred within the past five (5) years?  If YES, provide full details on your letterhead.         ☐ Yes  ☒ No

3.  Have any professional liability claim(s) or suit(s) been made against the applicant firm or any attorney(s) in the applicant firm or former attorney(s) in the applicant firm within the past five years?  If YES, complete the Claim Supplemental Application.         ☐ Yes  ☒ No

4.  After inquiry, are you or any attorney in your firm aware of any circumstances, incidents, acts or omissions that has led to a professional liability claim that has not yet settled or which could lead to a professional liability claim being made against your firm?  If YES, complete the Claim Supplemental Application         ☐ Yes  ☒ No

5.  Please list the limit of liability and deductible currently carried and circle the appropriate type of limit and deductible.  Select the limit and deductible requested.

**Fax to (888) 330-5510**

|  | DESIRED |
|---|---|
| Limit: 1,00,000, 2,000,000<br>$<br>Defense Costs Part of the Limit * Defense Costs Outside the Limit<br>* Don't Know<br>    2,500.00<br>Deductible: $<br>Per Claim<br>    Aggregate        Loss Only<br>Premium: $ 1900.00 | Limit: 1,00,000, 1,000,000<br>$<br>Defense Costs Part of the Limit * Defense Costs Outside the Limit<br>* Don't Know<br>    0.00<br>Deductible: $<br>Per Claim        Aggregate        Loss Only |

6.    Please provide the percentage of gross billable dollars allocated to each Area of Practice.  Please round to the nearest whole number. Total must equal 100%.

| | | | |
|---|---|---|---|
| ADMIRALTY/MARITIME | | GOVERNMENT-FEDERAL AND STATE | |
| ANTITRUST | | GOVERNMENT-LOCAL (NOT BOND WORK) | |
| BUSINESS TRANSACTIONS-CORPORATE AND COMMERCIAL | | IMMIGRATION/NATURALIZATION | |
| **BUSINESS TRANSACTIONS-ENTERTAINMENT** | | INTERNATIONAL LAW | |
| CIVIL RIGHTS/DISCRIMINATION | | LABOR LAW | |
| COLLECTION/BANKRUPTCY | | PI/PD-PLAINTIFF | |
| CONSTRUCTION LAW (BUILDING CONTRACTS) | | INSURANCE DEFENSE | |
| CONSUMER CLAIMS | | WORKERS COMPENSATION-DEFENSE | |
| BUSINESS ORGANIZATION: | | WORKERS COMPENSATION-PLAINTIFF | |
|   Formation/Alteration and Mergers/Acquisitions | 5% | NATURAL RESOURCES/OIL & GAS | |
|   Secured Transactions | | PATENT/TRADEMARK/COPYRIGHT (INTELLECTUAL PROPERTY) | |
|   Administrative Law/Record Keeping | | REAL ESTATE | 85% |
| CRIMINAL | | **SECURITIES LAW** | |
| ENVIRONMENTAL LAW | |   State or Federal (both exempt and registered) | |
| ESTATE/TRUST/PROBATE | 10% |   Municipal Bonds | |
| FAMILY LAW | | TAXATION/TAX OPINIONS | |

**BOLD INDICATES THAT A SEPARATE SUPPLEMENTAL APPLICATION IS REQUIRED.**

The applicant represents that the above statements are true and correct to the best of his or her knowledge and that no material or relevant facts have been suppressed or misstated and agree that the policy, if issued, will be issued on the reliance of such representations.

Applicant acknowledges a continuing obligation to report to us as soon as practicable any material changes in the facts or statements above, and in each supplementary application, which applicant becomes aware after signing the application.

**NOTICE TO PENNSYLVANIA APPLICANTS:** Any person who knowingly and with the intent to defraud any Insurance Company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

Completion of this form does not bind coverage.  Applicant's acceptance of company's quotation is required prior to binding coverage and policy issuance.  It is agreed that this application shall be the basis of the contract of insurance should a policy be issued and it will be attached to the policy.

Signature of Owner/Partner _Joshua L. Thomas_    Date: 2/3/17

Print name: Joshua L. Thomas    Title: Owner

**Fax to (888) 330-5510**

**PLEASE NOTE THAT THE FOLLOWING SECTION ONLY APPLIES TO FIRMS WITH ONE OR TWO ATTORNEYS**

There are many factors used by the company to evaluate an application for Lawyers Professional Liability Insurance. Such factors may include a law firm's areas of practice, loss history, risk management and an insurance score.

An insurance score is developed from a mathematical model that weighs and measures credit information obtained from a number of sources, including a consumer credit report. Credit information may include payment history, the number of collections, bankruptcies, outstanding debt, length of credit history, types of credit in use and the number of new applications for credit. These factors have been shown to correlate with insurance loss history.

You may be eligible for a premium discount based upon your insurance score. An insurance score will not result in a premium increase. The insurance score is also never the basis on which this company will accept or reject an application for an insurance policy.
If this is acceptable all members of the applicant firm must provide authorization.

(1) Signature _Joshua L. Thomas_     Date: 2/3/17

Print name: Joshua L. Thomas     Title: Owner


(2) Signature _____     Date: _____

Print name: _____     Title: _____

If you do not wish to have your insurance score computed check here ☐


Submit

**Fax to (888) 330-5510**