```
                    UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF PENNSYLVANIA

FCS CAPITAL, LLC, et al.,.   Case No. 2:20-cv-05580-CFK
                          .
        Plaintiffs,       .
                          .  U.S. Courthouse
     v.                   .  601 Market Street
                          .  Philadelphia, PA 19106
JOSHUA L. THOMAS, ESQ.,   .
                          .
        Defendant.        .
                          .  February 8, 2021
. . . . . . . . . . . . . .  10:01 a.m.

                        VIA TELECONFERENCE
            TRANSCRIPT OF RULE 16 PRETRIAL CONFERENCE
                 BEFORE HONORABLE CHAD F. KENNEY
                   UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiffs:      LIONEL CAMILLO ARTOM-GINZBURG, ESQ.
                         The Franklin
                         834 Chestnut Street
                         Suite 206
                         Philadelphia, PA 19107

For the Defendant:       JOSHUA LOUIS THOMAS, ESQ.
                         JOSHUA L. THOMAS & ASSOCIATES, PLLC
                         225 Wilmington-West Chester Pike
                         Suite 200
                         Chadds Ford, PA 19317


Audio Operator:          CARL HAUGER

TRANSCRIBED BY:          NEAL R. GROSS




              Proceedings recorded by electronic sound
     recording, transcript produced by transcription service.
```

1          THE COURT:  So, we're on the record.  And this is the
2  case of FCS Capital v. Joshua Thomas, and it's 20-5580.
3          So, counsel, I received your 26(f) report.  Just a
4  couple things.  I don't do litigation by email, so, anything
5  that you want to bring to my attention of a substantive matter
6  needs to be done by -- needs to be done by motion.  That's
7  number one.
8          Number two, I have a proposed scheduling order here,
9  and I have a trial date of October 15th at 9:00 o'clock.  Okay?
10 So, mark that on your calendar.  That's a date certain.  It's a
11 Friday.
12         MR. THOMAS:  Confirmed.
13         (Simultaneous speaking.)
14         THE COURT:  Go ahead.
15         MR. THOMAS:  Oh. Sorry, Your Honor.  Just saying
16 confirmed, that's it's on the calendar.
17         THE COURT:  Fact discovery May 10th; expert reports
18 for Plaintiff, June 7th; expert reports for Defendant, July 5th;
19 expert discovery, August 5th; and summary judgment motions by
20 September 6th.  And then I lay out motions in limine right up
21 to trial.  I keep a strict calendar of those dates and ask
22 that, as some of those dates approach, the law clerk will give
23 you an email reminding you that we stick to those dates.  Okay?
24         So, I guess, in reading the 26(f) reports, we'll
25 start with the Plaintiff.  Do you foresee any issues that I

1   should be aware of right now?
2           MR. ARTOM-GINZBURG: Yes, Your Honor. We -- I have
3   contacted the insurance company that appears to have been in
4   force at the time of the incident that brought the action. And
5   they will not give me any information or a copy of the policy
6   without a signed release from Mr. Thomas. And Mr. Thomas has
7   not yet been forthcoming in providing such a release.
8           THE COURT: All right. Mr. Thomas, what about the
9   insurance and the insurance information?
10          MR. THOMAS: I actually stated to opposing counsel
11  that I'd be more than happy to turn over any requests he has in
12  discovery. And that I just was not comfortable signing such a
13  release because it -- what he had stated would seem too broad.
14  So I said that if he has specific requests, he can send them as
15  discovery requests. And after I stated that I received no
16  further response.
17          THE COURT: All right. Mr. Thomas, who was your
18  insurance company during the period of time and who is your
19  insurance company now?
20          MR. THOMAS: So, there were two insurance companies
21  involved. I sent him the earlier insurance companies. They
22  were both through a broker named AFCO.
23          THE COURT: I'm asking for the insurance company.
24          MR. THOMAS: Right. I understand. What I'm saying
25  is, the current insurance company was actually -- it was

1  through – it's called Affinity Insurance Services.  And they're
2  the ones who are currently in place.  They were the ones who
3  technically would have been handling it.  The prior ones were
4  technically called Aon, A-O-N.
5             THE COURT:  All right.
6             MR. THOMAS:  I believe they may be --
7             THE COURT:  Well, Mr. Thomas, let me again get an
8  answer from you, because you would have -- you have a policy.
9  The policy is in your --
10            MR. THOMAS:  Mm-hmm.
11            THE COURT:  And I want to know who they placed the
12 insurance with.
13            MR. THOMAS:  Your Honor, I just said.  It's Affinity
14 Insurance is the one they would be currently with.
15            THE COURT:  So you're -- no, but you told me they're
16 a service, they're a brokerage.  You did not tell me they are a
17 -- that's who they placed your policy with.
18            Who do you have --
19            (Simultaneous speaking.)
20            THE COURT:  Go ahead.
21            MR. THOMAS:  Then I misspoke, Your Honor.  Affinity
22 is the current insurance company.  There was also a broker who
23 handled both insurance companies.  Affinity is the current
24 insurance company.
25            THE COURT:  All right.  And who's the broker?

```
 1              MR. THOMAS:  The broker has been through a company
 2   called Aon.  It was who I've been --
 3              THE COURT:  Who is the name of the broker that you
 4   are working -- or that you worked with?
 5              MR. THOMAS:  It was Aon.  I believe it's Aon -- I
 6   don't know if there's any further name of it.  It's just simply
 7   Aon, was who I was working with.
 8              THE COURT:  All right.  What's the phone number for
 9   the brokerage company, the broker?
10              MR. THOMAS:  617-457-7741.
11              THE COURT:  And what is the person's name that you've
12   dealt with there?
13              MR. THOMAS:  I believe the most recent name was a
14   Michael O'Connor.
15              THE COURT:  And how do spell Aon?
16              MR. THOMAS:  A-O-N.
17              THE COURT:  And do you have an address on them, sir?
18              MR. THOMAS:  Fifty-three State Street, Suite 2201.
19   And that's Boston, Massachusetts, 02109.
20              THE COURT:  All right.  And what's your policy number
21   for Affinity Insurance?
22              MR. THOMAS:  The current policy number.  Give me one
23   second.
24              Sorry.  One sec.
25              The policy number is AON2002180120.
```

```
1                THE COURT:  Okay.  A0N2002180120.  Correct?
2                MR. THOMAS:  The only correction I would make: I
3    don't believe it's A-zero-N; I believe it's A, the letter O, N.
4                THE COURT:  Oh, okay.  A-O-N.
5                MR. THOMAS:  Right.
6                THE COURT:  Let me ask you, who was your immediate
7    preceding insurance company to Affinity?
8                MR. THOMAS:  Just a second.
9                MR. ARTOM-GINZBURG:  It was Arch, Your Honor.  Arch
10   Insurance Company.
11               MR. THOMAS:  Thank you.  Yes, that's correct.  It was
12   through Aon and it was Arch was the predecessor.
13               THE COURT:  And do we have a policy number under Arch
14   Insurance Company?
15               MR. ARTOM-GINZBURG:  I do, Your Honor.  I have it,
16   Your Honor.
17               THE COURT:  Okay, so you have the policy numbers.
18               MR. ARTOM-GINZBURG:  I do not have a copy of the
19   policy.  And I do not know whether a claim was made during the
20   lifetime of the policy, which is a requirement, apparently,
21   under their coverage.  But they would not give me further
22   information without a signed statement.
23               THE COURT:  All right.  So, Mr. Thomas, did you put
24   either company on notice of a claim, or a potential claim?
25               MR. THOMAS:  Yes.  I put the second company on notice
```

1   of claim.  Yes, Your Honor.
2           THE COURT:  All right, Affinity.  But you didn't
3   notice Arch, right?
4           MR. THOMAS:  Arch was not in place at the time that I
5   knew this claim had occurred, so, no.
6           THE COURT:  All right.  And what's your -- what is
7   your claim number?  Did they give you a claim number or a
8   claims adjuster for Affinity?
9           MR. THOMAS:  I did not receive that information, Your
10  Honor, no.
11          THE COURT:  But you have an adjuster that talked to
12  you, right?
13          MR. THOMAS:  Yeah.  That individual who I mentioned,
14  Mr. O'Connor, was the adjuster I spoke with.
15          THE COURT:  About the claim?
16          MR. THOMAS:  Yes.
17          THE COURT:  All right.  And aren't they -- won't they
18  provide you with defense, or what's going on with that?
19          MR. THOMAS:  I did not receive a response regarding
20  that.  Last I reached out, I was told there would be more
21  information coming to me.  They had to speak with their
22  attorneys.  And I've received no information on it.
23          THE COURT:  All right.  So, the Defendant, you have
24  plenty of information now to go ahead and subpoena the - to
25  subpoena the files, right, on both?

```
1                MR. ARTOM-GINZBURG:  Yes, Your Honor.
2                THE COURT:  Okay.  And so you'll take it from there
3    in terms of your subpoena.
4                So, Mr. Thomas, they haven't denied the claim, have
5    they, or reserved rights?
6                MR. THOMAS:  No.
7                THE COURT:  They just -- they're reviewing your
8    claim.  Correct?
9                MR. THOMAS:  Correct.  I did not receive any denial
10   or anything stating such, Your Honor.
11               THE COURT:  All right.  Because the best way through
12   this would be for somebody to come in and take over your
13   representation for yourself, wouldn't it be?
14               MR. THOMAS:  Most likely, yes, Your Honor.
15               THE COURT:  All right.  What other issues should I be
16   aware of?
17               MR. THOMAS:  If you'd like me to answer, Your Honor,
18   or would you like Plaintiff's attorney?
19               MR. ARTOM-GINZBURG:  I have no other issues, Your
20   Honor.  That was the only outstanding issue as of the moment.
21               THE COURT:  All right.  Well, let me go back to the
22   Plaintiff [sic], then.  What other issues are we looking at?
23               MR. THOMAS:  Oh, I'm sorry, Your Honor.  Did you want
24   me to respond into what issues there may be?
25               THE COURT:  Yes.
```

1                MR. THOMAS:  Okay.  So, in regards to outstanding
2    issues, I would be looking to actually depose not just the
3    Plaintiffs, but also Plaintiffs' attorney.  I had actually
4    mentioned this at a prior hearing but did not actually get the
5    chance.  I want to actually depose him in regards to what he
6    actually informed them prior to representation or prior to
7    filing this case.  So, I'd be looking to depose him, as well.
8                THE COURT:  And what's the defense response to that?
9                MR. ARTOM-GINZBURG:  That was the defense, Your
10   Honor.  This is the Plaintiff.  And I will be filing a motion
11   for protective order because I think it's completely
12   irrelevant, my position as to what I told my clients after
13   taking over representation.  This is a simple matter of a
14   missed summary judgment motion.
15               THE COURT:  Okay.
16               (Simultaneous speaking.)
17               THE COURT:  Hold on a second.  What about before
18   taking over representation on this case.  Did you consult with
19   your client from the commencement of this action, 2018, through
20   your entry of -- through your entry of appearance?  Or did they
21   contact you after this case was -- or after they had issues
22   with this case?
23               MR. ARTOM-GINZBURG:  I was contacted the last week of
24   September of last year, after they became aware that much had
25   gone on during the case that they were not aware of, including

1    multiple sanctions motions.
2             THE COURT:  So, they --
3             MR. ARTOM-GINZBURG:  I believe I --
4             THE COURT:  Go ahead.
5             MR. ARTOM-GINZBURG:  I believe I entered my
6    appearance on October 1st or October 2nd of last year.
7             THE COURT:  All right.  October 2nd of what, 2020?
8             MR. ARTOM-GINZBURG:   Of 2020.  At which point the
9    judgment was already there and collection proceedings had
10   begun.
11            THE COURT:  All right.  October 2nd of 2020.
12            MR. THOMAS:  And, Your Honor, I would respectfully
13   say that that actually misstates quite a bit.  And the entire
14   purpose for me actually deposing Plaintiffs' counsel in regards
15   to the --
16            THE COURT:  Wait.  Tell me exactly what it misstates?
17            MR. THOMAS:  He completely leaves out the fact that
18   the entire purpose of me actually seeking to depose him was an
19   outstanding appeal of an actual motion to reconsideration that
20   he instructed my client to have withdrawn in order to simply
21   sue me, even though it had already been perfected and the
22   briefs had actually already been filed.  He instructed them
23   that he was not going to be suing the appeal work because they
24   hadn't paid him to do so, and they instructed them to tell me
25   to withdraw it just so they could turn around and sue me.

1                THE COURT:  Well, as to that limited access to that
2    limited information, I may allow some discovery.  We'll see
3    what the motion for protective order has to do.  But it may
4    just go to his recommendations and why as to the merit, or lack
5    of merit, that was filed on appeal of a motion for
6    reconsideration.  So, that, I may allow limited discovery as to
7    that issue only.
8                Go ahead, counsel.
9                MR. THOMAS:  I apologize, Your Honor.  I'm on about a
10   second delay.  I don't mean to cut you off.  But, yeah, that's
11   specifically what we would be looking for.  We wouldn't be
12   looking for anything beyond that, and what stems from that, you
13   know, set of questions.
14               THE COURT:  All right.  So, I don't know that there
15   will be a protective order as to that set of questions.  As a
16   matter of fact, the counsel may even be able to give an
17   affidavit on what was advised as to that motion and whether or
18   not the reason that he said was wrong had anything to do with
19   his not getting paid.  So, that's how I'm giving you some
20   insight into that question.
21               Now, from the Plaintiffs' point of view, any other
22   issues right now that --
23               MR. ARTOM-GINZBURG:  No, Your Honor.  No, Your Honor.
24               THE COURT:  From the defense point of view, any other
25   issues?

1            MR. THOMAS:  No, Your Honor.  I think that summarizes
2    it.
3            THE COURT:  All right.  So, the way I see the
4    Plaintiffs' case, the Plaintiff -- what are the damages that
5    you're -- the Plaintiff, what are your damages?
6            MR. ARTOM-GINZBURG:  Well, initially, Your Honor, the
7    damages are the $54,000 judgment placed against the client.
8    They were forced to pay $7,500 in sanctions that were jointly
9    severed with Mr. Thomas in order to clear the judgment.
10           Their business was completely shut down for a space
11   of two and a half months as a result of the collection
12   practice.  And, as was stated on the record in the prior case,
13   the clients were unaware of the judgment for nearly six months
14   after it had been entered.
15           THE COURT:  All right.
16           MR. THOMAS:  Your Honor, I would say that's a slight
17   misrepresentation of facts in several ways.  But I could
18   certainly brief the argument, as well, Your Honor.
19           THE COURT:  So, in terms of the damages, right, what
20   did you pay to -- what was paid to satisfy the judgment to get
21   it off the record?
22           MR. ARTOM-GINZBURG:  A little bit north of $61,000,
23   Your Honor.
24           THE COURT:  All right.  So 61,000, practically.
25   Right?  So, that's your 54 plus 7,500.  So, $61,000.

```
 1                MR. ARTOM-GINZBURG:  Yes, Your Honor.
 2                THE COURT:  And how do you shut -- and what period of
 3    time -- for what period of time was the business shut down?
 4                MR. ARTOM-GINZBURG:  The business was shut down from
 5    September until early December.
 6                THE COURT:  September of what, 2020?
 7                MR. ARTOM-GINZBURG:  Of 2020, until early December,
 8    yes.
 9                THE COURT:  And they couldn't operate why?
10                MR. ARTOM-GINZBURG:  All of the bank accounts had
11    been shut down.  They had no ability to pay staff.  They had no
12    ability to pay contracts.  They had no ability to do anything,
13    both personal and business accounts.
14                THE COURT:  All right.  And that had nothing to do
15    with the pandemic?
16                MR. ARTOM-GINZBURG:  Nothing to do with the pandemic,
17    Your Honor.
18                THE COURT:  All right.  And so how much are you
19    saying they lost during that period of time?
20                MR. ARTOM-GINZBURG:  We're still calculating that,
21    Your Honor, because last year's taxes have not come due.  I
22    would imagine it would probably be in the vicinity of $20,000
23    to $30,000.
24                THE COURT:  All right.  And what other damages are
25    you looking for?  So, it looks like you're looking for 61 plus
```

```
 1   20 to 30, right?
 2            MR. ARTOM-GINZBURG:  Yes, Your Honor.  There is also
 3   the question of monies that were paid to Mr. Thomas for
 4   representation that evidently was not provided.
 5            (Simultaneous speaking.)
 6            THE COURT:  I'm sorry, I missed that.  It was what?
 7            MR. ARTOM-GINZBURG:  Monies paid to Mr. Thomas for
 8   representation that evidently was not provided and was not
 9   answered in motion.
10            THE COURT:  And how much was paid to Mr. Thomas?
11            MR. ARTOM-GINZBURG:  I do not have those numbers in
12   front of me.  Those will be produced in discovery, Your Honor.
13            THE COURT:  Your clients wouldn't know how much they
14   paid Mr. Thomas?
15            MR. ARTOM-GINZBURG:  My clients have a sense of how
16   much they paid Mr. Thomas but they -- we don't have an exact
17   number, Your Honor.
18            THE COURT:  Mr. Thomas, do you know what they paid
19   you all along this way?  I guess you have records of that,
20   right?
21            MR. THOMAS:  I know that there is actually an
22   outstanding balance of $1,250 that they had agreed to pay and
23   did not.  Beyond that, I would argue that all payments made
24   were not only earned, but there was actually a substantial
25   discount provided for the services that actually were provided.
```

1  So we would contest any type of effort to claim that there was
2  any outstanding balance.  And, if anything, we may down the
3  line, after discovery, have a counterclaim for outstanding
4  fees, too.
5            THE COURT:  So what did they pay you?
6            MR. THOMAS:  I would have to double-check the records
7  for the amount.  But, as of right now, for the appeal that they
8  have requested and agreed to, there is an outstanding balance
9  of $1,250.  And for the actual fees paid for the initial case,
10 I would have to confirm what that was, but it was certainly
11 well below what services were actually provided.
12           THE COURT:  All right. Well, the facts will be the
13 facts.  And sometimes you need an expert and sometimes you
14 don't.  I mean, there are certain things, certainly, as lawyers
15 we all know must be done and that need to be done.  And if
16 they're not being done, they better be very, very well
17 documented as to why they're not being done.
18           So, there are certain critical stages and critical
19 documents, critical motions, critical discovery that is filed
20 during the course of the case.  And, certainly, that requires
21 extremely good documentation if it's not being responded to,
22 because we'll see, then, where the facts play out.  Because
23 it's one thing to say things and close, there's another thing
24 to take a look at what the facts determine.
25           So, just keep that in mind as we move forward.  So,

1   what I'm saying in terms of the insurance, I'm assuming that
2   there's going to be discovery as to the insurance and the
3   insurance coverage and when things were reported.
4           In terms of damages right now, I'm seeing -- what's
5   being presented so far is the 61,000.  The alleged loss of
6   income, business income, from September to December.
7   Certainly, that should be measured in light of any answers that
8   were filed to -- answers were filed on the other record
9   regarding collection.
10          And then you have the fees paid to Mr. Thomas.
11  Certainly, fees being paid to Mr. Thomas are recoverable if Mr.
12  Thomas is not doing a job within what would be expected and in
13  terms of a reasonable degree of lawyer professionalism.
14          So, that's where we are.  We will get a scheduling
15  order out to you.  Let's see.  It looks like the magistrate on
16  the case is Judge Lloret.  He's very good.  He'll reach out to
17  you.
18          You know, unless there's insurance on the case, I
19  don't see this case resolving.  I see it going either through
20  summary judgment or through a jury trial.  I'm happy to do a
21  jury trial.  And I keep close tabs on my cases.
22          So, I think the first step is, Mr. Thomas, it would
23  make it a lot easier if you would send authorization to counsel
24  to get that information.  But I can see that you're not looking
25  to do that.  And so I think counsel needs to subpoena those

1  records from the insurance companies.  And then we'll take it
2  from there.  Make sure you file the proper process fees and pay
3  the required witness fee if anything is needed.
4          Okay.  Is there anything else, counsel for the
5  Plaintiff?
6          MR. ARTOM-GINZBURG:  No, Your Honor.
7          THE COURT:  And is there anything else, counsel for
8  the Defendant?
9          MR. THOMAS:  Not right now, Your Honor.  Thank you
10 very much.
11         THE COURT:  All right.  Have a nice day.
12         (Whereupon, the above-entitled matter went off the
13 record at 10:24 a.m.)

C E R T I F I C A T E

      I, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

_____  February 22, 2021
Neal R. Gross

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C. 20005-3701    www.nealrgross.com