IN THE FEDERAL DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FCS Capital, LLC<br>And Barry Shargel and Emil Yashayev | :<br>: Case No. 2:20-cv-5580<br>: |
| v. | :<br>: |
| Joshua L. Thomas, Esquire | :<br>: MOTION FOR SUMMARY JUDGMENT |

MOTION FOR SUMMARY JUDGMENT

### A. Factual Background

1. This matter arises out of Defendant Thomas' representation of Plaintiffs in an earlier case, <u>Shelton v. FCS Capital, LLC</u>, 18-cv-03723-JDW. A copy of the docket in that case is attached hereto as Exhibit "1."

2. This case presents a lengthy and tortured history of failures by the Defendant in the course of his representation of the Plaintiffs, which led to an unopposed summary judgment motion, unopposed sanctions motions, and a Federal Judge compelling the Defendant to send a copy of the final hearing to the Disciplinary Board of the Pennsylvania Supreme Court.

3. In August of 2018, a suit was brought by one James Shelton, against the now-Plaintiffs, then-Defendants, FCS Capital, in the Federal District Court of the Eastern District of Pennsylvania, and docketed at No. 2:18-cv-03723-JDW ("Shelton case"), and concerning alleged violations of the Telephone Consumers Protection Act of 1991 ("TCPA"), codified at 47 U.S.C. §227.

4. Shargel, Yashayev, and FCS Capital are engaged in a consulting business.

5. Shelton alleged that Shargel, Yashayev, and FCS Capital ("the FCS parties") had violated the TCPA by making calls to a telephone number owned by him which was on the Federal Do-Not-Call list.

6. Plaintiffs retained Defendant Thomas, a lawyer admitted in the states of Pennsylvania and New Jersey, to defend them in the Shelton case.

7. On September 17, 2019, a Motion for Summary Judgment was filed by the Plaintiffs in the Shelton case, with a response deadline of 14 days later, or October 1, 2019.

8. Part of the grounds for Summary Judgment were that no discovery, including answers to Admissions under F.R.C.P. 36, had been provided by the FCS Parties, and the averments of the Admissions were therefore admitted.

9. On October 8, 2019, one week after the filing deadline, Defendant filed a Motion for Extension of Time indicating that an additional two weeks were required to provide a "comprehensive" response to the Motion.

10. The Motion for Extension of Time was filed with The Honorable Joshua Wolson, who had been assigned the case on June 26, 2019.

11. The Motion for Extension of Time was rendered moot when the Court struck the Motion for Summary Judgment for not obeying the Courts' Policies and Procedures, on October 8, 2019.

12. Plaintiffs filed a second, Amended Motion for Summary Judgment, this time following Judge Wolson's requested format, on October 8, 2019.

13. The applicable deadline, according to Local Rule 7.1, would therefore have been October 22, 2019.

14. Coincidentally, this was the same period of time that Thomas had asked for in his Motion for an Extension.

15. On October 22, 2019, Mr. Thomas filed a 2nd Motion for Extension of Time, requesting an additional two weeks.

16. That same day, the Court denied Thomas' request, pointing out in its Order that not only had Thomas failed to request a continuance seven days in advance as per the Policies and Procedures, but that the continuance was solely based on Thomas' "inattentiveness to this litigation, as evidenced by the docket" and that he had now had more than a month to file a response to what was substantively the same Motion.  See  Exhibit "2"

17. On December 11, 2019, Thomas having not filed any response in the **51 days** since his Motion for Extension of Time was denied, the Court ruled on the Summary Judgment

Motion brought by Plaintiffs, granted Summary Judgment on Counts I and II of the Plaintiff's Amended Complaint, and awarded the Plaintiffs $54,000 in damages against the FCS Parties, including the individuals. See Exhibit "3"

18. Even at this late date, the Court's Order allowed Thomas to file a memorandum of no more than five pages to argue in regards to whether the Court should grant summary judgment as to Count IX of the Amended Complaint.

19. <u>According to the Court's Order of December 13, 2019, Thomas emailed the Court's chambers to indicate he would not be filing such a memorandum.</u>   See Exhibit "4"

20. The Court denied summary judgment on that count and marked the case closed.

21. Local Rule 7.1 of the Rules of Civil Procedure would have permitted a reconsideration within 14 days of the grant of the motion.

22. <u>No such motion was filed.</u>

23. On January 27, 2020, **47 days after the judgment was entered**, Thomas filed a Motion for Reconsideration, seeking relief under sections 60(b)(2) (late discovered evidence), 60(b)(3) (fraud by opposing party) and 60(b)(6) (catchall) of the Federal Rules of Civil Procedure.

24. The Court stated that there was literally nothing in the Motion that could not have been filed as a reconsideration within 14 days of the granting of the Motion on December 11, 2019, and it was therefore untimely under Local Rule 7.1.

25. The Court therefore denied the Motion for Reconsideration two days later, on the 29th of January, 2020.  See Exhibit "5"

26. On May 26, 2020, the Court entered an Order that post-judgment discovery needed to be answered by June 1, 2020.

27. Post-judgment discovery was not answered by June 1, 2020.

28. Instead of answering post-judgment discovery, Thomas filed a second Motion for Reconsideration and a Motion for Preliminary Injunction on June 1, 2020.

29. The Court denied the second Motion for Reconsideration as well as the Motion for Preliminary Injunction on June 17, 2020.  See Exhibit "6."

30. On June 29, 2020, Thomas filed an appeal to the Third Circuit Court of Appeals.

31. Also on June 29, 2020, Shelton's counsel filed Motions for Contempt and for Rule 37 Sanctions based on a failure to provide post-judgment discovery.

32. A Petition for Attorney's Fees was filed against the FCS Parties, together with a 2nd Motion for Sanctions, on July 27, 2020.
33. Thomas did not file a response to the Petition for Attorney's fees.
34. Attorney's fees were awarded against the FCS Parties on September 1, 2020.
35. Another Motion for Sanctions was filed against the FCS Parties on September 4, 2020.
36. On September 22, 2020, the Court ordered a deadline of September 25, 2020 for producing documents in relation to the post-judgment discovery.
37. No such documents were filed, and on September 25, Shelton's counsel filed a Motion for Contempt.
38. Sanctions were granted on October 2, 2020.
39. Upon advice from the undersigned counsel that the appeal to the Third Circuit was frivolous and could lead to further sanctions, the FCS Parties requested that Thomas withdraw it, fired Thomas, and hired the undersigned counsel. See Exhibit "7"
40. A day-long hearing was held before Judge Wolson on November 4, 2020, relating to the conduct of the case by Thomas. See Exhibit "8."
41. Judge Wolson held that Thomas had not informed the FCS parties of the judgment, or of the need to answer post-judgment interrogatories.
42. Judge Wolson found that Thomas had made false statements to the Court on numerous occasions, had failed to inform his clients of many matters relating to the litigation, ordered Thomas to obtain the transcript of the day-long hearing and supply it to the Court so that the Court could supply it to the Disciplinary Boards of Pennsylvania, New Jersey, and the Federal District Courts therein, and barred Thomas for a year from filing any actions in the Eastern District of Pennsylvania or Bankruptcy Court without Judge Wolson's prior approval.
43. He issued an Order encompassing this hearing, which is attached hereto as Exhibit "9."
44. The present action shortly followed, on November 9, 2020.

B.  **Legal Argument.**

   a.  **Standard for Summary Judgment**

45. Summary judgment is appropriate where a party can show that, as to any claim that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).
46. The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).
47. . The moving party can satisfy this burden by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element of his or her claim on which that party will bear the burden of proof at trial. Id. at 322-23.
48. If the moving party has carried its burden under Rule 56(c), the burden shifts to the nonmoving party who "must do more than simply show that there is some metaphysical doubt as to the material facts." Scott v. Harris, 550 U.S. 372, 380 (2007) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)).
49. The nonmoving party "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita, 475 U.S. at 587 (internal citation omitted).
50. "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)

### b. Much of this matter is governed by collateral estoppel.

51. Unlike many cases of legal malpractice, most, if not all, of the facts in this case are set in stone by collateral estoppel, as a result of the repeated opinions and sanctions orders of Judge Wolson relating to the conduct of Defendant Thomas in the course of the prior litigation.
52. Under Pennsylvania law, collateral estoppel applies where (1) the issue decided in the prior action was identical to the issue in the subsequent case, (2) there was a final judgment on the merits, (3) the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior action; and (4) the party in the prior action had a full and fair opportunity to litigate the issue in question. Walker v. Walker, 385 F.3d 321, 337 (3d Cir. 2004).

53. It is contended that issues relating to Mr. Thomas' conduct in prosecuting the litigation fit the principle of collateral estoppel as (1) the issues are identical, in that he is defending his own conduct as attorney in the prior case; (2) the summary judgment and the subsequent unappealed Orders relating to sanctions constituted final judgments on the merits, and the judgment is in fact now satisfied; (3) Thomas was in privity with the FCS parties in the prior litigation, being their contracted attorney; and (4) Thomas had every opportunity to litigate the issues underlying the case.
54. As a result, Mr. Thomas may no longer relitigate the decisions of Judge Wolson, no matter how much he disagrees with them.
55. Judge Wolson stated, in his Order and Opinion of June 17, 2020 (Exhibit "6"), "On October 8, 2019, Mr. Shelton filed a motion for summary judgment. (ECF No. 41.) He relied in substantial part on requests for admission to which FCS had not responded and which the Federal Rules of Civil Procedure therefore deemed admitted. FCS did not respond to the summary judgment motion. On December 11, 2019, the Court granted Shelton's summary judgment motion in part. It did so after treating the facts in Shelton's Statement of Undisputed Material facts as undisputed, given the lack of a response."
56. Judge Wolson made several other findings of fact on the record in the November 4, 2020 sanctions hearing, beginning at page 257 (of Exhibit "8").
57. Judge Wolson found that Thomas did not tell the Plaintiffs about the summary judgment being entered until the summer, more than six months after the entry of judgment. (p. 258).
58. Judge Wolson found that Thomas did not inform the Plaintiffs of discovery in aid of execution, leading to sanctions orders being entered against them. (p. 263-264)

    c. **Standard for Legal Malpractice**

59. "The elements of a legal malpractice action, sounding in negligence, include: (1) employment of the attorney or other basis for a duty; (2) failure of the attorney to exercise ordinary skill and knowledge; and (3) that such failure was the proximate cause of the harm to the plaintiff." Wachovia Bank N.A. v. Ferretti, 935 A.2d 565. 570-571 (Pa. Super. 2007)
60. Thomas was retained by Plaintiffs for the suit in a question. A copy of his retainer agreement is attached as Exhibit "10"

61. An expert report, prepared by Eli Gabay, Esquire, an attorney of 38 years standing in the Commonwealth of Pennsylvania, is attached hereto as Exhibit "11"
62. His Curriculum Vitae is attached as Exhibit "12"
63. Mr. Gabay found that Mr. Thomas violated his professional duty of care and failed to exercise ordinary skill and knowledge by

    (1) failing to answer discovery in the Shelton case;

    (2) failing to answer the summary judgment motion;

    (3) making no submissions to the court in the 51 days between the time his (second) Motion for Extension of Time was denied and the time that judgment was entered despite having potentially two pieces of evidence that could have deferred or prevented summary judgment (an affidavit as to his clients' lack of autodialers, and phone records which contradicted the statement of undisputed facts);

    (4) failing to file a Motion for Reconsideration within 14 days;

    (5) waiting 47 days from the time judgment was entered to file his Motion for Reconsideration;

    (6) failing to understand or apply the rules to stay a judgment, instead filing for an injunction;

    (7) failing to inform his clients of the judgment or attempts to collect it and

    (8) taking an appeal to the Third Circuit which was potentially frivolous and which could not address the underlying judgment by virtue of the scope of the order to which it was an appeal.

64. As a result of Thomas' conduct, judgments were entered against the FCS Parties for $54,000 (summary judgment), $7,009.28 (first sanctions order, 9/1/2020), and $554.00 (second sanctions order, 11/24/2020), totaling $61,583.28.
65. As there is no issue of disputed fact relating to the legal malpractice claim against Defendant, summary judgment should be entered according to Rule 56 of the Federal Rules of Civil Procedure.

### d. Standard for Breach of Contract

66. Count II of Plaintiff's Complaint relates to breach of contract.

67. "[An assumpsit claim based on breach of the attorney-client agreement] is a contract claim and the attorney's liability in this regard will be based on terms of that contract. Thus, if an attorney agrees to provide his or her best efforts and fails to do so an action will accrue. *Of course an attorney who agrees for a fee to represent a client is by implication agreeing to provide that client with professional services consistent with those expected of the profession at large.*" Gorski v. Smith. 812 A.2d 683, 694 (Pa. Super., 2002), *quoting* Bailey v. Tucker, 533 Pa. 237, 621 A.2d 108 (1993)

68. Exhibit "9" is a copy of the retainer agreement Plaintiffs had with Defendant.

69. An expert report, prepared by Eli Gabay, Esquire, an attorney of 38 years standing in the Commonwealth of Pennsylvania, is attached hereto as Exhibit "11"

70. His Curriculum Vitae is attached as Exhibit "12"

71. Mr. Gabay found that Mr. Thomas violated his professional duty of care and failed to exercise ordinary skill and knowledge by

    (1) failing to answer discovery in the Shelton case;

    (2) failing to answer the summary judgment motion;

    (3) making no submissions to the court in the 51 days between the time his (second) Motion for Extension of Time was denied and the time that judgment was entered despite having potentially two pieces of evidence that could have deferred or prevented summary judgment (an affidavit as to his clients' lack of autodialers, and phone records which contradicted the statement of undisputed facts);

    (4) failing to file a Motion for Reconsideration within 14 days;

    (5) waiting 47 days from the time judgment was entered to file his Motion for Reconsideration;

    (6) failing to understand or apply the rules to stay a judgment, instead filing for an injunction;

    (7) failing to inform his clients of the judgment or attempts to collect it and

    (8) taking an appeal to the Third Circuit which was potentially frivolous and which could not address the underlying judgment by virtue of the scope of the order to which it was an appeal.

72. As a result of Thomas' conduct, judgments were entered against the FCS Parties for $54,000 (summary judgment), $7,009.28 (first sanctions order, 9/1/2020), and $554.00 (second sanctions order, 11/24/2020), totaling $61,583.28.

73. As there is no issue of disputed fact relating to the breach of contract claim against Defendant, summary judgment should be entered according to Rule 56 of the Federal Rules of Civil Procedure.

   e. **Punitive damages**

74. Plaintiffs brought a claim for punitive damages in their Complaint.

75. "Assessment of punitive damages are proper when a person's actions are of such an outrageous nature as to demonstrate intentional, willful, wanton or reckless conduct, Pittsburgh Outdoor Adv. Co. v. Virginia Manor Apts., Inc., 436 Pa. 350, 260 A.2d 801 (1970), and are awarded to punish that person for such conduct. Feingold v. Southeastern Pennsylvania Transportation Authority, 512 Pa. 567, 517 A.2d 1270 (1986); Restatement of Torts, Section 908(1)." SHV Coal v. Continental Grain Co., 526 Pa. 489, 493, 587 A.2d 702, 703 (1991)

76. "Section 908(2) of the *Restatement (Second) of Torts* which states:

> (2) Punitive damages may be awarded for conduct that is outrageous, because of the defendant's *evil motive or his reckless indifference to the rights of others.* In assessing punitive damages, the trier of fact can properly consider the character of the defendant's act, the nature and extent of the harm to the plaintiff that the defendant caused or intended to cause and the wealth of the defendant. (Emphasis added)." Id.

77. **Thomas's actions were truly outrageous, because rather than limit the damage to his clients, he continued forward while not responding to sanctions motions and post-judgment discovery, and lied repeatedly to the Court in the process, including in companion litigation.**

78. In addition to the discussion of Mr. Thomas' veracity starting on p.257 of the November 4, 2020 transcript (attached as Exhibit "8"), Judge Wolson makes reference to another, companion case, Jacovetti v. Shelton, 2:20-cv-00163-JDW, in which a business partner of the FCS Parties sued the Plaintiff in the Shelton case.

79. On March 27, 2020, as the country was locked down in the first wave of the COVID epidemic, Judge Wolson issued an opinion regarding Mr. Thomas's conduct before him so remarkable that, in the midst of the epidemic, it was quoted in the Legal Intelligencer on March 30, 2020. A copy of that opinion is attached hereto as Exhibit "13," but quoted here in relevant part.

80. "Day-to-day, this Court sees lawyers of many different stripes. They have different specialties, they come from different places, and they have different backgrounds. In general, they conduct themselves with professionalism. They advocate for their clients while respecting the Court and the judicial system. In so doing, they justify the faith that our founders had in an adversarial system—a faith that the Court shares. Indeed, as a rule, the Court is honored to share a profession with the lawyers who appear before it.

    Then there is Joshua Thomas. Thomas has appeared before the Court twice, in this case and in a predecessor. Throughout those cases, he has disregarded the rules and deadlines that ensure cases move in an orderly way. Even worse, he has ignored this Court's Orders. In light of all of that, the Court has now issued two Orders to Show Cause why the Court should not sanction Thomas. At a hearing to address the first Order, Thomas was not contrite. To the contrary, he lied to the Court about the reason for his actions, on the record and under oath. Following that hearing, the Court afforded him the opportunity to respond to the proposed sanctions in writing. Thomas finally showed a little bit of contrition, but given his history, the Court does not believe it. Accordingly, the Court will sanction Mr. Thomas. The Court's sanctions here are harsh because less severe sanctions do not seem to get through to Thomas. However, the Court will reduce the monetary sanction that it proposed, in recognition of the arguments that Thomas makes in his written response." (March 27, 2020 Order at Exhibit "13," p. 1)

81. In his March 27, 2020 opinion in the <u>Jacovetti</u> case, given the outrageousness of Thomas' conduct in both the <u>Jacovetti</u> and <u>FCS</u> matters, Judge Wolson required that Thomas' clients confirm that they had read the transcript of the hearing that led to those sanctions, and agree in writing to continue to employ Mr. Thomas as their attorney <u>in both cases</u>.

82. Both the FCS Principals testified at the November 4, 2020 hearing that Thomas misled them as to the reason for their signatures, and that they never received the transcript. Mr. Yashayev states this on page 41, Mr. Shargel at some length beginning on page 169.

83. Judge Wolson states on page 261 that Thomas' compliance with the sanctions order in <u>Jacovetti</u> was "dodgy at best" and that he apparently buried the mandatory disclosures to his clients that were required by Judge Wolson's order in an email chain with a misleading subject, while similarly burying disclosures required by the same order to the Disciplinary Boards of PA, NJ, and the Federal District Courts thereof.

84. This had the effect of continuing Thomas' representation of the FCS Parties from March until October, as they were unaware of his duplicity to them or to the Court.

85. Mr. Thomas' reckless misbehavior with both his clients and with the Court, far more than merely missing deadlines, is grounds for punitive damages.

86. As there is no issue of disputed fact relating to the punitive damages claim against Defendant, summary judgment should be entered according to Rule 56 of the Federal Rules of Civil Procedure.

                                              Respectfully Submitted,

                                              _____/s_____
                                              LIONEL ARTOM-GINZBURG, ESQUIRE
                                              PA ID#88644
                                              834 Chestnut Street
                                              Suite 206
                                              Philadelphia, PA 19107-5100
                                              (215) 925-2915
                                              (267) 930-3934 FAX
                                              lionel@artom-ginzburg.com

September 7, 2021

IN THE FEDERAL DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FCS Capital, LLC | : |
| And Barry Shargel and Emil Yashayev | : Case No. 2:20-cv-5580 |
| | : |
| v. | : |
| | : |
| Joshua L. Thomas, Esquire | : |

CERTIFICATE OF SERVICE

On this date, I state that I caused to be served a copy of the preceding Motion for Summary Judgment upon Joshua Thomas, Esquire, by means of the Electronic Case Filing System of the Federal District Court for the Eastern District of Pennsylvania.

Respectfully Submitted,

_____/s_____
LIONEL ARTOM-GINZBURG, ESQUIRE
PA ID#88644
834 Chestnut Street
Suite 206
Philadelphia, PA 19107-5100
(215) 925-2915
(267) 930-3934 FAX
lionel@artom-ginzburg.com

September 7, 2021