## SOLOMON, SHERMAN & GABAY
ATTORNEYS AT LAW

DAVID B. SHERMAN*
ELI GABAY
GARY I. SPIVACK

OF COUNSEL
LAWRENCE SOLOMON

*ALSO MEMBER OF
NEW JERSEY BAR

8 PENN CENTER
1628 JFK BOULEVARD • SUITE 2200
PHILADELPHIA, PA 19103

PHONE (215) 665-1100
FAX (215) 665-8471

PLEASE REPLY TO THE
PHILADELPHIA ADDRESS

BUCKS COUNTY OFFICE
188 LINCOLN HWY., STE.105
FAIRLESS HILLS, PA 19030
PHONE (215) 946-9323

NEW JERSEY OFFICE
THE ELLIPSE BLDG., STE. 9A
4201 CHURCH ROAD
MOUNT LAUREL, NJ 08054
PHONE (856) 273-1230

June 4, 2021

Lionel Artom-Ginzburg, Esquire
The Franklin
834 Chestnut Street, Suite M-206
Philadelphia, PA 19107

RE: FCS Capital, LLC et al. v. Thomas, E.D. Pa No. 20-CV-5580.

Dear Mr. Artom-Ginzburg:

Thank you for the opportunity to serve as an expert witness in this matter. You requested that I provide an opinion as to the potential malpractice of Joshua L. Thomas, Esq. ("Thomas") for his representation in a commercial litigation matter on behalf of Defendants FCS Capital, LLC, Barry Shargel, and Emil Yashayev ("FCS"). Plaintiffs believe that were it not for Mr. Thomas' malpractice, they would not have had a judgment, including sanctions, placed against them, in the approximate amount of $61,000.

I have reviewed the docket and relevant portions of the pleadings in the case of Shelton v. FCS Capital et al. (E.D. Pa. 18-cv-3723) as well as the findings of the Court following the November 4, 2020 hearing in that case, and the Complaint and Answer in FCS Capital et al. v. Thomas, 20-cv-5580.

I have been a practicing attorney in the Commonwealth of Pennsylvania since 1983, was admitted to the Federal District Court for the Eastern District of Pennsylvania in 1990, and have been a practicing litigator, civil, commercial, and criminal, during my entire career. A copy of my CV is attached.

It is my opinion, to a reasonable degree of legal certainty, as an attorney of 38 years standing, that Joshua L. Thomas, Esquire violated his duty of care as an attorney repeatedly in the Shelton v. FCS Capital case. To wit:

By failing to answer any discovery propounded upon him, most seriously, admissions under F.R.C.P. 36, he entered the Summary Judgment stage of the case with admissions deemed admitted, which limited or eliminated his ability to prevent a defense to Summary Judgment, insofar as he could no longer dispute the facts present in the admissions. This failure to provide discovery further hurt him in limiting his ability to present a proper defense to the allegations in the Motion. His ability to maneuver around the admissions was limited, but had he provided answers to them at the time he received the Motion for Summary Judgment, he had at least the possibility that the Court would rule that the admissions were not deemed admitted. He actually had two bites at the apple, as it were—the initial Motion for Summary Judgment was dismissed without prejudice for failing to follow local rules, and as a result, he had at least 42 days to either answer the admissions and attach them to his response brief for the Motion, or to file a Motion to contest the facts deemed admitted contained within the Summary Judgment Motion and thus supplement the record for a Response to the Summary Judgment Motion.

The second issue is the failure to respond to the Summary Judgment motion. While most Federal District Judges will, for good cause shown, extend a deadline in a Summary

Judgment Motion once, the likelihood that they will do it a second time is of course diminished. Thomas must have known that by filing a second motion for extension of time, without regard to Judge Wolson's posted regulations, he was risking its rejection, which would mean his response would be late. It should be noted that as the Eastern District of Pennsylvania does not grant Summary Judgment motions unopposed (See Local Rule 7.1(c), see also 11/4/2020 transcript at p. 257), 51 days elapsed between the time that Thomas missed the deadline (the second deadline—see preceding paragraph) and the time the Order issued granting Summary Judgment on eight of nine counts, the Court had worked its way through the Motion and determined whether there were sufficient undisputed facts to grant it. (see 11/4/2020 transcript at p.258). These 51 days, in addition to being a further abdication of responsibility for his clients, also were taken by the Court (Id.) as a sign that no new evidence was being presented in opposition to the Motion.

By failing to answer the Summary Judgment Motion, even though he had at least two disputed material facts (Mr. Shargel's phone records, which did not show at least one call alleged by the Plaintiff, and the Defendant's non-ownership or use of any autodialers, a fact which could have been presented by affidavit, and which would have rendered the FTCPA statute inapplicable), he failed to present any defense to Summary Judgment. Indeed, under F.R.C.P. 56(d), simply filing an affidavit from Mr. Shargel, together with the phone records and the relevant allegation from the Plaintiff, Mr. Shelton, the Court would have been forced to defer the Motion for further discovery, if not outright deny it.

Even after the Court entered its Order and Opinion of December 11, 2019, granting Summary Judgment on eight of nine counts, the Court requested a memorandum on the remaining count, and was apparently informed that none would be provided, leading to the

Court's Order of December 13, 2019 denying Summary Judgment on Count IX. While it happens that Thomas' failure to respond in the form of a memorandum to the Court's Order did not hurt his clients, it nonetheless risked further damage that could have been mitigated by a formal reply on the docket (necessary in that Thomas apparently wished to appeal the Court's ruling).

Pursuant to Local Rule 7.1(g), a motion for reconsideration is due within 14 days from the Order being requested for reconsideration, except in the case of Rule 59(e) Motions to alter or amend a judgment, which are due within 28 days. No such Motion was filed. The appeal deadline for the Summary Judgment Order was January 10, 2020, pursuant to Rule 4 of the Federal Rules of Appellate Procedure. No such appeal was taken.

Mr. Thomas' first filing after the grant of Summary Judgment was on January 27, 2020, or 47 days after the Order granting Summary Judgment. This was his Motion for Reconsideration pursuant to Rule 60(b)(2), alleging that he had discovered new evidence which undermined the finality of the judgment.

As Rule 60 motions may be filed within a year of a judgment (F.R.C.P. 60(c)), this was timely as a Rule 60 motion, but, as Judge Wolson's Order of January 29, 2020, denying the Motion points out, the "new" evidence cited to in the motion was all evidence that was in the Defendants' control at the time the Summary Judgment Motion, so it fails as a Motion under Rule 60(b)(2), and is untimely as a Motion for Reconsideration.

A second Motion for Reconsideration under Rule 60(b)(2) (new evidence) and 60(b)(3) (fraud) was filed on June 1, 2020, or six and a half months after the Order granting Summary Judgment. This Motion contained transcripts of a court proceeding in Ohio to which the

Plaintiff, Shelton, had been a party. As Judge Wolson pointed out in his Opinion of June 13, 2020, this motion failed on both counts—it failed to establish that the "new" evidence was even admissible in Court, and failed to show any fraud, only that Shelton was a frequent Plaintiff, and limited his lawsuits to Defendants who appeared to have assets. Simultaneously with the Motion for Reconsideration, Thomas filed a Motion for a Preliminary Injunction seeking to stop post-judgment discovery, on the day that it was due, pursuant to a previous Order of the Court.

While a Court may grant relief under Rule 62 to stay enforcement of a judgment, an injunction is an improper avenue for relief from judgment execution, as Judge Wolson's Opinion of June 13 correctly states. However, what Judge Wolson did not know at the time, but which was later established in the hearing of November 4, 2020, was that as of early June, Thomas' clients still had no idea, seven months after judgment and six months after the appellate period expired, that a judgment even existed. (See 11/4/2020 hearing, p. 262-265) This is a gross dereliction of attorney duty. Rule 1.4 of the Rules of Professional Conduct requires that an attorney "keep the client reasonably informed of the status of the matter," (Rule 1.4(c)) which Judge Wolson held was clearly not done in the instant case. In fact, as a result of Thomas' miscommunications, the innocent clients ended up owing not only the $54,000 in judgment, but an additional amount in excess of $7,800 in sanctions fees for failure to answer post-judgment discovery.

To compound these errors, on June 27, 2020, Thomas took an appeal to the Third Circuit Court of Appeals. Pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure, this Appeal could have been taken only to Judge Wolson's June 13, 2020 Order—in other words, the Order which denied the 60(b)(2) and 60(b)(3) Motions, not to the original Order granting Summary Judgment. This appeal, in my opinion, was frivolous, both under Rule 3.1 of the Rules

of Professional Conduct, and potentially under Rule 38 of the Federal Rules of Appellate Procedure.

Judge Wolson's citation as to the standard for the admissibility of evidence required for a 60(b)(2) Motion is applicable, and of a case still in force (Compass Technology v. Tseng Laboratories, 71 F.3d 1125 (3rd Cir., 1995)). In fact, other applicable precedent states that "[t]he party requesting relief based on new evidence 'bears a heavy burden', which requires 'more than a showing of the potential significance of the new evidence.'" Bohus v. Beloff, 950 F.2d 919, 930 (3d Cir. 1991) (quoting Plisco v. Union R. Co., 379 F.2d 15, 17 (3d Cir. 1967)). Clearly the "evidence" produced by Thomas shows nothing more than that the Plaintiff, Shelton, a serial litigator, chooses his cases such that he has the possibility to collect on judgments at the end of his successful litigation. This is something every capable attorney in America tries to do.

The evidence that could have defeated the Summary Judgment motion was already within Thomas' possession or easy access—the phone records showing that the phone calls were not from FCS, and an affidavit from the principals of FCS that they own no autodialers. The evidence presented in the second motion for reconsideration was no more than character evidence relating to the Plaintiff. There was absolutely no indication of fraud even alleged on the Plaintiff Shelton's part—unless further discovery, not taken or presented by Thomas, had shown that the Plaintiff himself forged phone records. As Thomas apparently never took any discovery from the Plaintiff Shelton, that is a theory that cannot even be seriously discussed.

As such, the appeal had no chance of succeeding, and was frivolous. It is not unreasonable to speculate that had, as you have told me, the brief was not withdrawn before opposing counsel filed an F.R.A.P. 38 motion for attorney's fees for a frivolous appeal, such a motion would likely have been granted, with attorney's fees awarded against the appellant.

It is not easy, given the paucity of discovery, to speculate as to whether the FCS case was entirely winnable, but given that the TCPA (47 U.S.C. §227) <u>requires</u> the use of autodialers in order to become applicable (47 U.S.C. §227(b)(1)(A)), and given the FCS' parties vehement denials that they even own autodialers, had Thomas been able to establish that, the case would have been a defense verdict at trial. Likewise, had the defenses stated in the Answer (that the calls were made to a business phone number—another exception under the statute-- that the person making the calls was not an employee of FCS at the time of the calls, and that Shargel never called the Plaintiff) been established, it would have been a complete defense to the Complaint. As Mr. Shargel stated this defense under oath at the November 4, 2020 hearing (p. 94-95), it is the best evidence of the evidence he could have brought forward that we have.

Therefore, after fully reviewing the materials cataloged herein it is my opinion, within a reasonable degree of professional certainty, that Thomas did commit malpractice.

Very truly yours,

ELI GABAY, ESQUIRE

EG/st