## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FCS CAPITAL LLC et al.,** | : | **CIVIL NO. 20-5580** |
| *Plaintiff,* | : | |
| | : | |
| **v.** | : | |
| | : | |
| **JOSHUA L. THOMAS, ESQ.** | : | |
| *Defendant* | : | |

## MEMORANDUM

**KENNEY, J.**                                                                 **January 11, 2022**

Plaintiffs claim that Defendant committed legal malpractice in relation to a summary judgment motion in prior litigation before Judge Wolson, which resulted in a $54,000.00 judgment and subsequent sanctions against them in the sums of $7,029.08[1] and $554.00. They argue if Defendant had simply responded to the summary judgment motion on behalf of his clients, summary judgment would not have been entered against them. It is undisputed that no response to the summary judgment motion was filed. In subsequent testimony before Judge Wolson, Defendant admitted that during the relevant time period, he had a meritorious defense to the summary judgment motion that he failed to file, and in a consented to Joint Petition and notarized affidavit submitted by Defendant to the Pennsylvania Supreme Court Board of Discipline, Defendant also admitted that he had no excuse for missing any filing deadline in relation to his representation of Plaintiffs in the underlying action. Plaintiffs argue that Defendant's conduct throughout was so egregious that a reasonable jury would be compelled to not only find Defendant culpable of legal malpractice, but also to award punitive damages on the undisputed parts of this record. This Court agrees, and for the reasons that follow, judgment

---

[1] This Court notes that in the Plaintiffs' Motion for Summary Judgment (ECF No. 30), this sum is inadvertently identified as $7,029.28. ECF No. 30 at ¶ 72.  A review of the underlying docket confirms the correct sum is $7,029.08. *Id.* Exhibit 1 at Dkt. No. 77.

will be entered on behalf of the Plaintiffs in the amount of $61,584.08 ($54,000.00 summary judgment award issued by Judge Wolson; $7,029.08 sanctions; $554.00 sanctions; and $1.00 punitive damages. The FCS parties satisfied the judgment on January 8, 2021).

More specifically, Plaintiffs FCS Capital LLC, Barry Shargel, and Emil Yashayev (collectively, the "FCS Parties"), seek relief for their claims of legal malpractice arising from both professional negligence and breach of contract, as well as punitive damages against Defendant Joshua L. Thomas. ECF No. 1. Before the Court currently is Plaintiffs' Motion for Summary Judgement (ECF No. 30), Defendant's Response in Opposition (ECF No. 34), and Plaintiffs' Reply (ECF No. 35). For the reasons that follow, this Court **GRANTS** Plaintiffs' Motion for Summary Judgment (ECF No. 30) with respect to Counts I and II for legal malpractice arising out of professional negligence and breach of contract, as well as to Count III for punitive damages. Judgment in the amount of $61,584.08 will be entered on behalf of the Plaintiffs and an appropriate order will follow.

I.     <u>**BACKGROUND**</u>

In August 2018, an individual, James Everett Shelton, sued the current Plaintiffs, FCS Capital, LLC, Barry Shargel, and Emil Yashayev,[2] in the United States District Court for the Eastern District of Pennsylvania involving alleged violations of the Telephone Consumers Protection Act of 1991 ("TCPA").[3] ECF No. 30 at ¶ 3; *Shelton v. FCS Cap. LLC,* No. 2:18-CV-03723-JDW, 2019 WL 6726404 (E.D. Pa. Dec. 11, 2019), *motion for relief from judgment*

---

[2] FCS Capital, LLC, Barry Shargel, and Emil Yashayev are involved in a consulting business. ECF No. 1 at ¶ 6. In the Shelton Matter, Mr. Shargel was sued individually and as a managing member of FCS Capital, LLC and Mr. Yashayev was sued individually and as Owner, CEO, and Managing Member of FCS Capital, LLC. *Id.* Exhibit 1.

[3] Specifically, Plaintiff Shelton alleged that the Defendants in the Shelton Matter, FCS Capital, LLC, Barry Shargel, and Emil Yashayev had violated the TCPA by making calls to a telephone number owned by Mr. Shelton that was on the Federal Do-Not-Call list using an automatic dialer. ECF No. 30 at ¶ 5.

*denied*, No. 2:18-CV-03723-JDW, 2020 WL 3265174 (E.D. Pa. June 17, 2020) (the "Shelton Matter").

Shortly thereafter, the FCS Parties were introduced to attorney Joshua Thomas by a business associate, Robert Jacovetti, and in September 2018, the FCS Parties retained Mr. Thomas as their defense attorney in the Shelton Matter. ECF No. 30 Exhibit 8 at p. 177:5-6; *Id.* Exhibit 10. At that time Mr. Thomas was admitted to the practice of law in both Pennsylvania and New Jersey. *Id.* at ¶ 6.

Mr. Robert Jacovetti, and his law firm, Jacovetti Law P.C., were initially also named as co-defendants in the Shelton Matter, however, on February 6, 2019, Plaintiff Shelton voluntarily dismissed Mr. Jacovetti and Jacovetti Law P.C. from the case.[4] *Id.* Exhibit 1 at Dkt. No. 17.

Despite Mr. Jacovetti being dismissed from the Shelton Matter, Mr. Thomas alleges that he frequently communicated with the FCS Parties about the case through Mr. Jacovetti and that Mr. Jacovetti would often set up three-way calls between himself, Mr. Thomas, and the FCS Parties to discuss the case. ECF 34 at p. 5. Mr. Jacovetti, Mr. Shargel, and Mr. Yashayev contest this assertion and maintain that Mr. Thomas rarely communicated with the FCS Parties and that they had trouble getting in contact with Mr. Thomas on numerous occasions. ECF No. 34 Transcript at pp. 177: 17-25, 178:1-12; ECF No. 30 Exhibit 8 at pp. 116:6-25, 117:1-11.

## II.    PROCEDURAL HISTORY IN THE SHELTON MATTER

---

[4] On January 9, 2020, Mr. Jacovetti, represented by Mr. Thomas, sued Mr. Shelton in the United States District Court for the Eastern District of Pennsylvania alleging violations of the Racketeer Influenced and Corrupt Organizations Act (RICO). *Jacovetti L., P.C. v. Shelton*, No. 2:20-CV-00163-JDW, 2020 WL 1491320, at *1 (E.D. Pa. Mar. 27, 2020), *reconsideration denied*, No. 2:20-CV-00163-JDW, 2020 WL 2556951 (E.D. Pa. May 20, 2020) (the "Jacovetti Matter"). The FCS Parties were also named as plaintiffs in this separate suit, however, both Mr. Yashayev and Mr. Shargel assert that at the time the suit was filed they were unaware that Mr. Thomas had included them as plaintiffs and had not certified him to do so. ECF No. 30 Exhibit 8 at pp. 38:16-20, 39:19-25, 42:15-22, 91:1-7. Subsequently, Mr. Yashayev and Mr. Shargel were removed from the Jacovetti Matter. *Id.* at pp. 44:16-25, 45:1; *Jacovetti*, 2020 WL 1491320.

Although there are additional facts related to Mr. Thomas' representation of the FCS Parties upon which Mr. Thomas and the FCS Parties disagree, many of Mr. Thomas' actions and inactions that are at issue in the present case are well-documented by the publicly available docket and filings in the Shelton Matter, and neither party contests the accuracy of the procedural timeline established by that docket. *Shelton*, 2019 WL 6726404.

Accordingly, the relevant and undisputed procedural history in the Shelton Matter is as follows:

On September 17, 2019, Plaintiff Shelton filed a Motion for Summary Judgment based solely on admitted facts, as the FCS Parties had failed to produce any discovery including answers to Requests for Admissions, which, pursuant to Fed. R. Civ. P. 36(a)(3), were thus admitted. ECF No. 30 Exhibit 1 at Dkt. No. 35; *Id.* Exhibit 3; ECF No. 1 at ¶ 13-14; ECF No. 13 at ¶ 16-17.[5]

Pursuant to the relevant Scheduling Order and the United States District Court for the Eastern District of Pennsylvania Local Rules of Civil Procedure (the "EDPA Local Rules"), Mr. Thomas had until October 1, 2019[6] (14 days later) to respond to Plaintiff Shelton's Motion for Summary Judgment on behalf of the FCS Parties. E.D.P.A. Loc. R. Civ. P. 7.1; ECF No. 30 Exhibit 1.

By October 1, 2019, Mr. Thomas had not filed a response to Plaintiff Shelton's Motion for Summary Judgment. ECF No. 30 Exhibit 1.

---

[5] This Court notes that the paragraphs in the Defendant's Answer (ECF No. 13) are inadvertently misnumbered. The paragraphs start with ¶ 4 rather than ¶ 1. Accordingly, ¶¶13 and 14 in the Complaint (ECF No. 1) align with ¶¶16 and 17 in the Answer (ECF No. 13).

[6] Pursuant to the relevant Scheduling Order in the Shelton Matter, any response to summary judgment motions were to be filed in accordance with the EDPA Local Rules, which provides 14 days to respond to motions. ECF No. 30 Exhibit 1 at Dkt. No. 33; E.D.P.A. Loc. R. Civ. P. 7.1

A week after that filing deadline had passed, on October 8, 2019, Mr. Thomas filed a Motion for an Extension of Time requesting an additional two weeks to provide a response to the pending summary judgment motion. *Id.* Exhibit 1 at Dkt. No. 39.

On October 8, 2019, however, the Motion for an Extension of Time was rendered moot when Judge Wolson, presiding over the Shelton Matter, struck Plaintiff Shelton's Motion for Summary Judgment for failing to adhere to the Court's policies and procedures. *Id.* Exhibit 1 at Dkt. No. 40, 42.

Later that same day, on October 8, 2019, Plaintiff Shelton filed an Amended Motion for Summary Judgment. *Id.* Exhibit 1 at Dkt. No. 41.

Pursuant to the EDPA Local Rules, Mr. Thomas had until October 22, 2019 (14 days later) to respond to Plaintiff Shelton's Amended Motion for Summary Judgment on behalf of the FCS Parties. *Id.* Exhibit 1 at Dkt. No. 41; E.D.P.A. Loc. R. Civ. P. 7.1.

By October 22, 2019, Mr. Thomas had not filed a response to the amended summary judgment motion and instead, again filed a Motion for an Extension of Time, requesting an additional two weeks to respond. ECF No. 30 Exhibit 1 at Dkt. No. 44.

On that same day, October 22, 2019, the Court denied Mr. Thomas' Motion for an Extension of Time, noting that his request was filed the same day the response to Plaintiff Shelton's Amended Motion for Summary Judgment was due, that the "delay in seeking this extension" was "consistent with [the Defendants'] pattern of inattentiveness to this litigation," and that the Defendants had been "on notice of the issues to be raised and the diligence to be done to prepare a response…for over a month, as Plaintiff [Shelton] first filed a motion [for summary judgment] on September 17, 2019." ECF No. 30 Exhibit 2; *Id.* Exhibit 1 at Dkt. No. 45.

More than a month later, on December 11, 2019, Mr. Thomas had still not filed a response to Plaintiff Shelton's Amended Motion for Summary Judgment on behalf of the FCS Parties, and the Court moved forward, granting the motion as to eight of its nine counts and awarding Plaintiff Shelton $54,000.00 in damages. ECF No. 30 Exhibit 1 at Dkt. Nos. 47, 48; *Id.* Exhibit 3.

Subsequently, on December 13, 2019, judgment was entered in favor of the FCS Parties with respect to the final remaining count, on the grounds that Mr. Shelton had failed to state a claim under the relevant statute. *Id*. Exhibit 1 at Dkt. Nos. 47, 48, 49; *Id.* Exhibit 3.

Pursuant to the EDPA Local Rules, Mr. Thomas had 14 days after the judgment was entered against the FCS Parties to file a motion for reconsideration, which he did not do. E.D.P.A. Loc. R. Civ. P. 7.1. Nor was any appeal taken within 30 days after judgment was entered. Fed. R. App. P. 4(a).

Instead, on January 27, 2020, 47 days after the $54,000.00 judgment was entered against the FCS Parties, Mr. Thomas filed an untimely Motion for Reconsideration. ECF No. 30 Exhibit 1 at Dkt. No. 50.

The Court denied Mr. Thomas' Motion for Reconsideration on January 29, 2020. *Id.* Exhibit 1 at Dkt. No. 51.

On May 21, 2020, Plaintiff Shelton filed a Motion to Compel Post-Judgment Discovery, alleging the FCS Parties' failure to produce post-judgment discovery. *Id.* Exhibit 1 at Dkt. No. 52.

On May 22, 2020, Plaintiff Shelton's Motion to Compel Post-Judgment Discovery was stricken for failure to comply with Judge Wolson's policies and procedures. *Id.* Exhibit 1 at Dkt. No. 53.

On May 25, 2020, Plaintiff Shelton filed a Renewed Motion to Compel Post-Judgment Discovery. *Id.* Exhibit 1 at Dkt. No. 54.

On May 26, 2020, the Court granted Plaintiff Shelton's Renewed Motion to Compel Post-Judgment Discovery, ordering the FCS Parties to answer post-judgment discovery by June 1, 2020. *Id.* Exhibit 1 at Dkt. Nos. 54, 55.

On June 1, 2020, Mr. Thomas filed a second untimely Motion for Reconsideration, as well as a Motion for a Preliminary Injunction asking to stay further post-judgment discovery until the second Motion for Reconsideration was addressed by the Court. *Id.* Exhibit 1 at Dkt. Nos. 56, 57; ECF No. 34 at p. 6.

Both the second Motion for Reconsideration and the Motion for a Preliminary Injunction were denied by the Court on June 17, 2020. ECF No. 30 Exhibit 1 at Dkt. Nos. 56, 57, 61.

On June 29, 2020, Plaintiff Shelton filed a Motion for Contempt and a Motion for Sanctions against the FCS Parties, alleging the FCS Parties' continued failure to provide post-judgment discovery. ECF No. 30 Exhibit 1 at Dkt. Nos. 64, 65.

Having missed the deadlines to file for reconsideration of Plaintiff Shelton's Amended Motion for Summary Judgment and the appeal period, Mr. Thomas instead appealed the post-judgment decisions of Judge Wolson. Specifically, on June 29, 2020, Mr. Thomas filed an appeal in the United States Court of Appeals for the Third Circuit as to the Court's orders denying the FCS Parties' initial Motion for Reconsideration, second Motion for Reconsideration, and Motion for a Preliminary Injunction. *Id.* Exhibit 1 at Dkt. No. 62, 63. Mr. Thomas never appealed the entry of judgment against the FCS Parties. *Id.* Exhibit 1.

On July 15, 2020, Mr. Thomas filed a Response in Opposition to Plaintiff Shelton's Motion for Contempt and Motion for Sanctions. *Id.* Exhibit 1 at Dkt. Nos. 64, 65, 69.

On July 16, 2020, Plaintiff Shelton filed a Reply in Support of the Motion for Sanctions and the Motion for Contempt. *Id.* Exhibit 1 at Dkt. Nos. 64, 65, 69, 70.

On July 17, 2020, a Motion Hearing was held before Judge Wolson to address Plaintiff Shelton's Motion for Sanctions and Motion for Contempt. *Id.* Exhibit 1 at Dkt. No. 71.

On July 21, 2020, Judge Wolson granted Plaintiff Shelton's Motion for Sanctions and Motion for Contempt ordering that Plaintiff file a fee petition that documented the reasonable attorney's fees and costs incurred by him in connection with attempting to get the FCS Parties to comply with post-judgment discovery and sanctioning the FCS Parties $100.00 per day for continued failure to comply with post-judgment discovery. *Id.* Exhibit 1 at Dkt. No. 72, 73.

On July 27, 2020, Plaintiff Shelton filed a Petition for Attorney's Fees asking the Court to enter an order requiring the FCS Parties to pay $7,029.08 in attorney's fees. *Id.* Exhibit 1 at Dkt. No. 75.

On August 27, 2020, Plaintiff Shelton filed a second Motion for Sanctions. *Id.* Exhibit 1 at Dkt. No. 76.

On September 1, 2020, Judge Wolson awarded attorney's fees against the FCS Parties in the amount of $7,029.08. *Id.* Exhibit 1 at Dkt. No. 77.

On September 4, 2020, Plaintiff Shelton filed another Motion for Sanctions against the FCS Parties, alleging a continued failure to comply with the Court's orders related to post-judgment discovery. *Id.* Exhibit 1 at Dkt. No. 79. Specifically, Plaintiff asked the Court to determine the sufficiency of the FCS Parties' responses to post-judgment discovery and then to award Plaintiff attorney's fees and costs incurred attempting to get the FCS Parties to comply with post-judgment discovery. *Id.* Exhibit 1 at Dkt. No. 79.

On September 22, 2020, the Court set September 25, 2020 as a new deadline for post-

judgment discovery. *Id.* Exhibit 1 at Dkt. No. 85.

On September 25, 2020, Plaintiff Shelton filed an additional Motion for Contempt. *Id.* Exhibit 1 at Dkt. No. 89.

On October 2, 2020, Judge Wolson granted Plaintiff Shelton's Motion for Sanctions filed September 4, 2020 ordering that the FCS Parties be required to pay Plaintiff's attorney's fees for the cost of their Motion for Sanctions filed September 4, 2020. *Id.* Exhibit 1 at Dkt. No. 93.

On October 5, 2020, Mr. Thomas submitted a brief in support of his appeal to the United States Court of Appeals for the Third Circuit. ECF No. 35 Exhibit B. The appeal did not address the underlying grant of summary judgment to Plaintiff or the entry of judgment against the FCS Parties (nor could it as the 30-day deadline for appeal of that judgment had long passed), and instead, addressed the following three questions: (1) whether the initial Motion for Reconsideration should have been granted pursuant to Rule 60(b) of the Federal Rules of Civil Procedure; (2) whether the second Motion for Reconsideration should have been granted pursuant to Rule 60(b) of the Federal Rules of Civil Procedure; and (3) whether Mr. Shelton's Motion for Contempt and Motion for Sanctions filed June 29, 2020 should have been denied for lack of jurisdiction. Fed. R. Civ. P. 60(b); ECF No. 35 Exhibit B.

On or around October 15, 2020, the FCS Parties requested that Mr. Thomas withdraw the pending appeal.[7] ECF No. 30 at ¶ 39.

---

[7] There is some dispute as to the circumstances surrounding this request. The FCS Parties maintain that their request was based on alternative legal advice from their current counsel, Lionel Artom-Ginzburg, who they contend advised the FCS Parties that the appeal was potentially frivolous and could lead to further sanctions against them. ECF No. 30 at ¶ 39. The FCS Parties also allege that in asking Mr. Thomas to withdraw the appeal, they intended to fire him and then hired Mr. Artom-Ginzburg in his place. *Id.* at ¶ 39; ECF No. 30 Exhibit 8 at pp. 147:23-25, 147:1-14. Mr. Thomas, on the other hand, alleges that Mr. Artom-Ginzburg advised the FCS Parties to withdraw the appeal solely because he, Mr. Artom-Ginzburg, was not the attorney being paid to handle it, and that when the FCS Parties requested

On November 4, 2020, an Evidentiary Hearing was held before Judge Wolson to "resolve all questions of attorney Joshua Thomas' compliance with the Court's orders" in the Shelton Matter. ECF No. 30 Exhibit 1 at Dkt. Nos. 105, 106, 112.

At the November 4, 2020 Evidentiary Hearing, Judge Wolson heard sworn testimony from Mr. Shargel, Mr. Yashayev, Mr. Jacovetti, and Mr. Thomas, and made several credibility and factual findings. Specifically, Judge Wolson found, *inter alia*, that:

(1) "Mr. Thomas is not credible on much of his testimony. In particular, I find that he lied to me under oath with respect to the issue of why he sought the extension for the summary judgment motion." ECF No. 34 at Tr. 257:8-11.

(2) "I find that Mr. Thomas did not communicate the summary judgment award to his clients [the FCS Parties]…in a timely way." ECF No. 34 Tr. at 258:22-25, 259:1-3.

(3) "I find that Mr. Thomas delayed telling Mr. Shargel and Mr. Yashayev about the discovery that had been served on him in aid of execution…that discovery was served in, I believe early April of 2020…but it does not look to me like he told the clients about the discovery obligations until July…that is all consistent…with the fact that he had not told them in the first instance about the summary judgment award."

ECF No. 34 Tr. at 263:21-25, 264:1-11.

Additionally, at the November 4, 2020 Evidentiary Hearing, Judge Wolson ordered that prior to filing any new matters in the United States District Court for the Eastern District of Pennsylvania, including the United States Bankruptcy Court for the Eastern District of

---

the appeal be withdrawn they did not communicate to Mr. Thomas their intent to fire him, and that thus, he did not know they understood his representation of the FCS Parties to have ceased at that point. ECF No. 30 Exhibit 8 at pp. 147:8-14.

Pennsylvania, Mr. Thomas was required to first obtain approval from Judge Wolson, which would be dependent on a showing of good cause and appropriate client authorization. ECF No. 30 Exhibit 9 at ¶ 4. Judge Wolson also stated that the Court would send a copy of the hearing transcript to the "governing disciplinary committee of each and every state bar and federal court in which Mr. Thomas is licensed or admitted to practice law" in order for those committees to "investigate what ha[d] transpired" in the Shelton Matter. *Id.* at ¶4.

On November 24, 2020, in connection with Judge Wolson's October 2, 2020 order granting Plaintiff Shelton's Motion for Sanctions, Judge Wolson ordered the FCS Parties responsible for an additional sum of $554.00. ECF No. 30 Exhibit 1 at Dkt. No. 121.

On December 3, 2020, the FCS Parties filed an Affidavit conveying their compliance with Judge Wolson's November 24, 2020 Order and containing a copy of a check in the amount of $554.00 that was provided in satisfaction of that Order. *Id.* Exhibit 1 at Dkt. No. 122.

On January 8, 2021, Plaintiffs herein fully satisfied the $54,000 judgment entered against them by Judge Wolson, as well as the remaining $7,029.08 sanctions. *Id.* Exhibit 1 at Dkt. Nos. 127, 128.

### III.   PROCEDURAL HISTORY OF THIS CASE AND DISCIPLINARY BOARD ACTION

While the matter in front of Judge Wolson was winding down in November of 2020, the Plaintiffs commenced the present litigation against Mr. Thomas for malpractice in the handling of the Shelton Matter, and in particular, Mr. Shelton's Amended Summary Judgment Motion. ECF No. 1.

On August 11, 2021, the Office of Disciplinary Counsel of the Pennsylvania Supreme Court Board of Discipline and Mr. Thomas together submitted a Joint Petition in Support of Discipline on Consent (the "Joint Petition"), in which Mr. Thomas admitted to violations of his

professional duties largely related to his representation of the FCS Parties in the Shelton Matter and consented to the imposition of a two-year suspension from the practice of law in Pennsylvania. *Office of Disciplinary Counsel v. Joshua L. Thomas,* No. 2822 Disciplinary Docket No. 3, No. 115 DB 2021; ECF No. 35 Exhibit 1. The Joint Petition states, *inter alia*, that Mr. Thomas "had no legitimate explanation for missing any deadline in connection with the Shelton Matter." *Id.* In connection with the Joint Petition, Mr. Thomas also submitted a sworn affidavit (the "Thomas Affidavit"), notarized on August 9, 2021, consenting to the imposition of a two-year suspension from the practice of law in Pennsylvania and explicitly acknowledging the truth of the material facts set forth in the Joint Petition. *Id.* ("I, Joshua Louis Thomas…hereby consent to the imposition of a Suspension of two years, as jointly recommended by the Petitioner, Office of Disciplinary Counsel, and myself…and I acknowledge that the material facts set forth in the Joint Petition are true…").

On September 7, 2021, the FCS Parties filed the instant Motion for Summary Judgment. ECF No. 30.

Pursuant to the applicable Scheduling Order in this case, Mr. Thomas, who is self-represented, had 21 days to respond—until on or before September 28, 2021. ECF No. 26.

On September 28, 2021 (the day his response to Plaintiffs' Motion for Summary Judgment was due), Mr. Thomas filed a Motion for an Extension of Time asking for an additional 21 days to respond to the FCS Parties' Motion for Summary Judgment. ECF No. 32.

The timing of this request is significant because, when the request for more time to respond to the Motion for Summary Judgment was made, this Court did not know that Mr. Thomas was waiting for the final penalty to be handed down on his Joint Petition, or even the foundation of the Joint Petition, that being Mr. Thomas's sworn admission of responsibility for

12

his failures in the Shelton Matter that form the basis for the Plaintiffs' legal malpractice claims in this case. *Office of Disciplinary Counsel v. Joshua L. Thomas,* No. 2822 Disciplinary Docket No. 3, No. 115 DB 2021.

On September 29, 2021, this Court granted Mr. Thomas' request for an extension, giving him until October 13, 2021 to respond to the FCS Parties' Motion for Summary Judgment. ECF No. 33.

On October 1, 2021, in large part due to the facts forming the basis of Plaintiffs' present claims against Mr. Thomas, the Disciplinary Board of Pennsylvania suspended Mr. Thomas from the practice of law for two years.  ECF No. 35 Exhibit A, *Office of Disciplinary Counsel v. Joshua L. Thomas*, Case 115 DB 2021. In connection with these disciplinary proceedings, Mr. Thomas submitted a notarized affidavit in which he admitted that he was guilty of all conduct alleged in the Joint Petition filed against him in the disciplinary proceeding, which included an explicit acknowledgement that he had "no legitimate explanation for missing any deadline in connection with the Shelton Matter." ECF No. 35 Exhibit A, *Office of Disciplinary Counsel v. Joshua L. Thomas*, No. 2822 Disciplinary Docket No. 3, No. 115 DB 2021 Joint Petition at ¶ 22.

Then, on October 13, 2021, within two-weeks of the Supreme Court of Pennsylvania Disciplinary Board's decision suspending him from the practice of law, Mr. Thomas filed his Response to the FCS Parties' Motion for Summary Judgment, in which he directly contradicted his admissions made to the Pennsylvania Supreme Court Board of Discipline by submitting a series of unsupported excuses for missing various deadlines in connection with the Shelton Matter. *See generally* ECF No. 34.

IV.    <u>**STANDARD OF REVIEW**</u>

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Accordingly, "[s]ummary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact...'" *Wright v. Corning*, 679 F.3d 101, 103 (3d Cir. 2012) (quoting *Orsatti v. New Jersey State Police*, 71 F.3d 480, 482 (3d Cir. 1995)). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 248 (1986). There is a genuine issue of material fact if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party moving for summary judgment carries the initial burden "of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). Once the moving party has met this burden, the non-moving party must counter with "'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted); *see also* Fed. R. Civ. P. 56(c).

The non-moving party must show more than the "mere existence of a scintilla of evidence" for elements on which the non-movant bears the burden of production. *Anderson*, 477 U.S. at 252 (1986). The party opposing a motion for summary judgment may not "rely merely upon bare assertions, conclusory allegations or suspicions." *See Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982).  Nor can the non-moving party "rely on

unsupported allegations but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial." *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000). Moreover, arguments made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion." *Jersey Cent. Power & Light Co. v. Township of Lacey*, 772 F.2d 1103, 1109–10 (3d Cir. 1985).

"At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007); Fed. R. Civ. P. 56(c). The court need only decide whether "a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson*, 477 U.S. at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial'" and the court should grant summary judgment in favor of the moving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (citation omitted).

## V. <u>JUDICIAL NOTICE</u>

As a threshold matter, this Court finds it appropriate to use its discretionary power to take judicial notice of several pertinent facts. Fed. R. Evid. 201(b)(2); *In re NAHC, Inc.*, 306 F.3d 1314, 1323 (3d Cir. 2002) (judicial notice is discretionary when not requested by either party). In general, "[a] court may take judicial notice of facts that are not subject to reasonable dispute because they are either 'generally known within the trial court's territorial jurisdiction' or '[are] capable of accurate ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" *Werner v. Werner*, 267 F.3d 288, 295 (3d Cir. 2001). Relevant to the proceedings currently before this Court, "[j]udicial notice may be used in resolving a motion for summary judgment." *Mid–South Grizzlies v. Nat'l Football League*, 550 F. Supp. 558, 570

n. 31 (E.D. Pa. 1982), *aff'd,* 720 F.2d 772 (3d Cir. 1983); *see also In re Brooklyn Navy Yard Asbestos Litig.,* 971 F.2d 831, 839 (2d Cir. 1992) ("any facts subject to judicial notice may be properly considered in a motion for summary judgment"); *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1171–72 (10th Cir. 1979) ("a district court may utilize the doctrines underlying judicial notice in hearing a motion for summary judgment substantially as they would be utilized at trial. Thus, a court may ... take judicial notice, whether requested or not…") (citations omitted).

 In the Third Circuit, courts are permitted to take judicial notice of prior judicial opinions as "matters of public record."  *S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd*., 181 F.3d 410, 413 (3d Cir. 1999). More specifically, a court "may take judicial notice of [another court's] opinion—not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity." *Id.* at 413, 426; *see also Selkridge v. United of Omaha Life Ins. Co.*, 360 F.3d 155, 164 (3d Cir. 2004). Similarly, courts are also permitted to take judicial notice of docket entries filed in separate litigation proceedings. *See, e.g.*, *Mar. Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1200 (3d Cir. 1991), *reh'g granted and opinion vacated* (Jan. 10, 1992), *opinion reinstated on reh'g* (Mar. 24, 1992) (taking judicial notice of docket entries in a related bankruptcy case).

 Accordingly, this Court takes judicial notice of the authenticity and existence of the docket entries, orders, and opinions publicly available in the case *Shelton v. FCS Cap. LLC,* including, most importantly, the dates on which documents were filed and the relevant filing deadlines pursuant to the Federal Rules of Civil Procedure and the EDPA Local Rules. 2019 WL 6726404. The Court will also take judicial notice of the publicly available filings and opinions related to the Pennsylvania Disciplinary Board proceedings against Mr. Thomas.

*Office of Disciplinary Counsel v. Joshua L. Thomas*, No. 2822 Disciplinary Docket No. 3, No. 115 DB 2021.

## VI.   <u>DISCUSSION</u>

In support of their Motion for Summary Judgment, Plaintiffs have identified a number of Mr. Thomas' actions and inactions related to the Shelton Matter that they argue, as a matter of law, violated his professional duties and amount to legal malpractice arising out of both professional negligence and breach of contract. ECF No. 30 at ¶ 63.

In opposition to Plaintiffs' Motion for Summary Judgment, Mr. Thomas provides factual assertions seeking to justify his actions and inactions identified by the FCS Parties as violations of his professional duties, yet, as outlined in more detail below, Mr. Thomas fails to establish any genuine issue of material fact that would enable him to survive summary judgment as to either of Plaintiffs' legal malpractice claims. *See generally* ECF No. 34.

### A.   <u>Professional Negligence</u>

In Pennsylvania, to succeed on a legal malpractice claim arising from professional negligence, an aggrieved client must prove the following elements: "(1) employment of the attorney or other basis for a duty;[8] (2) failure of the attorney to exercise ordinary skill and knowledge; and (3) that such negligence was the proximate cause of the harm to the plaintiff." *Kituskie v. Corbman*, 552 Pa. 275, 281, 714 A.2d 1027, 1029 (1998) (citing *Rizzo v. Haines*, 520 Pa. 484, 499, 555 A.2d 58, 65 (1989)).

With respect to the second element, "the standard of care to which an attorney must adhere is measured by the skill generally possessed and employed by practitioners of the

---

[8] With respect to the first element, it is undisputed that Mr. Thomas was employed by the Plaintiffs in this case and that he was retained to represent them in the Shelton Matter. ECF No. 1 ¶¶ 8, 10; ECF No. 13 ¶¶ 11, 13; ECF No. 30 Exhibit 10.

profession." *Gans v. Mundy*, 762 F.2d 338, 341 (3d Cir. 1985); *see also McPeake v. William T. Cannon, Esquire*, P.C., 381 Pa. Super. 227, 232 (1989) ("An attorney will be found to have been negligent if he or she has failed to use that ordinary skill, knowledge, and care which would normally be possessed and exercised under the circumstances by members of the legal profession."). "A client who retains an attorney to perform legal services has a justifiable expectation that the attorney will exhibit reasonable care in the performance of those services, since that is the attorney's sacred obligation to the client." *Gorski v. Smith*, 2002 Pa. Super. 334, ¶ 47 (2002). Therefore, "[t]he client is…under no duty to guard against the failure of the attorney to exercise the required standard of professional care in the performance of the legal services for which the attorney was retained… [and] [i]mposing such a duty on the client would clearly defeat the client's purpose for having retained the attorney in the first place." *Id.*

Generally, in legal malpractice cases arising out of negligence, the plaintiff bears the burden of providing "[e]xpert testimony…to establish the relevant standard and whether the defendant complied with that standard…" *Lentino v. Fringe Emp. Plans, Inc.*, 611 F.2d 474, 480 (3d Cir. 1979) (affirming District Court's involuntary dismissal of a legal malpractice action where the plaintiff did not present expert testimony to establish the relevant standard of care) (internal citations omitted); *see also Gans,* 762 F.2d at 343 (finding that at the summary judgment stage, the plaintiff bears the burden of establishing the relevant standard of care in a legal malpractice action through expert testimony). The general rule requiring expert testimony to establish the relevant standard of care in legal malpractice cases is not absolute, however, and "where the matter under investigation is so simple, and the lack of skill so obvious, as to be within the range of the ordinary experience and comprehension of non-professional persons" expert testimony is not required because the issues are not "beyond the scope of the normal

experience of laymen." *Lentino*, 611 F.2d at 480. For example, when an "attorney misses a filing deadline…allows a statute of limitations to expire…[or fails to] investigate and inform one's client of settlement offers," professional negligence can be found as a matter of law. *See Vadovsky v. Treat*, No. 08–1415, 2010 WL 2640156, at *5 (M.D. Pa. June 11, 2010) (indicating an attorney is negligent as a matter of law without expert testimony where he misses a filing deadline or fails to file suit before expiration of statute of limitations); *see also Rizzo*, 520 Pa. at 502, 555 A.2d 58 at 66 (finding attorney negligent as matter of law without expert testimony for failing to investigate and communicate settlement offers or engaging in financial transactions with attorney's own client); *see also Redding v. Est. of Sugarman*, No. CIV.A. 07-4591, 2012 WL 1555454, at *5 (E.D. Pa. May 3, 2012), *aff'd*, 535 F. App'x 99 (3d Cir. 2013).

Finally, in connection with the third element, a plaintiff must prove "actual loss rather than a breach of a professional duty causing only nominal damages, speculative harm or the threat of future harm." *Kituskie*, 552 Pa. at 281, 714 A.2d at 1030; *ASTech Int'l, LLC v. Husick*, 676 F. Supp. 2d 389, 401–02 (E.D. Pa. 2009) ("Pennsylvania courts have been very clear that plaintiffs in all malpractice actions must prove actual loss."). To prove actual injury, plaintiffs "must prove that the underlying legal representation would have achieved whatever the plaintiffs hoped to achieve." *ASTech Int'l, LLC,* 676 F. Supp. 2d 389, 401–02. While this analysis is tailored to the particular context of the facts underlying the basis for the legal malpractice claim, in all cases a plaintiff must prove "actual loss," meaning that if the underlying action, be it "[a] case, transaction or patent prosecution[,] would have failed regardless of the defendant's professional negligence, then the plaintiffs have not suffered actual loss." *Id.*  In the litigation context, "a plaintiff must prove that, but for his attorney's negligence, a different result would have occurred in the litigation." *ASTech Int'l, LLC*, 676 F. Supp. 2d

389, 402 (E.D. Pa. 2009) (citing *Hackers Inc. v. Palmer*, 79 Pa. D. & C. 4th 485, 490 (Pa.Com.Pl.2006)).

A review of the case law displays that the vast majority of legal malpractice cases in Pennsylvania are brought by former plaintiffs who allege that in prior litigation, absent negligence by their former counsel, they would have obtained judgment,[9] and thus, generally, "a legal malpractice action in Pennsylvania requires the plaintiff to prove that he had a viable cause of action against the party he wished to sue in the underlying case and that the attorney he hired was negligent in prosecuting or defending that underlying case (often referred to as proving a 'case within a case')." *Kituskie*, 552 Pa. at 281, 714 A.2d at 1030. "[O]ne of the important policies underlying the requirement of proving actual loss-and, in turn, the case-within-a-case methodology-is to prevent the plaintiff from obtaining a windfall judgment." *ASTech Int'l, LLC*, 676 F. Supp. 2d 389, 403 (E.D. Pa. 2009); *see also Kituskie*, 552 Pa. at 282, 715 A.2d at 1030. For the same purpose of avoiding purely speculative damages, in addition to considering whether the plaintiff alleging legal malpractice would have been meritorious in the underlying action, courts in Pennsylvania also consider the collectability of damages in the underlying case, however the burden to prove damages would have been uncollectible falls on the defendant. *Kituskie*, 552 Pa. at 283, 715 A.2d at 1030 ("[I]t would be inequitable for the plaintiff to be able to obtain a judgment against the attorney which is greater than the judgment that the plaintiff

---

[9] *See e.g. Kituskie v. Corbman*, 552 Pa. 275, 279–280, 714 A.2d 1027, 1029 (1998) (legal malpractice claim brought by former plaintiff alleging an attorney's failure to bring a personal injury suit within the applicable statute of limitation); *Knopick v. Connelly*, 639 F.3d 600, 602 (3d Cir. 2011) (legal malpractice action brought by a former plaintiff alleging an attorney's failure to prosecute a prior legal malpractice action); *Nelson v. Heslin*, 2002 PA Super 244, 806 A.2d 873 (2002) (legal malpractice action brought by former plaintiff against attorney and law firm that failed to file action against third-party tortfeasor); *Gans v. Mundy*, 762 F.2d 338 (3d Cir. 1985) (legal malpractice action brought by a former plaintiff based, in relevant part, on a law firm and firm partner's decision not to sue employer a second time subsequent to alleged second injury).

could have collected from the third party; the plaintiff would be receiving a windfall at the attorney's expense.").

Despite these hefty burdens of proof that safeguard against speculative damages, Pennsylvania courts have also made clear that "[d]amages are considered remote or speculative only if there is uncertainty concerning the identification of the existence of damages rather than the ability to precisely calculate the amount or value of damages…" *Kituskie* 552 Pa. at 281, 714 A.2d at 1030; *see also Rizzo,* 520 Pa. at 505, 555 A.2d at 68 ("[t]he test of whether damages are remote or speculative has nothing to do with the difficulty in calculating the amount, but deals with the more basic question of whether there are identifiable damages. Thus, damages are speculative only if the uncertainty concerns the *fact* of damages rather than the amount.").

Here, as outlined below, the Plaintiffs have met their burden and have adequately established the necessary elements for a legal malpractice claim arising out of professional negligence. The burden is thus on Mr. Thomas to show there is a genuine dispute of material fact for trial. After careful consideration of the facts in the light most favorable to Mr. Thomas, this Court finds he has failed to meet this burden.

As noted above, with respect to the first element, it is undisputed that Mr. Thomas was employed by the Plaintiffs in this case and that he was retained to represent them in the Shelton Matter. ECF No. 1 ¶¶ 8, 10; ECF No. 13 ¶¶ 11, 13; ECF No. 30 Exhibit 10.

    **1.**   **Plaintiffs Have Shown that Mr. Thomas' Conduct Breached his Duty of Care as a Matter of Law.**

In connection with the second element, whether Mr. Thomas' behavior comported with the ordinary skill and knowledge of a legal professional,[10] this Court finds for the reasons set

---

[10] Plaintiffs have identified the relevant standard of care by providing an unsworn expert report opining on the matter and have identified specific actions and inactions taken (or not taken) by Mr. Thomas that fail to meet that standard. ECF No. 30 Exhibit 11. This Court's consideration of the proffered expert

forth below that the question of Defendant Thomas' negligence is "so simple" and the alleged

"lack of skill so obvious" the need for an expert opining on the matter is alleviated. *See Lentino*,

611 F.2d at 480 ("[e]xpert testimony is required to establish the relevant standard and whether

the defendant complied with that standard…except where the matter under investigation is so

simple, and the lack of skill so obvious, as to be within the range of the ordinary experience and

comprehension of non-professional persons."). Specifically, Mr. Thomas' failure to respond to

discovery on behalf of the FCS Parties, resulting in the facts outlined in Plaintiff Shelton's

Requests for Admissions being deemed admitted by the FCS Parties and becoming the basis for

Plaintiff Shelton's Amended Motion for Summary Judgment, is so obviously incompetent that

even a non-lawyer could conclude that it did not meet the professional standards. Likewise, Mr.

Thomas' failure to respond, at all, to the Amended Summary Judgment Motion, as well as his

failure to communicate to the FCS Parties that a judgment had been issued against them both

undeniably fall below the relevant standard of care. Additionally, Mr. Thomas' subsequent

failures to timely file a motion for reconsideration or appeal of the judgment against the FCS

Parties, are also sufficient foundations upon which to establish as a matter of law that Mr.

Thomas failed to comport with the ordinary skill and knowledge of a reasonable attorney.

     In opposition to Plaintiffs' Motion for Summary Judgment, Mr. Thomas does not

---

report at this point in the litigation, however, would be improper as the Third Circuit has found that at
the summary judgment stage, courts may not consider an unsworn expert report as evidence. *See Fowle
v. C & C Cola,* 868 F.2d 59, 67 (1989) (finding an unsworn expert report was "not competent to be
considered on a motion for summary judgment"); *see also Knopick v. Downey*, No. 1:09-CV-1287, 2013
WL 1882983, at *5 (M.D. Pa. May 6, 2013) ("The Third Circuit has held that [Fed. R. Civ. P. 56(c)(1)
(A)] requires expert reports to be sworn to by the expert witness" to be considered evidence at the
summary judgment stage."); *Jackson v. Egyptian Navigation Co.,* 222 F. Supp. 2d 700, 709 (E.D. Pa.
2002) (excluding an unsworn expert report as incompetent evidence to be considered at
the summary judgment stage); *Leo v. State Farm Mut. Ins. Co.,* 939 F. Supp. 1186, 1192 (E.D. Pa. 1996)
(stating that an unsworn expert's letter is "not competent to be considered on a motion for summary
judgment").

affirmatively argue that his actions comported with the ordinary skill and knowledge of a legal professional, nor has he provided any sworn expert report that speaks to the matter.[11] *See generally* ECF No. 34. Thus, Mr. Thomas has failed to identify a genuine dispute of fact as required by F.R.C.P. 56 to avoid judgment being entered against him. *See Bannar v. Miller*, 701 A.2d 242, 249 (Pa. Super. Ct. 1997) (finding that when a defendant "made no contention the issues were complex or beyond the knowledge of the average person…there was no need for expert testimony on the issue of professional negligence"). Instead, only 12 days after falling on his sword in front of the Disciplinary Board and taking full responsibility, Mr. Thomas, with the unbounded hubris that seems to form the foundation of his professional character, proffers a series of unsupported factual assertions that largely blame his former clients for his own actions and inactions and fall short of creating any genuine issue of material fact for trial. ECF No. 34 at p. 5–6; *see also Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982) (The party opposing a motion for summary judgment may not "rely merely upon bare assertions, conclusory allegations or suspicions"). Notably, in the present case, Mr. Thomas' bare factual assertions are not only unsupported by the record but are also directly contradicted by Mr. Thomas' prior testimony given at the November 4, 2020 Evidentiary Hearing before Judge Wolson, as well as by the sworn affidavit Mr. Thomas submitted to the Pennsylvania Supreme Court Board of Discipline in which he admitted, *inter alia*, not having an excuse for missing any deadline in the Shelton Matter. ECF No. 30 Exhibit 8 at 238:22–25, 239:1–4; *Office of Disciplinary Counsel v. Joshua L. Thomas,* Case 115 DB 2021 Thomas Affidavit; *Id.* Joint Petition at ¶ 22. Mr. Thomas' arguments and factual assertions with respect to the distinct

---

[11] Mr. Thomas himself submitted a sworn affidavit in connection with the aforementioned Pennsylvania Disciplinary Board proceedings admitting that he had "no legitimate explanation for missing any deadline in connection with the Shelton Matter." *Office of Disciplinary Counsel v. Joshua L. Thomas*, Case 115 DB 2021 Joint Petition at ¶ 22.

allegations of legal malpractice are discussed in more detail below.

First, Mr. Thomas does not contest that he failed to respond to Plaintiff Shelton's discovery requests on behalf of the FCS Parties, including the initial Requests for Admissions. In fact, Mr. Thomas admits that "there were numerous times we [the FCS Parties and Mr. Thomas] discussed discovery, and they [the FCS Parties] even sent me [Mr. Thomas] responses to the discovery." ECF No. 34 at p. 5; ECF No. 13 at ¶ 15. It is also undisputed that Mr. Thomas' failure to respond to Plaintiff Shelton's Requests for Admissions resulted in the factual assertions stated therein being deemed admitted pursuant to Rule 36 of the Federal Rules of Civil Procedure and becoming the basis for Judge Wolson's grant of summary judgment against the FCS Parties. ECF No. 13 ¶¶ 13–14; ECF No. 30 Exhibit 1; *Id.* at Exhibit 3.  Even this failure to respond to the Requests for Admissions was possibly salvageable if, for example, Mr. Thomas filed a motion to extend the time to answer them and attached the answers as an Exhibit to the Motion. In this way, Judge Wolson could have granted the Motion and sanctioned Mr. Thomas directly by ordering him to pay attorney's fees. This would have opened the door for Mr. Thomas to present his meritorious defenses in response to the Amended Motion for Summary Judgment. Mr. Thomas did none of that. Instead, other than demonstrate his expertise in filing motions for extensions, Mr. Thomas did not actively engage in defending the case until he needed to cover up his inactions leading up to the judgment.

Responding to Requests for Admissions is one of the most basic, yet essential, duties an attorney is obligated to complete when representing a client in civil litigation, and an unjustified failure to do so is comparable to other failures that have been found to constitute professional negligence as a matter of law in Pennsylvania. *See, e.g.*, *Vadovsky*, 2010 WL 2640156, at *5 (indicating an attorney is negligent as a matter of law where he misses a filing deadline or fails

to file suit before expiration of statute of limitations); *Rizzo*, 520 Pa. at 502, 555 A.2d at 66 (finding attorney negligent as matter of law for failing to investigate and communicate settlement offers or engaging in financial transactions with attorney's own client). In the present case, by Mr. Thomas' own admission, he received the necessary information from the FCS Parties, yet still failed to respond to Plaintiff Shelton's discovery requests and, most significantly, Requests for Admission, on their behalf. ECF No. 34 at p. 5; ECF No. 13 at ¶ 15. Accordingly, this Court finds as a matter of law that Mr. Thomas' failure to respond to the Requests for Admissions—leading to their being deemed admitted—failed to comport with the ordinary skill and knowledge of the legal profession at large.

Second, in defense of his failure to file a response to Plaintiff Shelton's Amended Motion for Summary Judgment, Mr. Thomas makes factual allegations effectively blaming the FCS Parties for his failure to respond. Specifically, Mr. Thomas avers that "the entire reason" he requested more time to respond to Plaintiff Shelton's Motion for Summary Judgment "was so … [the FCS Parties] could send … [him] more information for the motion," but that "[the FCS Parties] … failed to send … [him the] information needed, and as such, … [he] could not submit [a] responses [sic]."[12] ECF No. 34 at p. 5. Here, again, Mr. Thomas reaches deep within his bag full of incredulities, with claims that do not line-up with the actual reality of the

---

[12] At the November 4, 2020 Evidentiary Hearing before Judge Wolson, Mr. Thomas initially made this same argument under oath, but also acknowledged that the FCS Parties had provided him "substantial documentation" in support of their case, and ultimately admitted that the strategic preference to "include additional items" did not inhibit him from filing a response to Plaintiff Shelton's Amended Motion for Summary Judgment. ECF No. 30 Exhibit 8 at p. 207:2–6; *Id.* at 238:22–25; 239:1–4. Specifically, at the Evidentiary Hearing, Mr. Thomas explained that, after he was retained by the FCS Parties, "[the FCS Parties] submitted to me [Mr. Thomas] substantial documents that they had a positive case and to defend against [sic] Mr. Shelton's claims." ECF No. 30 Exhibit 8 at p. 207:2–6. Then, when asked directly during the Evidentiary Hearing why he failed to file a response to Mr. Shelton's Amended Motion for Summary Judgment, Mr. Thomas stated, "Because we were trying to include additional items…that would also be relevant." And, when asked, "**How does that stop you from filing a timely summary judgment response**?" Mr. Thomas stated, "**It does not**." *Id.* at 238:22–25, 239:1–4 (emphasis added).

circumstances in this case that he single-handedly created. He needed no more information than what he already had to respond to the Requests for Admissions, and yet he did not respond. All the actions he needed to take were within his grasp; he essentially only needed to be candid with the Court, ask for leave to supplement the record by answering the Requests for Admissions, and then ask the Court to sanction him rather than punish his clients by entering judgment against them. Maybe Mr. Thomas was operating under the notion that his malfeasance and the resulting harm to his clients would miraculously disappear, but that fantasy was dispelled by the persistent Shelton attorney and a judge insistent on getting to the bottom of what was going on and seeing the case through with a complete and understandable record, despite Mr. Thomas' best efforts to obfuscate it (as he does here as well).

The only piece of evidence Mr. Thomas cites in support of his contention that he needed more information from the FCS Parties in order to file a response to Plaintiff Shelton's Amended Motion for Summary Judgment is an email chain involving Mr. Thomas and Mr. Jacovetti dated October 14, 2019. ECF No. 34 Exhibit A. This, of course, is nothing more than diversion and further obfuscation. In the email chain, Mr. Thomas states that, "[Mr. Shelton] refiled the MSJ [Motion for Summary Judgment], **so I'll oppose that** then update the complaint by Wednesday, thanks." ECF No. 34 Exhibit A (emphasis added). Mr. Jacovetti replies to Mr. Thomas stating, "OK and thanks." *Id.* None of the FCS Parties are copied on this email chain. *Id.* Crediting Mr. Thomas' factual assertion that he often communicated with the FCS Parties through Mr. Jacovetti,[13] the email does not help Mr. Thomas' case, as facially the substance of

---

[13] Mr. Thomas generally explains the lack of direct communication between him and his clients, the FCS Parties, by asserting that he often spoke to Mr. Jacovetti rather than the FCS Parties about the Shelton Matter and that Mr. Jacovetti often "setup three way calls for all of us [Mr. Thomas, Mr. Jacovetti, and the FCS Parties] to discuss the case." ECF 34 at p. 5. In support of this assertion, Mr. Thomas cites to the transcript from the November 4, 2020 Evidentiary Hearing in front of Judge Wolson. ECF No. 34 Transcript. The section of the transcript cited by Mr. Thomas in support of these assertions, however,

the email contradicts the factual assertions it was proffered to support. *Id.* Specifically, in the email, Mr. Thomas states directly that he is going to oppose Mr. Shelton's Amended Motion for Summary Judgment and does not make any indication that he is waiting on more information from the FCS Parties in order to do so. *Id*; ECF No. 34 Exhibit A. Thus, as evidenced by the email cited by Mr. Thomas, as well as the fact that he filed a Motion for an Extension of Time on the day the response was due, it is undisputed that Mr. Thomas knew that a response to Plaintiff Shelton's Amended Motion for Summary Judgment was due but chose to disregard the deadline and not file a response, despite, as discussed below in more detail, having information in his possession that would have defeated it. *Id.*; *see also* ECF No. 30 Exhibit 1. What the email chain does not say, and does not report to the client is, "hey, I did not respond to Requests for Admissions, so I put us in a real jam, and I will try to get us out of it, and if not, I will report it to my malpractice insurance carrier." Of course, Mr. Thomas is self-represented. He did not have a carrier or coverage at the time and that became clear during the Rule 16 conference in this case when it was like pulling teeth to get him to reveal his coverage, which was eventually produced for periods of time that did not include the Shelton Matter.  ECF No. 27. A carrier would have cut its losses, paid this claim, and moved on without the façade of defenses as were presented here, which if presented by a carrier would subject it to a bad faith claim.

In Pennsylvania, missing a filing deadline has been found to be so outside the scope of

---

does not support his factual narrative. In the portion cited by Mr. Thomas, he asks Mr. Jacovetti, "In regard to [the Shelton] Matter, were there ever any phone calls where you actually…had a three-way call between myself and Barry [Mr. Shargel] and Mr. Yashayev as well?" ECF No. 34 Transcript at p. 177: 17-21. Mr. Jacovetti then answers, "I don't recall any specific conversations that I arranged three way. I know that there were numerous times where Barry [Mr. Shargel] contacted me and expressed frustration that he was trying to reach you, and then I would…reach out to you and say something to the effect that Barry [Mr. Shargel] is trying to reach you…I do not have a specific recollection of specifically arranging a three-way call…I'm not saying it did not happen…but the sequence of events that I recall is that there were many times, or numerous times, rather, where Barry [Mr. Shargel] was trying to reach you, he would be frustrated…and I would reach out to you." ECF No. 34 Transcript at pp. 177:17–25, 178:1–12.

the ordinary skill and knowledge of a legal professional that it constitutes professional negligence as a matter of law, even without an expert opinion establishing the relevant standard of care. *See, e.g.*, *Vadovsky*, 2010 WL 2640156, at *5 (indicating an attorney is negligent as a matter of law where he misses a filing deadline or fails to file suit before expiration of statute of limitations); *see also Rizzo*, 520 Pa. at 502, 555 A.2d at 66 (finding attorney negligent as matter of law for failing to investigate and communicate settlement offers or engaging in financial transactions with attorney's own client). Here, Mr. Thomas' attempt to justify his failure to respond to a dispositive motion by shifting the blame to his clients does not create a genuine dispute of any material fact that would enable him to survive summary judgment, as Mr. Thomas' bare factual assertions are wholly unsupported by the record and directly contradicted by his own prior testimony. *See supra* note 13; *Jones,* 214 F.3d at 407 (in opposition to summary judgment, the non-moving party may not "rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial"); *see also Gorski*, 2002 PA Super at ¶ 47 ("[t]he client is…under no duty to guard against the failure of the attorney to exercise the required standard of professional care in the performance of the legal services for which the attorney was retained").

Third, in responding to the FCS Parties' Motion for Summary Judgment, Mr. Thomas does not directly address the allegation that he failed to inform the FCS Parties about the judgment against them and Plaintiff Shelton's attempts to collect on this judgment. *See generally* ECF No. 34.  Failing to inform a client about a judgment against them does not require expert testimony to confirm it is far outside the scope of the ordinary skill and knowledge of a reasonable legal professional, as it is the type of failure that is facially so egregious it rises to the level of professional negligence as a matter of law. *Compare Rizzo*, 520

Pa. at 502, 555 A.2d at 66. (finding attorney negligent as matter of law for failing to investigate and communicate settlement offers or engaging in financial transactions with attorney's own client).  In his Answer to the Complaint, Mr. Thomas contends that the judgment "had been discussed with [the FCS Parties] on at least 2 occasions…," but provides no argument or evidence to support this assertion. ECF No. 13 ¶ 44. Additionally, record evidence—namely the undisputed procedural history of the Shelton Matter—establishes beyond question that the opposite is true, and that Mr. Thomas not only hid the judgment from his clients, but also engaged in a series of cover-up attempts once the post-judgment period commenced. Further, in not reporting the judgment in the first instance to his clients, Mr. Thomas also could not report the post-judgment motions or sanctions.[14] ECF No. 1 Exhibit 1. The absence of any email to the clients saying, "hey, I put us in a jam, now they are seeking discovery on the judgment that I told you about and we must respond because you are facing serious sanctions," is very telling. Thus, standing alone, without any corroborating evidence, Mr. Thomas' unspecific conclusory, self-serving statement, made in the context of his sworn statements in the Thomas Affidavit admitting just the opposite, does not create a genuine dispute of material fact related to his failure to communicate with his clients, the FCS Parties, regarding the $54,000.00 judgment against them, as well as Mr. Shelton's attempts to collect on that judgment. *Jones*, 214 F.3d at 407 (in opposition to summary judgment, the non-moving party may not "rely on unsupported allegations but must go beyond pleadings and provide some evidence that would show that there

---

[14] Although this Court does not adopt Judge Wolson's findings of fact from the November 4, 2020 Evidentiary Hearing, it notes that Judge Wolson explicitly made this same finding and no new evidence has been presented by Mr. Thomas that would enable a reasonable fact finder to find otherwise. *See* ECF No. 34 Transcript at 258:22-25, 259:1-3, 264:8-13 ("It does not look like [Mr. Thomas] told the [FCS Parties] about the [post-judgment] discovery obligations until July…and in the intervening time he spent some time resisting it…that is all consistent in my mind with the fact that he had not told the [FCS Parties] in the first instance about the summary judgment award…so therefore he had every incentive to avoid telling them that there were discovery obligations in furtherance of that award.")

exists a genuine issue for trial"). These self-serving statements demonstrate in the context of this record that Mr. Thomas tries to once again play the system into more delays and costs for the claimants herein and play this Court for a fool so that Defendant can take the next step and have the Court use invaluable resources and move this case forward, which if the Court were to do so, would validate a continued abuse of the system by an officer of the court and thereby undermine the credibility of the court system.   Due process takes time and deliberation, but Mr. Thomas seeks to turn due process into an interminable and intentional misuse of process.  If the Court were to continue to countenance Mr. Thomas' twisted machinations, it would signal that they may have some real legal and factual  import rather than an obvious sham that needs to be immediately flagged and condemned.  It would also send Mr. Thomas the wrong message at a time in which he needs a strong message to take responsibility, to wake up, and to start acting professionally in preparation for his return to practice, should that be permitted.

Fourth, in response to the contentions that he violated his professional duties by failing to timely file Motions for Reconsideration, Mr. Thomas asserts that his Motions for Reconsideration were not actually untimely. ECF No. 34 at p. 6. Specifically, Mr. Thomas argues that his Motions for Reconsideration were timely because they were filed pursuant to the Federal Rules of Civil Procedure Rule 60, which provides a year to respond to an order. *Id.* He proffers that in denying the Motion for Reconsideration, Judge Wolson "sua sponte, claimed it was filed under another rule…" ECF No. 34 at p. 6. This assertion, however, is also facially contradicted by the record in the Shelton Matter. As explained above, in Pennsylvania, missing a filing deadline has been found to be so outside the scope of the ordinary skill and knowledge of a legal professional that it constitutes professional negligence as a matter of law, even without an expert opinion establishing the relevant standard of care. *See, e.g.*, *Vadovsky*, 2010

WL 2640156, at *5 (indicating an attorney is negligent as a matter of law where he misses a filing deadline or fails to file suit before expiration of statute of limitations).

While the record supports Mr. Thomas' contention that Judge Wolson ultimately did rule Mr. Thomas' first Motion for Reconsideration untimely pursuant to the EDPA Local Rules, the rest of Mr. Thomas' factual assertions regarding the Motions for Reconsideration are wholly unsupported and directly contradicted by the record. Specifically, contrary to Mr. Thomas' assertions, Judge Wolson did directly address the Rule 60 standards[15] in his decision denying the first Motion for Reconsideration.[16] ECF No. 30 Exhibit 1 at Dkt. No. 51; *Id.* Exhibit 5. Likewise, in his memorandum accompanying the order denying the Renewed Motion for Reconsideration, Judge Wolson explicitly walks through the requirements of a Rule 60 motion for reconsideration and how Mr. Thomas' motion falls short.[17] ECF No. 30 Exhibit 1 at Dkt. Nos. 60, 61; *Id.* at Exhibit 6. Mr. Thomas cannot survive summary judgment by merely

---

[15] Pursuant to Rule 60, there are two pathways by which a party may seek reconsideration of a final judgment. Fed. R. Civ. P. 60. Specifically, Rule 60(b)(2) allows a court to relieve a party from final judgment due to "newly discovered evidence that, with reasonable diligence could not have been discovered in time to move for a new trial under Rule 59(b)," and Rule 60(b)(3) permits a court to reconsider a final judgment for "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b)(2).

[16] Specifically, Judge Wolson states, "[the FCS Parties] argue in their Motion that reconsideration is justified based on newly discovered evidence, but their motion rests entirely on evidence that was within their control when the summary judgment motion was being briefed…and [the FCS Parties] also contend that their Motion is based on 'fraud, misrepresentation, or misconduct by an opposing party," but they do not point to any fraud, only to their opposing party's attempt to marshal favorable evidence in support of his case." ECF No. 30 Exhibit 5.

[17] In his Renewed Motion for Reconsideration, Mr. Thomas included a transcript of purported audio recordings between Mr. Shelton and a third party that he argued were new evidence pursuant to Rule 60. Rule 60(b)(2). Specifically, Judge Wolson states that "[t]he transcript that FCS identifies does not satisfy the standard of new evidence under Rule 60(b)(2)…FCS has not shown that the transcribed conversations are admissible evidence…[and] the Court has no way of knowing from the record before it that the transcribed recordings are authentic…[additionally, the FCS Parties] have not shown that the recorded conversations are material or would have changed the outcome…taken in the light most favorable to FCS (which is not the applicable standard), the recordings demonstrate that Mr. Shelton sues only parties from whom he can collect a judgment and that he shares information about those parties...[n]either of those facts has any bearing on whether FCS violated the TCPA…" *Id.* at p. 4.

presenting a misrepresentation of Judge Wolson's order, as no reasonable trier of fact could credit Mr. Thomas' statement that his Motions for Reconsideration were actually timely when the facts Mr. Thomas asserts to support this contention are facially contradicted by the plain language of Judge Wolson's decisions denying both of Mr. Thomas' Motions for Reconsideration. ECF No. 30 Exhibit 5; *Id.* Exhibit 6; ECF No. 34 at p. 6.

Accordingly, the Plaintiffs have presented *at least four separate grounds* that establish Mr. Thomas' professional negligence by showing his flagrant failure to comport with the "ordinary skill, knowledge, and care which would normally be possessed and exercised under the circumstances by members of the legal profession." *See McPeake v. William T. Cannon, Esquire*, P.C., 381 Pa. Super. 227, 232 (1989). The additional two allegations of professional negligence (related to the filing of a request for a preliminary injunction and the appeal to the Third Circuit) do not even warrant discussion because to even the most novice attorney the absurdity and cynicism evidenced by these filings speaks for itself.  In short, both filings display a patent attempt by Mr. Thomas to put all the horses back in the barn, without any acknowledgement that it was he who negligently let them out in the first place. Namely, it was Mr. Thomas whose negligence not only led to judgment against the FCS Parties, but also fully precluded them from any meaningful reconsideration or appeal. Indeed, Mr. Thomas took up a lot of Judge Wolson's time fruitlessly trying to cover the tracks of his own failures. Instead of simply owning up to his mistakes and attempting to advocate to Judge Wolson on behalf of his clients, Mr. Thomas tried to retroactively correct his errors and avoid having to face them by improperly requesting a preliminary injunction requesting a stay of the post-judgment discovery and filing untimely motions for reconsideration. Such bald-faced attempts to hide from the repercussions of his own malfeasance at the expense of his clients cannot, as a matter of law, be found to be consistent with

the ordinary skill and knowledge of the legal profession at large.

**2. Plaintiffs Have Proved that They Suffered Actual Injury Proximately Caused by Mr. Thomas' Negligence.**

Finally, this Court addresses the third element of legal malpractice—actual injury proximately caused by the attorney's negligence. In this regard, the FCS Parties allege that as a result of Mr. Thomas' negligence, judgments were entered against the FCS Parties in the amounts of $54,000.00 (summary judgment), $7,029.08 (first sanctions order, September 1, 2020), and $554.00 (second sanctions order, November 24, 2020), totaling $61,583.08. Indeed, the Shelton Defendants satisfied the judgment against them on January 8, 2021 because Mr. Thomas' actions and inactions put them in a position in which they were left without options. ECF No. 30 Exhibit 1 at Dkt. Nos. 127, 128. In his response, Mr. Thomas does not assert that the FCS Parties would have been unsuccessful in combatting Mr. Shelton's Amended Motion for Summary Judgment nor that the FCS Parties would have been unsuccessful at trial, and frankly, there is no evidence on the record that would support that contention had he made either argument. To the contrary, in this case, the undisputed record evidence instead supports the conclusion that Mr. Thomas' legal *total-lack-of-practice* was the proximate cause of the Plaintiffs' injuries, and accordingly, this Court finds that taking the facts in the light most favorable to Mr. Thomas, no reasonable jury would be able to find that the FCS Parties would have been unsuccessful in defending themselves against the underlying summary judgment motion.[18]

---

[18] Although this Court focuses its analysis primarily on that motion and resulting judgment against the FCS Parties, this Court also finds in the alternative, given the record evidence outlining the FCS Parties' viable defenses to Mr. Shelton's claims and the fact that Mr. Thomas has not identified any evidence or even argued that the FCS Parties would not have been able to successfully defend themselves from Plaintiff Shelton's claims at trial should the case have proceeded on the merits, no reasonable trier of fact would be able to find that the FCS Parties would not have been successful on the merits.

Notably, because the FCS Parties were defendants in the underlying Shelton Matter and have already satisfied the judgments against them, this is not a case which requires the Court to speculate as to the very existence of damages in a hypothetical litigation and then further speculate as to whether those already incredibly speculative damages would have been collectible, as Courts must so often do in legal malpractice cases involving former plaintiffs. Because the FCS Parties have already suffered a clearly identifiable harm at the hands of Mr. Thomas, there is, therefore, not the same risk that the FCS Parties would obtain a "windfall judgment" against Mr. Thomas upon the entry of judgment. *ASTech Int'l, LLC*, 676 F. Supp. 2d 389, 403 (E.D. Pa. 2009) ("[O]ne of the important policies underlying the requirement of proving actual loss-and, in turn, the case-within-a-case methodology-is to prevent the plaintiff from obtaining a windfall judgment."). Judgment against the FCS Parties would not have occurred *but for* Mr. Thomas' negligence, which this Court finds for the reasons below, in this particular case, constitutes actual injury, and renders the need to reach the question of potential future damages unnecessary. *Compare Ashby & Geddes, P.A. v. Brandt*, 806 F. Supp. 2d 752, 757 (D. Del. 2011) (analyzing a similar legal malpractice standard under Delaware law and finding that "[i]t cannot be the law that a[n] attorney is insulated from a malpractice lawsuit when it takes on a client, fails to advise it of the viability of its claims, and then allows the client to spend large sums of money tilting at windmills…[.] Although the attorney's negligence does not change the outcome of the underlying case, it is the proximate cause of substantial pecuniary damages to the client, and forms a basis for a malpractice claim.").

Put simply, absent Mr. Thomas' negligence, judgment would not have been granted against the FCS Parties, and ultimately, the FCS Parties would have been able to proceed with their defense in response to Mr. Shelton's claims (a defense which all parties in the present

action have acknowledged would have been "meritorious"). ECF No. 1 ¶¶ 9–10; ECF No. 13 ¶¶ 12–13.[19]

More specifically, by Mr. Thomas' own admissions the FCS Parties provided him ample information with which to deny Mr. Shelton's Requests for Admissions and to defeat Plaintiff Shelton's Amended Motion for Summary Judgment. The relevant Requests for Admissions served upon the FCS Parties by Mr. Shelton requested the conclusive admission that the "18 calls Defendant [the FCS Parties] placed to Plaintiff [Shelton] all violated the TCPA… [and that] Defendants [the FCS Parties] made all of the calls knowingly [and]…willfully." *Shelton v. FCS Cap. LLC*, No. 2:18-CV-03723-JDW at Dkt. No. 41 p. 7-8. As Mr. Shelton explained in his uncontested Amended Motion for Summary Judgment, Mr. Thomas, acting on behalf of the FCS Parties, "elected not to respond to *any* of Plaintiff[] [Shelton's] discovery or to coordinate and cooperate with Plaintiff [Shelton] in any way. [The FCS Parties] also elected not to propound one single discovery request upon Plaintiff [Shelton]." *Shelton v. FCS Cap. LLC*, No. 2:18-CV-03723-JDW at Dkt. No. 41 p. 4. In light of there being no response from Mr. Thomas, Judge Wolson found that the FCS Parties' "failure to respond [to the Requests for Admissions] conclusively establishes its [liability…and] [i]n addition, FCS has admitted that it made all of the calls knowingly and willfully." *Shelton v. FCS Cap. LLC,* No. 2:18-CV-03723-JDW at Dkt. No. 47, pp. 4–5.

Further, Mr. Thomas, in his Answer, admits that the FCS Parties "instructed [him] that the calls alleged in the Complaint were (a) made to a number which is listed as a business number on Mr. Shelton's website, and thus the TCPA was not applicable to the call; (b) that they do not own or use an automatic dialer in their business, another requirement for the TCPA

---

[19] This Court notes again that the paragraphs in the Defendant's Answer (ECF No. 13) are inadvertently misnumbered. The paragraphs start with ¶ 4 rather than ¶ 1.

to attach; (c) that all but one of the calls alleged had been made by an individual who no longer worked for FCS Capital at the time of the calls, and that (d) the remaining call, allegedly made by Barry Shargel, one of the principals of FCS Capital, did not appear in any phone records for the date and time alleged by Mr. Shelton." ECF No. 1 ¶¶ 9–10; ECF No. 13 ¶¶ 12–13. To prove each of the TCPA claims brought against the FCS Parties, Mr. Shelton needed to establish, *inter alia*, that his cell phone number was included on the National Do Not Call Registry and that the FCS Parties initiated a call for telemarketing purposes to Mr. Shelton's cell phone number using an automatic telephone dialing system and made a telephone solicitation. 47 U.S.C. §§ 227(b)(1)(A), 227(c)(3)(F); 47 C.F.R. §64.1200(c)(2). Mr. Thomas, therefore had specific facts and information in his possession that would have provided a basis to deny Mr. Shelton's Requests for Admissions, but instead did nothing.

Additionally, Mr. Thomas admits that "the FCS Parties gave [him] enough information and evidence, from the time of his retention, for a complete and **meritorious defense from the lawsuit brought by Mr. Shelton**," and it is undisputed he *never* responded to Plaintiff Shelton's Amended Motion for Summary Judgment on their behalf.  No. 1 ¶¶ 9, 10; ECF No. 13 ¶¶ 12–13.[20] At the November 4, 2020 Evidentiary Hearing before Judge Wolson, Mr. Thomas explained that, after he was retained by the FCS Parties, "[the FCS Parties] submitted to me [Mr. Thomas] substantial documents that they had a positive case and to defend against [sic] Mr. Shelton's claims." ECF No. 30 Exhibit 8 at p. 207:2–6. Then, when asked directly why he failed to file a response to Mr. Shelton's Amended Motion for Summary Judgment, Mr. Thomas stated, "Because we were trying to include additional items…that would also be relevant." And, importantly, when asked, "**How does that stop you from filing a timely summary judgment**

---

[20] This Court notes again that the paragraphs in the Defendant's Answer (ECF No. 13) are inadvertently misnumbered. The paragraphs start with ¶ 4 rather than ¶ 1.

**response**," Mr. Thomas stated, "**It does not**." *Id.* at 238:22–25, 239:1–4 (emphasis added). Mr. Thomas by his own admission establishes that if he had simply responded to Plaintiff Shelton's discovery requests and Plaintiff Shelton's Amended Motion for Summary Judgement with the information he had in his possession at that time, judgment would not have been entered against the FCS Parties and the FCS Parties would have been able to effectively defend their case moving forward. Moreover, but for the judgment against the FCS Parties, and Mr. Thomas' failure to answer post-judgment discovery on their behalf, the FCS Parties would not have been liable for the subsequent sanctions. Finally, and perhaps most grievous of all, Mr. Thomas set his own negligence in stone by precluding the FCS Parties from any future opportunity to present their defenses to Mr. Shelton's claims, by failing to timely file a motion for reconsideration or an appeal of the judgment against the FCS Parties.

The Plaintiffs have therefore soundly met their burden of establishing actual injury proximately caused by Mr. Thomas' negligence and, considering Mr. Thomas' admissions and failure to produce *any* evidence or argument to the contrary, no reasonable trier of fact could find otherwise.

### B. <u>Breach of Contract</u>

Under Pennsylvania law, the necessary elements for a breach of contract claim are: (1) the existence of a contract, including its essential terms, (2) a breach of the contract; and (3) resultant damages." *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. L. Firm of Malone Middleman, P.C.*, 635 Pa. 427, 445, 137 A.3d 1247, 1258 (2016); *see also ASTech Int'l, LLC*, 676 F. Supp. 2d at 400. For a legal malpractice claim premised on breach of contract, "when an attorney enters into a contract to provide legal services, there automatically arises a contractual duty on the part of the attorney to render those legal services in a manner that comports with the

profession at large." *Wachovia Bank, N.A. v. Ferretti,* 2007 PA Super 320, ¶ 18 (2007). "Hence, a breach of contract claim may properly be premised on an attorney's failure to fulfill his or her contractual duty to provide the agreed upon legal services in a manner consistent with the profession at large." *Gorski*, 2002 PA Super at ¶ 24; *see also Bailey v. Tucker*, 533 Pa. 237, 251–52, 621 A.2d 108, 115 (1993) ("an attorney's liability in this regard will be based on terms of that contract…if an attorney agrees to provide his or her best efforts and fails to do so an action will accrue…[and] an attorney who agrees for a fee to represent a client is by implication agreeing to provide that client with professional services consistent with those expected of the profession at large").

It is undisputed that Mr. Thomas was contractually bound to represent the FCS Parties in the Shelton Matter. ECF No. 30 Exhibit 10.  It is beyond question given the analysis undertaken herein pursuant to section IV. A. "Professional Negligence" that Mr. Thomas breached his contractual duty to render legal services in a manner that comport with the profession at large. Any further analysis would be an exercise in redundancy. Defendant Thomas does not affirmatively contest the Plaintiffs' claim of breach of contract, and instead his sole argument in opposition to summary judgment with respect to the breach of contract claim focuses on a plaintiff's duty to mitigate. ECF No. 34 at pp. 7–8. Mr. Thomas waived the affirmative defense of mitigation by failing to plead it. ECF No. 13; *see, e.g., Walsh v. Alarm Sec. Grp., Inc.*, 95 F. App'x 399, 403 (3d Cir. 2004) ("Mitigation is an affirmative defense that is waived if it is not asserted in a responsive pleading."). This Court finds, as matter of law, that the Plaintiffs are entitled to judgment in their favor as Mr. Thomas breached his contractual duties to the FCS Parties with respect to his representation of them in the Shelton Matter, and is liable to them for legal malpractice on these grounds.

**C. Punitive Damages**

Plaintiffs ask for summary judgment with respect to their claim for punitive damages. Pursuant to Pennsylvania law "punitive damages may be awarded in legal malpractice cases where the defendant has engaged conduct that is outrageous because of the defendant's evil motive or reckless indifference to the rights of others." *Rizzo*, 520 Pa. at 507, 555 A.2d at 69; *see also Medvecz v. Choi*, 569 F.2d 1221, 1226 (3d Cir. 1977) (adopting the Restatement (Second) of Torts § 908 for punitive damages). The Pennsylvania Supreme Court has held that "[a] court may award punitive damages only if the conduct was malicious, wanton, reckless, willful, or oppressive." *Rizzo*, 520 Pa. at 507, 555 A.2d at 69. Additionally, when assessing whether to award punitive damages, "the proper focus is on the act itself together with all the circumstances including the motive of the wrongdoer and the relations between the parties.... [i]n addition, the actor's state of mind is relevant…[and] [t]he act or omission must be intentional, reckless, or malicious." *Id.* (internal quotations and citations omitted). The purpose of punitive damages is to punish a tortfeasor for outrageous conduct and to deter him or others like him from similar conduct. *Theise v. Carroll*, No. 3:10CV1715, 2011 WL 1584448, at *2–3 (M.D. Pa. Apr. 27, 2011) (citing *Kirkbride v. Lisbon Contractors*, Inc., 521 Pa. 97, 555).

Mr. Thomas' actions and inactions related to his representation of the FCS Parties in the Shelton Matter did not merely fall below the standard of ordinary skill and care of the legal profession at large, but are so insufficient that, as a matter of law, they amount to, at minimum a reckless indifference to the rights of his clients and warrant the imposition of punitive damages. *See Rizzo*, 520 Pa. at 507, 555 A.2d at 69.

Mr. Thomas has provided no justifiable explanation for why he failed to answer discovery, respond to the summary judgment motion, or, once judgment was entered against the

FCS Parties, file a timely motion for reconsideration or appeal of the judgment on their behalf. ECF No. 30 Exhibit 8 at p. 207:2–6. Moreover, Mr. Thomas failed to appropriately communicate to the FCS Parties about the judgment or comply with post-judgment discovery, resulting in further sanctions against the FCS Parties. Mr. Thomas' negligence not only resulted in a significant monetary judgment against the FCS Parties, but also stripped the FCS Parties of the opportunity to present any defense against Mr. Shelton's claims moving forward leaving them with no recourse but to satisfy a judgment established on admitted facts and de facto denying them their day in court. Mr. Thomas has not proffered any medical or mental health reason for his numerous failures which would open the door to some understanding, compassion, or sympathy. The legal profession is stressful and demanding, and as a result, a certain amount of pulling back the veil is needed in these situations. However, we have been given nothing to consider in this context; nor has he claimed the actions were merely a careless mistake or the result of disorganization. *See generally* ECF No. 34. This does not mean to say that Mr. Thomas does not have unidentified issues that need sorting out, but absent any explanation, we are left, therefore, befuddled, by his "professional" "practice" habits. Mr. Thomas readily took on the obligation to represent the FCS Parties, but at every instance, despite admitting to having sufficient evidence and arguments to do so, failed to even attempt to defend his clients against the motion for summary judgment or the entry thereof until long after the period during which he could have filed an appeal. ECF No. 30 Exhibit 8 at p. 207:2-6.  Nor did Mr. Thomas inform his clients of the devastation he was wreaking on their positions—either at the time of judgment being entered against them or after missing the deadline to appeal that judgment; instead, Mr. Thomas waged a cover-up campaign trying to create the false impression that he had appealed the summary judgment through a series of post-judgment

motions begun a prohibitive 47 days after the judgment. *See generally* ECF No. 34. Finally, the mirage was dissipated, not by Mr. Thomas, but by the adroit gavel of Judge Wolson, and the clients themselves, who eventually acquired rational representation (who, upon realizing the FCS Parties faced potential sanctions for filing such a frivolity, advised them to withdraw the appeal). Mr. Thomas now claims to be the victim of the withdrawal of a meritorious appeal accusing the FCS Parties' current counsel of advising them to do so "simply because he wasn't getting paid for it." ECF No. 34 at p. 5. This assertion is again pure contrived fantasy which one begins to think he may actually believe.  It further demonstrates Mr. Thomas' apparent complete inability or unwillingness to match reality with the law or maybe it exposes a working supposition on his part that courts will not try to do so. Taking the facts in the light most favorable to Mr. Thomas, no reasonable trier of fact could find that Mr. Thomas' actions were anything other than, at the very least, recklessly indifferent to the rights of his clients and that punitive damages against Mr. Thomas are warranted. This kind of havoc should never be allowed to be foisted upon any other individual or entity by Mr. Thomas.

Furthermore, although this Court's determination of punitive damages rests solely on the appalling extent of Mr. Thomas' actions constituting legal malpractice, it deems it pertinent to acknowledge that the current matter before the Court is far from the first time Mr. Thomas has shown a complete disregard for the duties of the legal profession and blatant disrespect for the judicial system as a whole. In relation to the underlying Shelton Matter, as well as in the Jacovetti Matter,[21] Judge Wolson found on multiple occasions on the record that Mr. Thomas made significant misrepresentations, and even lied directly to the Court, as well as disregarded

---

[21] *See* definition *supra* note 4.

the Court's orders.[22] *Jacovetti L., P.C. v. Shelton*, No. 2:20-CV-00163-JDW, 2020 WL

1491320, at *3 (E.D. Pa. Mar. 27, 2020), *reconsideration denied*, No. 2:20-CV-00163-JDW,

2020 WL 2556951 (E.D. Pa. May 20, 2020); ECF No. 30 Exhibit 13. Additionally, as Judge

Wolson outlined at length in his aforementioned opinion, Mr. Thomas has a long history "of

running afoul of courts in the Third Circuit."[23] *Id.* at *3–4. Until now, Mr. Thomas has clearly

traded on the fact that the right hand did not know what the left hand was doing. That has ended

as it pertains to him with Judge Wolson's opinion. *Id.*

    Rather than take any accountability or show any sign of remorse for his disreputable

practices, Mr. Thomas continues to cleverly, yet ineptly, dodge responsibility. *See generally*

ECF No. 34. This clumsiness is demonstrated by his faux representations of full responsibility

---

[22] In this Court's view, these matters are best described by the Honorable Judge Wolson in his compelling opinion discussing the matter, which provides further elaboration and a thorough explanation as to Mr. Thomas' conduct before Judge Wolson. *Jacovetti L., P.C.,* 2020 WL 1491320, at *3.

[23] *See Bounasissi v. New York Life Ins. and Annuity Corp.*, Civ. A. No. 15-7585, 2016 WL 4697333 (D.N.J. Sept. 2016) (finding "Plaintiffs' counsel, Joshua Thomas, Esq., failed to even attempt to cure [a procedural] deficiency" and noting it was "the third time Mr. Thomas has ignored his basic obligations under the Federal Rules of Civil Procedure in [that] case"); *Akinsanmi v. Nationstar Mortgage*, Civ. A. No. 16-7732, 2017 WL 2960579 (D.N.J. May 25, 2017) (finding Mr. Thomas failed to "prosecute his case in a timely manner and fail[ed] to timely and adequately respond to the Court's orders"); *Hood v. Victoria Crossing Townhouse Ass'n*, Civ. A. No. 18-12259, 2019 WL 3336132 (D.N.J. July 25, 2019) (finding that Mr. Thomas has "repeatedly filed suits in this District and in the Eastern District of Pennsylvania that have been dismissed for lack of subject-matter jurisdiction…[and] [t]he courts of the Third Circuit have cautioned him regarding his repeated disregard for court orders and Rules…" and accordingly barring Mr. Thomas from filing any new lawsuits in the District of New Jersey without prior leave of the Court); *Wright v. JP Morgan Chase Bank, N.A.*, Civ. No. 18-8311, 2019 WL 5587262 (D.N.J. Oct. 30, 2019) (concluding that Mr. Thomas' actions, including the filing of frivolous claims and filing claims in a Court without subject-matter jurisdiction, "demonstrate[d] conduct that is not only irresponsible and inexcusable, but also sheds light on a careless attitude shown to the judicial system…and fell short of [the] Court's expectations for professionalism and practice"); *Edwards v. Wells Fargo Bank,* N.A., Civ. No. 19-14409 (D.N.J.)(filing a complaint on behalf of a plaintiff Mr. Thomas purported to represent who subsequently wrote to the court stating he knew nothing about the case and had never met Mr. Thomas); *In re Thomas*, 612 B.R. 46, 69 (Bankr. E.D. Pa. 2020) (finding that Mr. Thomas' decision to submit a filing that was identical to a submission filed in an earlier case without any relevant updates "must be characterized as a conscious disregard of his most basic duties as an attorney…[and] evidence[d] a distinct lack of concern for the integrity of the bankruptcy system…[and also that] Mr. Thomas fail[ed] to fully appreciate the inadequacy of his conduct").

in front of the Pennsylvania Supreme Court Board of Discipline. Mr. Thomas, in an attempt to persuade the Disciplinary Board to limit his suspension to two years, took responsibility by admitting his malfeasance—and showing some bare minimum of contrition—and submitted an affidavit dated August 9, 2021 admitting, *inter alia*, that he had no excuse for missing deadlines in the Shelton Matter. ECF No. 35 Exhibit A, *Office of Disciplinary Counsel v. Joshua L. Thomas*, Case 115 DB 2021. On October 1, 2021, the Pennsylvania Supreme Court Disciplinary Board issued its decision suspending Mr. Thomas from the practice of law in Pennsylvania for two years. The decision to limit the suspension to two years was based largely on Mr. Thomas taking full responsibility for his malfeasance in the Shelton matter.  Then, astoundingly, in the present forum, within two weeks of the Pennsylvania Supreme Court Disciplinary Board issuing its decision, Mr. Thomas, on October 13, 2021 submitted his response to Plaintiff's Motion for Summary Judgment and took no responsibility for the very actions he just took full responsibility for in the disciplinary forum thereby making a complete mockery of the forum and its decision. Again, we see his signature approach to litigation: make it up as you go, move the shells, and they will never catch up with you because the right hand does not know what the left is doing.  And often that is the case because the courts operate in a system in which the attorneys are officers of the courts and the courts assume the attorneys are properly, factually, and within the spirit of reality making honest representations to the courts.  Mr. Thomas seems incapable of keeping with this professional compact.

In Pennsylvania, "[t]he sole purpose of punitive damages is to punish [a defendant's] outrageous conduct and to deter [that defendant] and others from similar acts." Pa. SSJI (Civ), §8.20 (2020).  Mr. Thomas' actions not only continue to force this Court, at present, to utilize its limited judicial resources to redundantly litigate his malfeasance, but his actions in this

litigation and his failure to take responsibility, indeed his total lack of awareness to his incapacities, generally do not bode well for Mr. Thomas, his clients, and the profession in the future should he return to practice after serving his two-year suspension. In light of the Defendant's conduct here and the strong public interest in deterring Mr. Thomas' future misconduct, this Court finds that an award of punitive damages in the amount of $1.00 is appropriate, and although nominal, the opprobrium of the punitive designation will serve as notice to everyone moving forward that they need to do due diligence when dealing with Mr. Thomas because, it seems, no amount of punitive damages will catch Mr. Thomas' attention or serve as a course correction. Even still, given the possibility that Mr. Thomas, considering his well-established, dubious track record, will seek to avoid paying this judgment once finalized, the Court believes, on an advisory basis only, that the best method for the Disciplinary Board to get his attention would be to prohibit his return to the practice of law until the judgment here is paid in full to the last penny of interest. This requirement may catch his attention and his need to take responsibility for his own actions as a practicing attorney.

## VII.   <u>CONCLUSION</u>

For the reasons outlined above this Court finds that there is not dispute of any genuine material fact and judgment for the Plaintiffs is warranted as to their claims of legal malpractice arising out of both professional negligence and breach of contract, as well as for punitive damages. Accordingly, judgment will be entered on behalf of the Plaintiffs in the amount of $61,584.08.

Additionally, upon consideration of the extraordinary facts outlined herein, as well as Mr. Thomas' continued failure to take accountability for his actions, the Court will send a copy of this Memorandum and accompanying Order (ECF No. 38) to Chief Counsel of the

Disciplinary Board of the Supreme Court of Pennsylvania (to review Mr. Thomas's representations to the Board versus the representations he made to this Court shortly thereafter on this record) to Judge Gerald J. Pappert of the United States District Court for the Eastern District of Pennsylvania, to Judge Paul S. Diamond of the United States District Court for the Eastern District of Pennsylvania, and to Judge Joshua D. Wolson of the United States District Court for the Eastern District of Pennsylvania.

**DATED:** January 11, 2022                    **BY THE COURT:**

                                               /s/ *Chad F. Kenney*

                                               _____

                                                **CHAD F. KENNEY, J.**